**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NIKKO D'AMBROSIO, individually and on behalf of all others similarly situated, | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| ABBIGAIL RAJALA, | ) |
| RODNEY RAJALA, | ) |
| CAROL RAJALA, | ) |
| PAOLA SANCHEZ, | ) |
| BLAKE MILLBRAND, | ) |
| AWDTSG, INC., a Delaware Corporation, | ) |
| META PLATFORMS, INC., a Delaware Corporation, | ) |
| META PLATFORMS TECHNOLOGIES, INC, a Delaware Corporation, | ) |
| FACEBOOK ENTERTAINMENT, LLC, a Delaware Corporation, | ) |
| FACEBOOK GLOBAL HOLDINGS I, LLC, a Delaware Corporation, | ) |
| FACEBOOK GLOBAL HOLDINGS I, INC., a Delaware Corporation, | ) |
| FACEBOOK GLOBAL HOLDINGS II, LLC, a Delaware Corporation, | ) |
| FACEBOOK GLOBAL HOLDINGS III, LLC, a Delaware Corporation, | ) |
| FACEBOOK MEDIA PRODUCTIONS, LLC, a Delaware Corporation, | ) |
| FACEBOOK OPERATIONS, LLC, a Delaware Corporation, | ) |
| FACEBOOK PROCURMENT, LLC, a Delaware Corporation, | ) |
| FACEBOOK AD MANAGEMENT, LLC, a Delaware Corporation, | ) |
| FACEBOOK HOLDINGS, LLC, a Delaware Corporation, | ) |
| FACEBOOK INTERNATIONAL, LLC, a Delaware Corporation, | ) |
| FACEBOOK INVESTOR GROUP, LLC, a Delaware Corporation, | ) |
| FACEBOOK, LLC, a Delaware Corporation, | ) |
| FACEBOOK MEDIA, LLC, a Delaware Corporation, | ) |
| FACEBOOK MIAMI, INC., a Delaware Corporation, | ) |
| FACEBOOK OVERSEAS, INC, a Delaware Corporation, | ) |
| FACEBOOK PROPERTY, LLC, a Delaware Corporation, | ) |
| FACEBOOK SERVICES, INC., a Delaware Corporation, | ) |
| FACEBOOK SHOP, INC., a Delaware Corporation, | ) |
| FACEBOOK CIRCULARITY, LLC, a Delaware Corporation, | ) |
| PATREON, INC., a Delaware Corporation, | ) |
| GOFUNDME, Inc., a Delaware Corporation, | ) |
| SPILL THE TEA, INC, a Delaware Corporation, | ) |
| JANE DOES 1-26, Unnamed Defendants using screen names: | ) |
| Sam Daniels, Alexis Kyle, Coraline Lotz, Dianne Wesley, Madison Pierce, | ) |

**JURY TRIAL**
**DEMAND**

Madison Bynum, Vanessa Villatoro, Christy Graessle, Sharleen Waa, )
Kaitlyn Mishay Moody, Linda Juarez, Amber Michelle, Laura Maddox, )
Alina Drake, Chandi Constance, Alicia Ann, Salisha P. Deen, Jillian Cara, )
Jen Rahbar, Shannon Marie, Luisa Resendez, Daryl Ceaser, Lisa Miko, )
Amy Dukstein-Reynolds, Melissa Pinkerton, Monica Tska, )
                                   Defendants. )

## CLASS ACTION COMPLAINT AT LAW

Now comes the Plaintiff, Nikko D'Ambrosio, individually and on behalf of all others similarly situated, by and through undersigned counsel, and complaining of the Defendants, states as follows:

## NATURE OF THE ACTION

This is an action for declaratory and injunctive relief and for damages against Defendants for the false and defamatory statements made and published by Defendants concerning Plaintiffs under the Illinois Slander and Libel Act (740 ILCS 145), to protect Plaintiff's rights to be free from the deliberate unauthorized dissemination of Plaintiff's personal identifying information under the Illinois Civil Liability for Doxing Act (740 ILCS 195), Misappropriation under the Illinois Right to Publicity Act (765 ILCS 1075), and common law causes of action.

## PARTIES

1.     The Plaintiff, Nikko D'Ambrosio is an adult male who is a citizen of Illinois and resides in the territorial jurisdiction of the District Court.

2.     The Defendant, Abbigail Rajala, is an adult female who is a citizen of and is domiciled in the State of Michigan. Defendant Abbigail Rajala engaged in the distribution of Plaintiff's intellectual property on or about November 13, 2023 by posting a photograph which he owns on the internet.

2

3.      The Defendant, Rodney Rajala, is an adult male who is a citizen of and is domiciled in the State of Michigan.

4.      The Defendant, Carol Rajala, is an adult female who is a citizen of and is domiciled in the State of Michigan.

5.      The Defendant, Sam Daniels, is an upon information and belief adult female whose citizenship and residence State is unknown at this time. Defendant Daniels is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Daniels' responsibilities include the review and approval of postings by members of the community. Upon information and belief, Daniels receives compensation for her services.

6.      The Defendant, Alexis Kyle, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Kyle is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Kyle's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Kyle receives compensation for her services.

7.      The Defendant, Paola Sanchez, is an adult female who is a citizen of and is domiciled in the State of California. Upon information and belief, Paola Sanchez is the owner and manager of Spill the Tea, Inc. and AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Guy?" online communities. Upon information and belief, Sanchez's responsibilities include the review and approval of postings by members of the community. Upon

information and belief, Sanchez has received substantial monetary proceeds in the form of crowdfunding and donations to support her businesses.

8. The Defendant, Coraline Lotz, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Lotz is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Lotz's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Lotz receives compensation for her services.

9. The Defendant, Dianne Wesley, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Wesley is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Wesley's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Wesley receives compensation for her services.

10. The Defendant, Madison Pierce, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Pierce is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Pierce's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Pierce receives compensation for her services.

11. The Defendant, Madison Bynum, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Bynum is an agent of

Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Bynum's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Bynum receives compensation for her services.

12.     The Defendant, Vanessa Villatoro, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Villatoro is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Villatoro's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Villatoro receives compensation for her services.

13.     The Defendant, Christie Graessle, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Graessle is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Graessle's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Graessle receives compensation for her services.

14.     The Defendant, Sharleen Waa, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Waa is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Waa's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Waa receives compensation for her services.

15.     The Defendant, Kaitlyn Mishay Moody, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Moody is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Moody's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Moody receives compensation for her services.

16.     The Defendant, Linda Juarez, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Juarez is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Juarez's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Juarez receives compensation for her services.

17.     The Defendant, Alina Drake, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Drake is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Drake's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Drake receives compensation for her services.

18.     The Defendant, Chandi Constance, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Constance is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Constance's responsibilities

include the review and approval of postings by members of the community. Upon information and belief, Constance receives compensation for her services.

19.     The Defendant, Alicia Ann, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Ann is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Ann's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Ann receives compensation for her services.

20.     The Defendant, Salisha P. Deen is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Deen is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Deen's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Deen receives compensation for her services.

21.     The Defendant, Jillian Cara, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Cara is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Cara's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Cara receives compensation for her services.

22.     The Defendant, Jen Rahbar, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Rahbar is an agent of Spill

The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Rahbar's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Rahbar receives compensation for her services.

23. The Defendant, Shannon Marie, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Marie is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Marie's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Marie receives compensation for her services.

24. The Defendant, Luisa Resendez, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Resendez is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Resendez's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Resendez receives compensation for her services.

25. The Defendant, Daryl Ceaser, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Ceaser is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Ceaser's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Ceaser receives compensation for her services.

26.     The Defendant, Lisa Miko, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Miko is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Miko's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Miko receives compensation for her services.

27.     The Defendant, Amy Dukstein-Reynolds, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Dukstein-Reynolds is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Dukstein-Reynolds' responsibilities include the review and approval of postings by members of the community. Upon information and belief, Dukstein-Reynolds receives compensation for her services.

28.     The Defendant, Melissa Pinkerton, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Pinkerton is an agent of Spill The Tea, Inc. and/or AWDTSG, Inc., and operates as a moderator in the "Are We Dating the Same Day?" online communities. Upon information and belief, Pinkerton's responsibilities include the review and approval of postings by members of the community. Upon information and belief, Pinkerton receives compensation for her services.

29.     The Defendant, Monica Tska, is upon information and belief an adult female whose citizenship and residence State is unknown at this time. Defendant Tska accused Plaintiff D'Ambrosio of criminal activity by posting online under Defendant Rajala's post relating to plaintiff a link to a CBS News article documenting the arrest of Anthony LaMonica, a

Northbrook, Illinois resident who was charged with Criminal Sexual Assault. Defendant Tska alleged that Plaintiff D'Ambrosio was the same person as Anthony LaMonica and was guilty of the crime of Sexual Assault.

30.     The Defendant, AWDTSG, Inc., is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media networks described above in conjunction with its websites, *www.spilltheteainc.com, www.awdtsg.com* and *www.arewedatingthesame.com*. Upon information and belief, this Defendant receives compensation through subscription fees and crowdfunding in exchange for the administration of their service, which relies entirely on the republishing and reposting of the intellectual property of individual plaintiffs alongside their personally identifiable information and/or statements which are defamatory in nature.

31.     The Defendant, Meta Platforms, Inc, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

32.     The Defendant, Meta Platforms Technologies, Inc, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

33.     The Defendant, Facebook Entertainment, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

34.     The Defendant, Facebook Global Holdings I, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

35.     The Defendant, Facebook Global Holdings I, Inc., is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

36.     The Defendant, Facebook Global Holdings II, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operated the social media network known as Facebook.com.

37.     The Defendant, Facebook Global Holdings III, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

38.     The Defendant, Facebook Media Productions, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

39.     The Defendant, Facebook Operations, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

40.     The Defendant, Facebook Procurement, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

11

41.     The Defendant, Facebook Ad Management, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

42.     The Defendant, Facebook Holdings, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

43.     The Defendant, Facebook International, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

44.     The Defendant, Facebook Investor Group, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

45.     The Defendant, Facebook, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

46.     The Defendant, Facebook Media, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

47.     The Defendant, Facebook Miami, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

48.     The Defendant, Facebook Overseas, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

49.     The Defendant, Facebook Property, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

50.     The Defendant, Facebook Services, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

51.     The Defendant, Facebook Shop, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

52.     The Defendant, Facebook Circularity, LLC, is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media network known as Facebook.com.

53.     The Defendant, Patreon, Inc., is a corporation registered and authorized to do business in the State of Delaware and owns and operates the crowdfunding platform known as Patreon.com. Upon Information and belief, Patreon, Inc. receives compensation from the unlawful actions of Spill The Tea, Inc., AWDTSG, Inc., and/or Paola Sanchez through a payment processing arrangement by and between the parties where Patreon would accept and receive subscription payments on behalf of the above-referenced Defendants in exchange for a portion of the revenue generated.

54.     The Defendant, GoFundMe, Inc., is a corporation registered and authorized to do business in the State of Delaware and owns and operates the crowdfunding platform known as Gofundme.com. Upon information and belief, GoFundMe received compensation from the unlawful actions of Spill The Tea, Inc, AWDTSG, Inc., and/or Paola Sanchez through a payment processing arrangement by and between the parties where GoFundMe would accept and receive crowdfunding payments on behalf of the above-referenced Defendants in exchange for a portion of the revenue generated.

55.     The Defendant, Spill the Tea Inc., is a corporation registered and authorized to do business in the State of Delaware and owns and operates the social media networks described above in conjunction with its websites, *www.spilltheteainc.com, www.awdtsg.com* and *www.arewedatingthesame.com*. Upon information and belief, this Defendant receives compensation through subscription fees and crowdfunding in exchange for the administration of their service, which relies entirely on the republishing and reposting of the intellectual property of individual plaintiffs alongside their personally identifiable information and/or statements which are defamatory in nature.

56.     The Defendant, Blake Millbrand, is upon information and belief a citizen of California and an owner of Spill The Tea, Inc. and/or AWDTSG, Inc. and the primary software developer for the companies. Upon information and belief, Millbrand has received substantial monetary proceeds in the form of crowdfunding and donations to support his businesses.

57.     Plaintiff is unaware of the true names and capacities of several prospective Defendants sued herein as Jane Doe, and therefore Plaintiff sues these Defendants by the above-referenced fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and therefore alleges that each fictitiously

named Defendant is responsible in some manner for the occurrences alleged and Plaintiff's

injuries as herein alleged were proximately caused by said Defendants.

## JURISDICTION

Jurisdiction is proper pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28

U.S.C. §1332(d), as the amount in controversy exceeds sums of $5,000,000.00, exclusive of

interests and costs, and there are more than 100 putative class members, and minimal diversity

exists because many putative class members are citizens of a different state than Defendant.

Upon information and belief, complete diversity may exist pursuant to 28 U.S.C. §1332 in that

many unnamed Defendants remain unlocated at this stage and their citizenship or domicile is

unknown to Plaintiff at this time.

## VENUE

This Court has jurisdiction over this action under 28 U.S.C. §1391(b)(2) in that all or a

substantial part of the events or omissions giving rise to the claim occurred within this district.

## FACTS

### Are We Dating the Same Guy?

58.     "Are We Dating the Same Guy?" is a collection of social groups maintained on

various social media platforms throughout the internet by Defendants. Said platforms purport to

provide an anonymous platform for women to discuss and disparage men in their local

communities with which they have had allegedly unsatisfactory dating experiences. The

collection of online communities claims to have over 3,000,000 registered users. *See Exhibit A.*

59.     "Are We Dating the Same Guy?" self-describes its community as "Red Flag

Awareness groups all across the country where women can empower each other and keep each

other safe from toxic men." The group pontificates to the world that they are doing the "[L]ord's

15

work" by maintaining a platform to permit women to anonymously dox, defame, and attack the moral character of men they've met online and publishing same. *See Exhibit A.*

60.     The "Are We Dating the Same Guy?" network of social platforms is divided into several subgroups reflecting major metropolitan areas in the United States and Canada for the purposes of organization. Each and every platform or subgroup carrying the "Are We Dating the Same Guy?" branding on any social media platform is operated by the same or a substantially similar group of individuals to Defendants listed herein, inclusive of, without limitation:

a.      "Are We Dating the Same Guy? | Greater Toronto Area"

b.      "Are We Dating the Same Guy? | Ottawa"

c.      "Are We Dating the Same Guy? | Greater Vancouver"

d.      "Are We Dating the Same Guy? | Calgary"

e.      "Are We Dating the Same Guy? | Winnipeg"

f.      "Are We Dating the Same Guy? | Edmonton "

g.      "Are We Dating the Same Guy? | Montreal"

h.      "Are We Dating the Same Guy? | New York"

i.      "Are We Dating the Same Guy? | Miami"

j.      "Are We Dating the Same Guy? | Chicago"

k.      "Are We Dating the Same Guy? | Boston"

l.      "Are We Dating the Same Guy? | Philadelphia"

m.   "Are We Dating the Same Guy? | New Jersey"

n.   "Are We Dating the Same Guy? | Nashville"

o.   "Are We Dating the Same Guy? | New Orleans"

p.   "Are We Dating the Same Guy? | Salt Lake City"

q.   "Are We Dating the Same Guy? | Dallas"

r.   "Are We Dating the Same Guy? | San Jose"

s.   "Are We Dating the Same Guy? | Fort Lauderdale"

t.   "Are We Dating the Same Guy? | Tampa"

u.   "Are We Dating the Same Guy? | Denver"

v.   "Are We Dating the Same Guy? | Minnesota"

w.   "Are We Dating the Same Guy? | Greater Los Angeles Area"

x.   "Are We Dating the Same Guy? | Atlanta"

y.   "Are We Dating the Same Guy? | St. Louis"

z.   "Are We Dating the Same Guy? | Houston"

aa.  "Are We Dating the Same Guy? | Austin"

bb.  "Are We Dating the Same Guy? | Phoenix"

cc.  "Are We Dating the Same Guy? | San Diego"

dd.  "Are We Dating the Same Guy? | San Antonio"

ee.     "Are We Dating the Same Guy? | Nevada Area"

ff.     "Are We Dating the Same Guy? | Columbus"

gg.     "Are We Dating the Same Guy? | Indiana"

hh.     "Are We Dating the Same Guy? | Seattle"

ii.     "Are We Dating The Same?"; arewedatingthesame.com

jj.     "AWDTSG"; awdtsg.com

kk.     "Spill The Tea, Inc."; spilltheteainc.com

61.     Each and every one of the listed individual Defendants has engaged in the creation, maintenance, publishing, and marketing, either as a user or administrative officer, of a subgroup of "Are We Dating the Same Guy?" known as "Are We Dating the Same Guy? | Chicago" (The "Chicago Subgroup") maintained on the social network Facebook. Said subgroup contains over 80,000 members.

62.     Some administrators digitally monetize the "Are We Dating the Same Guy" Platform via Patreon, GoFundMe, and other crowdfunding platforms. *See Exhibits A and D.*

63.     That the Chicago Subgroup publishes dozens of instances of copyrighted material alongside statements and narratives daily from women who wish to provide personally identifiable information about a man in the community with which they allege to have had a dating relationship. Thousands of men have been potentially defamed by members of the groups via these online publications and remain entirely unaware of the attacks on their character as a result of the social media group's private status and heavily moderated members list.

64.     No independent fact-checking of the statements made by any woman published in the community occurs. Women are permitted to make statements, publish photographs, defame, threaten, harass, belittle, or otherwise attack men whom they allege to have engaged in a dating relationship with void of any oversight and with total impunity.

65.     That the named Defendants permit the posting of personally identifiable information of the men who are subjected to their discussions and the class plaintiffs herein, inclusive of their names, photographs, employer information, addresses, and similar.

66.     That in order to identify individual men who are the subject of Defendant's conversations, Defendants permit the posting of photographs created and owned by the men in which they seek to discuss without seeking out the rights to republish said photograph.

67.     That upon information and belief, administrators and moderators of the relevant online communities frequently provide legal and editorial advice pertaining to the substance of the posts. Group administrators will assist in the editing of language in particular posts in an effort to avoid civil or criminal liability for the dissemination of any particular statement.

68.     That upon information and belief, certain agents and employees of Meta and subsidiaries are active members, moderators, and administrators of the "Are We Dating the Same Guy?" communities and assist the Defendants with avoiding liability and ignoring takedown requests for the unauthorized redistribution of the Class' intellectual property. *See Exhibit G.*

69.     That upon information and belief, several "Are We Dating the Same Guy?" Facebook groups, along with the accounts of several prominent administrators, were previously banned by Meta and subsidiaries for violations of Facebook's Community Guidelines.

70.     That subsequent to the removal of the aforementioned groups and accounts from the Facebook platform, the Meta Defendants were contacted by the AWDTSG Defendants, reviewed the functions and purpose of the groups and accounts, and reinstated same.

71.     Upon information and belief, the Meta Defendants would have viewed the infringing content on the group pages, the group's rules encouraging users to publish Plaintiffs' copyrighted material, and similar information during the reinstatement process.

72.     Upon information and belief, any reasonable person, when reviewing the encouragement by the AWDTSG platform to publish infringing content, their platform's purpose in publishing infringing content by way of photographs, and similar, would have become aware that unauthorized redistribution of intellectual property is apparent within the AWDTSG community.

73.     That upon information and belief, Meta and its agents create, edit, modify, and develop particular pieces of content and software for the purpose of use by the Are We Dating the Same Guy groups, namely, without limitation, the enabling of "anonymous posting" within the groups and the enabling of software that permits group moderators and administrators to obtain information related to users who screenshot any particular post on the group pages.

74.     That upon information and belief, Meta and subsidiaries have received thousands of individual notifications from Class members around the country that their intellectual property is being redistributed without authorization, that private facts about their lives are being disclosed without authorization, that they are being defamed, and that they are being doxed. Meta has ignored these demands for takedown and in the alternative has sought to defend the "Are We Dating the Same Guy?" communities by reinstating removed community groups,

20

providing technology to assist in securing the anonymity of group posts, providing technology to assist group members in identifying those who screenshot their statements, and similar.

75.     That upon information and belief, Meta and subsidiaries continue to enrich themselves by displaying advertising materials next to intellectual property which has been distributed without authorization, despite their notification of same.

76.     That Meta and subsidiaries "recommend" content based on an internal algorithm, which causes said content to be displayed higher up in a particular feed on the website. The purpose of Meta's internal algorithms is, upon information and belief, as follows, without limitation:

a.     To collect digital information from users for the purpose of retaining and creating consumer profiles to recommend particular pieces of content and advertisements on an individualized basis;

b.     To promote the most inflammatory and engaging content on the website to those users most likely to engage with said content for the purpose of maximizing a user's time spent on the website, and by extension, maximizing the amount of advertisements that can be shown to the user and the amount of digital information that can be collected from the user;

c.     To display targeted recommendations to individual users based on the data collected about particular users and editorialize provided content to connect said users with information Meta believes will be most engaging to individual users, for the purposes of maximizing a user's time spent on the website, and, by extension, maximizing advertising revenue and maximizing the collection of digital information;

      d.      To engage in the creation or development of information provided through the Internet in order to maximize a user's time spent on the website for the purposes of collecting digital information about the user and maximizing advertising revenue.

77.      That Meta's algorithm intentionally recommends the most inflammatory content available in the communities to maximize revenue. Meta engages in a multi-layered and structured approach to enrich themselves through the algorithm based on both the presentation of advertisements and the collection of digital information relating to users. After the national attention garnered by Plaintiff's initial Complaint, Meta willfully and intentionally displayed posts relating to Plaintiff and referenced in this Complaint at the forefront of the Chicago subgroup page in an effort to capitalize on the newsworthiness of the posts and maximize the revenue gained from the unauthorized redistribution of content, doxing, and unauthorized disclosure of private facts of Plaintiff.

78.      That upon information and belief, Meta, its agents, employees, and subsidiaries, have wielded their Security Policy to notify users when their posts regarding Class members have been screenshotted in order to collude with the communities and prevent the drawing of publicity to their illegal republishing of intellectual property and disclosure of private facts for the purpose of continuing to garner advertising revenue.

### Crowdfunding and Revenue

79.      Defendants Paola Sanchez, AWDTSG, Inc., Blake Millbrand, and Spill The Tea, Inc. have engaged in numerous crowdfunding events for the purpose of raising funds to develop a website, smartphone application, and other infrastructure to support their online communities.

80.      That the purposes of the "Are We Dating the Same Guy?" communities are to:

22

        a.      Publish the personally identifying information of particular Class members through names, photographs, and locations for the purpose of identifying Class members to the group;

        b.      To publish private facts which are facially revealing and offensive pertaining to the personal lives of the Class members, despite said facts being of no legitimate public concern for the purpose of commercial profit;

        c.      To republish the intellectual property of the Class members without authorization for the purpose of commercial profit.

81.     That on or about April, 2023, Defendant Paola Sanchez published a fundraiser on the "GoFundMe" platform seeking to raise funds in the amount of $50,000.00 for the development of a smartphone app to support the communities. Said fundraiser has raised approximately $44,000.00 to date.

82.     That said fundraiser promises that all funds raised are "reinvested."

83.     That upon information and belief, Defendant Millbrand is a software developer by trade and has developed the relevant software for the smartphone application and websites maintained by "Are We Dating the Same Guy?"

84.     Upon information and belief, Defendant Millbrand and Defendant Sanchez are engaged in a relationship.

85.     Upon information and belief, no funds have been invested in the development of the smartphone application software, and Defendants Sanchez and Millbrand have retained said funds for their personal benefit.

86.     Upon information and belief, despite Defendant Sanchez's statements to the contrary ("I really just used [the crowdfunding revenue] to cover paying others...") dozens of moderators and administrators who were promised payment for their services remain unpaid, and Defendants Millbrand and Sanchez instead retained funds for their personal benefit.

87.     That on January 14, 2023, Defendant Sanchez published an announcement to her fundraiser page stating that a beta version of the application had been published. Sanchez wrote that "The current beta version is testing screenshot blocking, screen record blocking, anonymous commenting, advanced tracking and logging to better help us catch bad actors."

88.     That the purpose of said features is to prevent Class members from receiving notice that they are being defamed, harassed, having private facts disclosed about them, and/or are having their intellectual property republished without authorization, in an effort to avoid liability.

89.     Upon information and belief, Defendant Sanchez and Defendant Millbrand use revenue generated from their ventures to finance their personal lives at the expense of Class members.

90.     That on or about January 14, 2023, Defendant Sanchez published a fundraiser on the GoFundMe platform seeking funds to finance their legal defense in the instant matter, which to date has raised nearly $50,000.00.

91.     That Defendant Sanchez maintains an account with "Venmo" an online payment processor and wallet service, known as @awdtsgmoderators where she accepts funds with the express purpose of distributing same amongst the moderation team.

92.     That upon information and belief, Defendants Sanchez and Millbrand retain revenue from the @awdtsgmoderators Venmo account for their personal benefit.

93.     That Defendant Sanchez maintains a Venmo account known as @hownowpaopao where she accepts funds for the express purpose of enrichment from the "Are We Dating the Same Guy?" community.

94.     That upon information and belief, Defendants Sanchez and Millbrand retain revenue from the @hownowpaopao Venmo account for personal benefit.

95.     That on January 15, 2024, Defendant Sanchez published an announcement to the "Are We Dating the Same Guy?" community where she stated that users receive "hours and hours of benefits from this group…"

96.     That Defendant Sanchez's choice of language is demonstrative of the true nature of the community, to provide "hours and hours" of illegally reproduced content to its users at the expense of the Class members.

### Abbigail Rajala

97.     That in 2023, Plaintiff and Defendant Abbigail Rajala met organically at a cultural event in Chicago, Illinois and briefly communicated with one another. Plaintiff and Defendant Abbigail Rajala engaged in consensual sexual intercourse on the evening they first met. The parties spent brief periods of time together on dates on a handful of occasions which were unremarkable. The parties never engaged in an exclusive dating relationship.

98.     That in November 2023, Defendant Abbigail Rajala published provably false and defamatory statements pertaining to Plaintiff and disseminated same amongst members of the

"Are We Dating the Same Guy? | Chicago" Facebook group, knowing said statements to be false and defamatory. Defendant Abbigail Rajala further published a photograph of Plaintiff created and owned by him. *See Exhibit B.*

99.     That commenters on Rajala's post requested information relating to Plaintiff's employer in an effort to make contact with and defame the character and reputation of plaintiff for the purpose of causing harm to his employment status and/or attempting to cause his loss of gainful employment

100.    That upon information and belief, Defendants Rodney and Carol Rajala maintain a home internet network accessed by Defendant Abbigail Rajala for the purpose of posting such statements, photographs, and information related to Plaintiff.

### Monica Tska

101.    That Plaintiff D'Ambrosio has never met Defendant Tska, and the two have never interacted with one another.

102.    That in November 2023, in response to Defendant Rajala's post concerning Plaintiff D'Ambrosio, Defendant Tska published a link to a CBS News Article detailing the arrest of one Anthony LaMonica, an Illinois resident who was charged with Criminal Sexual Assault. *See Exhibit B.*

103.    That Defendant Tska used said article and the mugshot of LaMonica to claim that Plaintiff D'Ambrosio and Anthony LaMonica were the same person and by extension that Plaintiff D'Ambrosio had committed Criminal Sexual Assault.

26

104. Nikko D'Ambrosio is not Anthony LaMonica, has no relation to Anthony LaMonica, and has never committed, been charged with, nor convicted of criminal sexual assault.

105. Defendant Tska made false statements of fact about Plaintiff D'Ambrosio's criminal history with the intent to cause harm to his reputation and standing in the community, while knowing same to be false.

**D'Ambrosio's Attempts at Removing Intellectual Property and Defamatory Statements**

106. That as a part of the Defendants' maintenance of said platform, Defendants engage in content moderation, which involves the review and approval of member applications, statements, and/or "posts" made on the platform.

107. That as a part of Defendants' content moderation responsibilities, Defendants would have reviewed the false and defamatory statements made about Plaintiff and approved same for publication on their platform, along with the unauthorized republishing of Plaintiffs' copyrighted materials.

108. That on or about December 15, 2023, Defendants were contacted by Plaintiff and his attorneys demanding the removal of said false and defamatory statements.

109. That immediately following Plaintiff's contact of Defendants, Defendant Abbigail Rajala removed her post on the platform containing the false and defamatory statements about Plaintiff, and republished same under an "Anonymous" handle on the "Are We Dating the Same Guy? | Chicago" Facebook group in an effort to avoid the detection of her identity. *See Exhibit C.*

110.     That the Chicago Subgroup, along with all other listed subgroups referenced above, is maintained as an "invite-only" group on the Facebook platform intentionally and for the sole purpose of preventing subjects of the Defendants' defamatory vitriol from becoming aware of the existence of same.

111.     That as of January 2, 2023, Defendant Abbigail Rajala's "anonymous" post remains in the Chicago Subgroup and continues to be republished and retransmitted to third parties upon each client-side connection to the website.

112.     That Defendants Meta Platforms, Inc., Meta Platforms Technologies, Inc., Facebook Entertainment, LLC, Facebook Global Holdings I, LLC, Facebook Global Holdings I, Inc., Facebook Global Holdings II, LLC, Facebook Global Holdings III, LLC, Facebook Media Productions, LLC, Facebook Operations, LLC, Facebook Procurement, LLC, Facebook Ad Management, LLC, Facebook Holdings, LLC, Facebook International, LLC, Facebook Investor Group, LLC, Facebook, LLC, Facebook Media, LLC, Facebook Miami, Inc., Facebook Overseas, Inc., Facebook Property, LLC, Facebook Services, Inc., Facebook Shop, Inc., and Facebook Circularity, LLC (the "Meta Defendants") willfully and intentionally displayed and continue to display advertising materials for the purpose of commercial profit on pages displaying such defamatory content and/or intellectual property of Plaintiff without the consent or permission of Plaintiff.

113.     That Defendants GoFundMe, Inc. and Patreon, Inc. have enriched themselves through a revenue sharing agreement with Paola Sanchez, Blake Millbrand, AWDTSG, Inc., and/or SpillTheTea, Inc. by promoting and facilitating a crowdfunding campaign which the above-referenced Defendants used for the purpose of personal enrichment.

## Procedural History of this Action

114.    On January 8, 2024, Plaintiff filed the instant action under Case No. 1:24-cv-400

based on the information available to him at the time through diligent investigation. Plaintiff was

permitted 90 days to serve Defendants pursuant to Federal Rule of Civil Procedure 4(m), and

only 17 days have passed since the filing of Plaintiff's initial complaint. Plaintiff did not serve

any Defendants and pursuant to Plaintiff's ongoing duty to supplement as new information

became available, intended to file a First Amended Complaint as of right pursuant to Federal

Rule of Civil Procedure 15(a)(1) prior to the service of Defendants.

115.    That no Defendants were served and no appearances were entered by Defendants

in the prior matter, which was before The Hon. Shannon Johnson Coleman.

116.    That on January 25, 2024, The Hon. Shannon Johnson Coleman dismissed the

prior matter without prejudice for lack of subject matter jurisdiction prior to Plaintiff's ability to

amend his Complaint with newly discovered information, without service upon Defendant and

without providing plaintiff the opportunity to amend pursuant to Federal Rule of Civil Procedure

15(a)(1), which is customarily the norm.

## CLASS ACTION ALLEGATIONS

117.    Pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(3), and (c)(4),

Plaintiff seeks certification of the following Class:

**All natural persons within the State of Illinois whose personally identifiable
information and/or intellectual property have been disseminated by the Defendants for the
purpose of commercial profit and/or have had statements made regarding their dating life,**

personal relationships, sexual tendencies, and/or use of substances by the "Are We Dating the Same Guy?" Community.

### Doxing Subclass

All persons within the Class whom had personally identifiable information published with the intent that it be used to harm or harass the person whose information is published and with knowledge or reckless disregard that the person whose information is published would be reasonably likely to suffer death, bodily injury, or stalking

### Intellectual Property Subclass

All persons within the Class who have had their intellectual property republished without authorization by Defendants.

### Private Facts Subclass

All persons within the Class who have had their privacy invaded through the disclosure of private facts which are facially revealing on their face, including statements made regarding their dating life, personal relationships, sexual tendencies, and/or use of substances by Defendants.

### Defamation *Per Se* Subclass

All persons within the Class who have had false statements made about their character which are defamatory *per se*, inclusive of, without limitation, accusations of criminal wrongdoing, adultery, substance abuse, a lack of ability or integrity in performing the duties of their profession or employment, or the ailment of a loathsome disease.

118.    Excluded from the Classes are any Defendant; any parent, affiliate, or subsidiary of Defendant; any entity in which Defendants have a controlling interest; Defendants' officers or

directors, or any successor or assign of Defendants. Also excluded are any Judge or court personnel assigned to this case and members of their immediate families.

119.    Plaintiffs hereby reserve the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

120.    Consistent with Federal Rule of Civil Procedure 23(a)(1), the Class is so numerous that joinder of all members is impracticable. While Plaintiffs do not know the exact number of Class members, Plaintiffs believe the Class and the Subclasses are comprised of thousands of members. Class members may be identified through objective means, including through Defendants' records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media, and/or published notice.

121.    Consistent with Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)'s predominance requirements, this action involves common questions of law and fact as to all Class members, which predominate over any questions affecting individual Class members. Such questions of law and fact common in the Class include, but are not limited to:

a.      Whether Defendants are "speakers" or "publishers" within the meaning of 47 U.S.C. §230.

b.      Whether Defendants are immune from liability for the intentional publishing of the intellectual property of plaintiffs for the purpose of commercial gain pursuant to 47 U.S.C. §230.

b.      Whether 47 U.S.C. §230(e)(2) applies to state law causes of action for intellectual property violations.

31

c.      Whether Defendants received commercial revenue as a result of their unauthorized republishing of the Class' intellectual property.

d.      Whether, by approving submitted posts about the Class members and rejecting demands for such posts' removal, Defendants acted intentionally in republishing said intellectual property and/or statements relating to a Class member's dating life, personal relationships, sexual tendencies, and/or use of substances without the consent of the Class members.

e.      Whether the Defendants engaged in communications and editorial commentary with users regarding the substance of their posts in an effort to avoid legal liability.

f.      If Defendants are not found to be "speakers" or "publishers" within the meaning of 47 U.S.C. §230, whether Defendants' engagement in such communications and advice-giving regarding the substance of user posts breaches Defendants immunity as an internet service provider under 47 U.S.C. §230.

g.      Whether comments regarding an individual's dating life, personal relationships, sexual tendencies, and/or use of substances constitute "private facts" in that they are facially revealing, compromising, or embarrassing.

h.      Whether the dissemination of comments regarding an individual's dating life and sexual tendencies for public consumption constitutes a disclosure of "private facts."

i.      Whether the Defendants, by manually approving submitted posts for publishing, making editorial comments for user posts, providing advice on how to avoid legal liability to users, and ignoring requests for takedowns of intellectual property which they were not entitled to republish demonstrates an intent to cause harm to the Class members.

j. Whether Defendants had actual or constructive knowledge that copyright infringement was apparent within their communities.

k. Whether the Defendants are entitled to immunity under the Digital Millenium Copyright Act for the intentional republishing and encouragement of republishing Plaintiffs copyrighted material;

l. Whether Section 230(c)(1) immunizes interactive computer services when they make targeted recommendations of information provided by another information content provider, or only limit the liability of interactive computer services when they engage in traditional editorial functions (such as deciding whether to display or withdraw) with regard to such information.

122. Consistent with Federal Rule of Civil Procedure 23(a)(3), Plaintiff's claims are typical of the claims of the members of the Class. Defendants common course of conduct as alleged herein has caused Plaintiff and Class members to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and coextensive with the claims of the Class.

123. Consistent with Federal Rule of Civil Procedure 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class members. Plaintiff's counsel are competent and experienced in constitutional law and civil litigation, and Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of the Class. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of other members of the Class.

Plaintiff's interests are coincident with, and not antagonistic to, those of the other Class members.

124.     Consistent with Federal Rule of Civil Procedure 23(b)(3), a class action is superior to any other means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual Plaintiff may not be sufficient to justify individual litigation. Here the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would provide an immense strain on the judicial system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.

125.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

126.     Particular issues under Federal Rule of Civil Procedure 23(c)(4) are appropriate for certification because the claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein, as set forth in each preceding paragraph.

127.    All members of the proposed Class are readily ascertainable. Defendants have access to information regarding the individuals whose intellectual property or personally identifiable information have been posted, or have had private facts regarding their dating life, personal relationships, sexual tendencies, and/or use of substances published by Defendants. Using this information, Class members can be identified and their contact information ascertained for the purpose of providing Notice to the Class.

## COUNT ONE – DEFAMATION *PER SE*

128.    Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

129.    Defendants are "speakers" or "publishers" within the meaning of 47 U.S.C. §230 and continue to publish, intend to continue to publish, and cause to be published a series of repetitive false and defamatory statements of fact about Plaintiff in a manner that led and will continue to lead to the reasonably foreseeable publication and republication of those and similar statements.

130.    The defamatory meanings of Defendants' false statements and implied statements of fact are apparent from the face of the publications, refer to Plaintiff by name, often are accompanied by images of Plaintiff, and/or are understood to be written about the Plaintiff.

131.    The statements authored, published, and caused to be published by Defendants about Plaintiff are reasonably understood to state or imply that Plaintiff is dishonest, immoral and/or untrustworthy, or otherwise has a history of engaging in fraudulent activity.

132. Each of these statements and the implications stemming therefrom are false and defamatory *per se* in that said statements have damaged Plaintiff in his trade, office, or profession and in that they accuse the Plaintiff of having engaged in sexual misconduct.

133. Each of the statements published by Defendants are publicly available and was or will be viewed by thousands of potential individuals.

134. That Plaintiff is a private figure, but in any event each of these false statements were published with actual malice, *i.e.*, with knowledge of its falsity or with reckless disregard as to the truth. At a minimum, Defendants acted negligently in assessing or investigating the truth of the statements prior to publication. Defendants had no applicable privilege or legal authorization to make these false and defamatory statements.

135. Defendants acted with willful misconduct, malice, fraud, wantonness, oppression, and/or entire want of care which would raise the presumption of conscious indifference to consequences, and Defendants specifically intended to cause Plaintiff harm.

136. Defendants statements have damaged and continue to damage Plaintiff's reputation in the general public, in their professions, in their church communities, in their neighborhood, and with friends, relatives, and neighbors.

137. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer significant general, actual, consequential, and special damages including, without limitation, impairment of reputation and standing in the community, personal humiliation, mental anguish and suffering, emotional distress, stress, anxiety, lost earnings, and other pecuniary loss. These harms are ongoing and, if Defendants are not prevented from continuing to repeat their defamatory statements about Plaintiff, those harms will continue.

## COUNT TWO – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

138.     Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

139.     Defendants' course of conduct directed specifically at Plaintiff was malicious, wanton, and intentional, and reflected a want of care which would raise the presumption of conscious indifference to consequences. That conduct includes the drawing of attention to Plaintiff, the encouragement of others to scrutinize and disbelieve Plaintiff, and similar.

140.     Moreover, Defendants specifically intended to cause Plaintiff harm. Defendants' wrongful conduct is so outrageous in character and so extreme in degree that it is beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community. Defendants' carried out their defamatory statements with actual malice, as they knew that the accusations they were making were false or otherwise published them with reckless disregard for the truth.

141.     As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer significant general, actual, consequential, and special damages including, without limitation, impairment of reputation and standing in the community, personal humiliation, mental anguish and suffering, emotional distress, stress, anxiety, lost earnings, and other pecuniary loss. These harms are ongoing and, if Defendants are not prevented from continuing to repeat their defamatory statements about Plaintiff, those harms will continue.

## COUNT THREE – INVASION OF PRIVACY BY FALSE LIGHT; CIVIL CONSPIRACY

142.     Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

143. The defendants, as part of a campaign of harassment and abuse, broadcast numerous outrageous lies about the plaintiffs that represented such major misrepresentations of the plaintiffs' character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable person in their position.

144. The false light in which the defendants' statements placed the plaintiffs would be highly offensive to a reasonable person.

145. The defendants had knowledge that their statements were lies, or acted with reckless disregard as to the falsity of their statements and the false light in which the plaintiffs would be placed.

146. These false publications have caused the plaintiffs actual and substantial damages.

147. In light of their prior experience with similar sorts of reckless and false statements, the defendants knew that their publications could cause the plaintiffs to suffer harassment and potential violence.

148. The plaintiff is a private individual and is neither a public official nor public figure.

149. The defendants broadcast their outrageous, cruel, and malicious lies about the plaintiff with knowledge that the statements were false or with reckless disregard as whether or not they were true.

150. The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.

151.     The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

152.     These acts of the defendants resulted in damage to the plaintiffs.

## COUNT FOUR – CIVIL LIABILITY FOR DOXXING (740 ILCS 195/15)

153.     Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

154.     The Defendants, as part of a campaign of harassment and abuse, intentionally published the personally identifiable information of Plaintiff without his consent, namely his name and photograph to an online group dedicated to the harassment and belittlement of men with over 80,000 registered members.

155.     That the Defendants published said information with knowledge and/or reckless disregard to the fact that the publishing of defamatory statements to an online platform of over 80,000 individuals would cause Plaintiff to be reasonably likely to suffer significant injury including risk of death, bodily injury, or stalking.

156.     That as a direct and proximate cause of the Defendants actions, Plaintiff has suffered damages by way of significant emotional distress, disruption to his life, and fear of serious bodily injury at the hands of one of the group's thousands of unidentified members.

## COUNT FIVE – MISAPPROPRIATION

157.     Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

158. The Defendants, as part of an ongoing campaign of harassment and abuse, intentionally published the Plaintiff's personal identity and likeness.

159. Upon information and belief, the Defendants published Plaintiff's identity for a commercial purpose, including the crowdsourcing of funds and collection of monetary proceeds from supporters of the "Are We Dating the Same Guy?" Community (*See Exhibits A and D*).

160. That Defendants did not seek to obtain permission from Plaintiff before publishing and profiting from his identity and likeness.

161. That Defendants have never had authorization from Plaintiff to publish his identity for any purpose, whether commercial or otherwise.

162. That as a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer significant general, actual, consequential, and special damages including, without limitation, impairment of reputation and standing in the community, personal humiliation, mental anguish and suffering, emotional distress, stress, anxiety, lost earnings, and other pecuniary loss. These harms are ongoing and, if Defendants are not prevented from continuing to repeat their defamatory statements about Plaintiff, those harms will continue.

## COUNT SIX – UNJUST ENRICHMENT

163. Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

164. Defendants unjustly received benefits in the form of payments from supporters, crowdfunding proceeds, and advertising revenue at Plaintiff's expense through their wrongful

conduct. Defendants continue to unjustly retain these benefits at Plaintiff's expense. It would be unjust for Defendants to retain any value they obtained as a result of their wrongful conduct.

165.     Plaintiff is entitled to full restitution of all amounts by which Defendants have bene unjustly enriched at Plaintiff's expense.

## COUNT SEVEN – PUBLIC DISCLOSURE OF PRIVATE FACTS

166.     Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

167.     The Defendants, as part of an ongoing campaign of harassment and abuse, intentionally published the Plaintiff's personal identity and likeness in addition to private facts about the Plaintiff.

168.     That the facts published by Defendant about Plaintiff would be highly offensive to a reasonable person and are of no legitimate concern to the public.

169.     That as a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer significant general, actual, consequential, and special damages including, without limitation, impairment of reputation and standing in the community, personal humiliation, mental anguish and suffering, emotional distress, stress, anxiety, lost earnings, and other pecuniary loss. These harms are ongoing and, if Defendants are not prevented from continuing to repeat their defamatory statements about Plaintiff, those harms will continue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award Plaintiff:

41

A. Injunctive relief enjoining Defendant from making or publishing, or causing to be made or published, any further statements repeating any and all false claims that Plaintiff engaged in any sort of immoral or illegal conduct of any kind;

B. Compensatory damages, where appropriate;

C. Punitive damages, where appropriate;

D. The costs of this action, including attorney's fees; and

E. Any such other and further relief this Court deems equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

_____/s/Marc P. Trent_____
Marc P. Trent (ARDC # 6324928)
One of Plaintiff's Attorneys

_____/s/Daniel Nikolic_____
Daniel Nikolic (ARDC # 6205792)
One of Plaintiff's Attorneys

**TRENT LAW FIRM, P.C.**
2 TransAm Plaza Drive, Suite 300
Oakbrook Terrace, IL 60181
(630) 682-3100
*service@trentlawfirm.com*





# Create A Safe Platform For AWDTSG

$44,543 raised of $50,000 goal • 1.7K donations

**Share**

**Donate now**

 Anonymous
$20 • 8 d

 Anonymous
$20 • 9 d

 Ishita Gupta
$25 • 25 d

 Mackenzie Miles
$10 • 26 d

 Tiffany Ranney
$20 • 26 d

**See all**                    **See top**

 Paola Sanchez is organizing this fundraiser.

1/8/24, 2:13 PM

Case: 1:24-cv-00678 Document #: 1 Filed: 01/25/24 Page 44 of 66 PageID #:44
Case: 1:24-cv-00200 Document #: 1 Filed: 01/08/24 Page 25 of 45 PageID #:25

I'm Paola Sanchez and I created and operate "AWDTSG" Red Flag Awareness groups all around the world where women can empower each other and keep each other safe from dangerous and/or toxic men.

I first started these groups to help solve some of the problems and dangers that me and my friends were experiencing with dating. We hit on a winning formula, and have grown by over 3.4 million members in just a year and a half, with over 600 moderators helping to run the groups. So we've stumbled onto something a lot of women are struggling with and are definitely onto something here... but this hasn't come without some struggles.

You may have noticed weird things going on with the groups these last few days. What happened was that 5 of our admin's accounts were abruptly deactivated all at once, including my 15 year old personal account. We've also had 4 of our groups suddenly shut down this week.. and none of those groups ever had community guideline violations.

With over 3,444,900 women in 212 groups we operate across the world, the sudden deactivation of all our admins has greatly disrupted our ability to keep them all safe. The worst part is the anxiety that comes with never knowing when or why our volunteers will suddenly be deactivated or a group will suddenly disappear.

These latest fiascos made me realize we need something better, and finally pushed me to start prioritizing my time towards building a new ideal platform for the lord's work we are doing here.. one with additional safety features such as screenshot logging, anonymous commenting, and much more.

I believe that the best way to keep women even safer is to create a platform where we can do everything we're doing in the groups, but with more specialized safety features and control over sharing.

But I realize that we need more resources to bring it into existence while continuing to operate and grow the current groups. I've started this GoFundMe to help raise as much of the development and operational costs as we can

I humbly ask you to please consider donating to support us in our efforts to help keep even more women safe

I guarantee that 100% of all money raised from this will go towards the design and development of an app or any necessary help in running the groups. I absolutely promise that 0% will go in my own pocket ♥

I sincerely appreciate all of the support you've continued to give us! You ladies seriously mean the world to me! With your help we have a real opportunity to help dating get better for women everywhere

- Paola ♥

P.S. To receive updates on development, please follow me on Instagram @hownowpaopao (https://www.instagram.com/hownowpaopao/) or enter your email on this simple web form I set up (https://www.awdtsg.com/). My instagram will be the main account to check for updates on the off chance more groups get deleted, so follow it for a place to regroup if you want to stay connected

P.P.S. If anyone has any friends or family at Facebook that they could put me in touch with to better understand things, please reach out to Dianne and let her know

P.P.P.S. We have looked into other existing platforms such as Discord and Reddit. It would be significantly more time consuming to determine that every member joining the group was for sure a real woman, and don't have the robust feature set we would want. It also still doesn't let us fine tune features to fit our specific safety concerns

1/8/24, 2:13 PM

Case: 1:24-cv-00678 Document #: 1 Filed: 01/25/24 Page 45 of 66 PageID #:45
Case: 1:24-cv-00200 Document #: 1 Filed: 01/08/24 Page 26 of 45 PageID #:26

P.P.P.P.S. I'm sorry that this isn't as detailed as I would have liked it to be, the deactivations all came so suddenly and I wasn't really planning on doing anything like this anytime soon.

P.P.P.P.P.S. Since first writing this, we have lost 6 groups totaling 251,800 members due to some overly restrictive FB moderation. I'm still fighting to try to get them back! But on a good note, within the last month alone their replacements have already reached 62,500 members but this further reinforces the fact that we need another platform.

EDIT! Here's some more information I was able to write out to address common questions.

I was hoping to announce this when it was further along and when I had written out something more informative that gave away more without giving too much, but this has pushed up the timeline in having to post it, as the group could potentially disappear at any moment without warning. I've been developing an app based off what I've learned in growing these groups. We've actually been able to find some great technical partners. It's not often that a concept gets validated and refined by a preexisting user base of millions of members, so that was very attractive in securing help.

If you're interested in giving a larger scale donation and having more details would be necessary for you to do so, please DM Dianne with the details around what you're thinking in terms of your investment, and in return I can happily provide you with more on the concept, as well as timetables, budgets, etc. It doesn't seem like a great idea to publicly release all of that information, as there's already competition in the market, and competing startups who may be able to use that information in their own plans. But I'm happy to share more in the right circumstances

I know this will take more than 50,000$. Any dollar previously given was reinvested. Even if I said it was for a coffee, I really just used it to cover paying others, design and development costs, legal expenses and filings, etc. I also invested my own savings into this, and had a small family and friends round.

I have had offers from institutional investors, and will leverage them if need be. But I wanted to attempt this GoFundMe campaign as a way to not have to rely on investment capital so early, and be able to keep more of the company in the hands of women ♥

♡ Add a Reaction to this GoFundMe

## Updates (1)

**April 28th, 2023** by Paola Sanchez, Organizer

Hey everyone! Some of you may have noticed already, but early last week I got my account back ♥ It only took a letter to the CA Attorney General, tickets submitted by Meta employees who were in some of our groups, and over 2 weeks of stress to get it back

That being said, I'm still going to start putting more of my time towards developing our own app just in case shutdowns continue to happen!

Our current plan is to build it where it could function in a similar way to these groups should they ever get taken down, but also serve as an extension for these groups for as long as Facebook allows these groups to stay up essentially meaning that if you crosspost and link between the two, it provides a way to comment anonymously, prevent screenshots, and allow us better tracking on which users view content that later leaks. At least that's the current plan

3

1/8/24, 2:13 PM

Case: 1:24-cv-00678 Document #: 1 Filed: 01/25/24 Page 46 of 66 PageID #:46
Case: 1:24-cv-00200 Document #: 1-3 Filed: 01/08/24 Page 27 of 45 PageID #:27

Donate                                    Share



## Organizer



**Paola Sanchez**
Organizer
Brooklyn, NY

Contact

## Words of support (33)

Please donate to share words of support.



**Kathy Rose**
$100 • 7 mos

Thank you for all the meaningful work that you do to help keep women safe! 



**Shamaly Valdez**
$10 • 9 mos

Thank you for having the safe space to share and look out for one another



**Sara Ghattas**
$50 • 9 mos

Thank you for all that you do. It is a thankless job. As a woman who organizes
events as part of her side hustle, I wish I had folks understand how important you
are to our safety. Protect women!



**Erin Cheever**
$50 • 9 mos

The truth about the sickness in online dating culture must come out.



**Angela Teasenfitz**
$20 • 9 mos

You're doing God's work. Thank you!!!



**Stella Guan**
$20 • 10 mos

Thank you so much for your effort, Paola. Please reach out if you need any design
help with the new platform.



**Nicole Eckert**
$20 • 10 mos

Although lost access when the big crash happened. You guys brought light to a situation and were a man wasted 5 years of my time. The women that commented shared and had also dealt with him were so supportive and we are all bonded. Doing the Lords... Read more



**MANDY VERNIER**

$25  •  10 mos

Women supporting women to protect women. Thank you for developing a safe space for all of us trying to navigate the dating world. I'm sure your efforts have saved alot of women from pain and heartbreak.



**Sarah Horrigan**

$25  •  10 mos

As a moderator... a separate platform would be life changing! Thank you for all you do Paola



**Kellie May**

$20  •  10 mos

♥

**Show more**

Created March 15th, 2023  •  ⟨♦⟩ Community

⚑  Report fundraiser

## Your easy, powerful, and trusted home for help



**Easy**
Donate quickly and easily.



**Powerful**
Send help right to the people and causes you care about.



**Trusted**
Your donation is protected by the GoFundMe Giving Guarantee.

More ways to make a difference. Find fundraisers inspired by what you care about.



Nearby ∨



EXHIBIT

B



EXHIBIT

C



1 TO 7

C

1 of 7



2



Nikko, 32

👍 Like    💬 Comment    ✉️ Send    3 ●

All comments ▾

**Nicole Morisco**
I matched with him a month or so ago but convo never went anywhere

Like  Reply  5d

**Hannah Eve**
I went out with him a few times just over a year ago– he told me what I wanted to hear until I slept with him and then he ghosted... I'd steer clear.

Like  Reply  5d

**Marnie Knouse**
🔺 He's been posted here before. The poster said he sent her a slew of texts calling her names because she didn't want to spend the night with him. I just searched and this was on November 2nd so take a look!

Like  Reply  5d

3



4





**Anonymous member**
December 27, 2023 at 11:48 AM · 🌐

Any ▲ or 🍩?
Nikko, 32

👍 Like     ◯ Comment     ▷ Send

**Top comments**

**Nicole Morisco**
I matched with him a month or so ago but convo never went anywhere

Like   Reply   5d

**Marnie Knouse** ▲▲ He's been posted here before. The poster said he sent her ▲▲ a slew of texts calling her names ▲ because she didn't want to spend the night with him. I just searched and this was on November 2nd so take a look!

Like   Reply   5d

6



1/2/24, 10:12 AM

Paola Sanchez | Creating safe & empowering communities for women to thrive in. | Patreon

Q Find a creator

Create on Patreon

Log in

EXHIBIT

1 - 2

Skip navigation

# Paola Sanchez

Creating safe & empowering communities for women to thrive in.

54 members · 158 posts · $146.8/month

Join for free

Home    About

1/2/24, 10:12 AM

Paola Sanchez | Creating safe & empowering communities for women to thrive in. | Patreon

Log in

Skip navigation



## Sip of SafeTea
**$5** / month

This tier level is perfect for those who want to show a little more support and want to stay updated on the development and growth of safe spaces for women.

- General Support



## Cup of SafeTea
**$10** / month

This is the tier level for those who want to show their support while also getting a behind the scenes look at the day to day operations of the current Red Flag Awareness groups as well as the development of our safetea dating app 🟠 This tier includes: - beta app participation after one donation ever (once available) - interesting insights in running the groups as well as our development process - lists of worldwide group growth over time, mockups of apps and features, etc.

- Early access
- Behind-the-scenes content
- Work-in-progress updates (digital)

## Pot of SafeTea
**$25** / month

This is the tier level for those who strongly believe in the cause and might be interested in having a direct influence on the decision making process and have input in the development of our safetea dating app as well as the direction of the current groups 💚 p.s. omg I love you 😊 This tier includes: - beta app participation after one donation ever (once available) - interesting insights in running the groups as well as our development process - lists of worldwide group growth over time, mockups of apps and features, etc. - exclusive polls when making tough decisions on names, direction, etc. -a private community where we can further

1/8/24, 11:34 A

(4) Are We Dating The Same Guy? | Chicago | Facebook

**EXHIBIT**

E

1-5

# Search Results

in Are We Dating The Same Guy? | Chicago

Nikko D'Ambrosio

## Filters

Posts You've Seen

Most Recent

Posted by

Tagged Location

Date Posted

**Anonymous member**

December 28, 2023 at 11:31 AM

Hii any tea on Nick? Seems sweet and thinking of meeting up. Just want to check for any red flags or anything before meeting in person since its my first time meeting someone from online. Thanks ladies

3 comments

Like          Comment          Send

**Anonymous member**

December 27, 2023 at 11:48 AM

Any ▶ or – ?
Nikko, 32

https://www.facebook.com/groups/315938570542151/search/?q=Nikko D%27Ambrosio

1 of 5

1/8/24, 11:34 AM



(4) Are We Dating The Same Guy? | Chicago | Facebook

# Search Results

in Are We Dating The Same Guy? | Chicago

 

## Filters

Posts You've Seen

Most Recent

Date Posted



**Anonymous member**
December 3, 2023

Nick ▶▶▶ ▼▼▼ details/pics in comments once approved.

 7



3 comments

Like          Comment          Send

3 comments

1/8/24, 11:34 AM

(4) Are We Dating The Same Guy? | Chicago | Facebook

## Search Results

in Are We Dating The Same Guy? | Chicago



### Filters

Posts You've Seen

Most Recent

Date Posted

**Anonymous member**
November 6, 2023

Any – or ▼ on Nick / Nicolas / Nicholas?

Like        Comment        Send

1 comment

**Anonymous member**
November 2, 2023

Any – on Nikko 32?

Like        Comment        Send

https://www.facebook.com/groups/315938570542151/search/?q=Nikko D%27Ambrosio

https://www.facebook.com/groups/315938570542151/search/?q=Nikko D%27Ambrosio

1/8/24, 11:34 AM

(4) Are We Dating The Same Guy? | Chicago | Facebook

## Search Results

in Are We Dating The Same Guy? | Chicago

**Filters**

Posts You've Seen

Most Recent

Date Posted

2:40



4

https://www.facebook.com/groups/315938570542151/search/?q=Nikko D%27Ambrosio

1/8/24, 11:34 AM

(4) Are We Dating The Same Guy? | Chicago | Facebook

**Search Results**

in Are We Dating The Same Guy? | Chicago

Filters

Posts You've Seen

Most Recent

Date Posted

Like

Comment

Send

3 comments

**EXHIBIT**

F



Are We Dating The Same Guy? | Chicago

 **Paola Sanchez** ✔
Moderator · October 2, 2022 · 🌐

... 

We've been getting more reports of screenshots leaving the group and things getting back to some of the guys that were posted, so I'm dedicating a week of pinned posts to go over ==the harm== this can cause, how to protect yourself, and what to do if it happens.

I can not emphasize enough how important it is for you to not screenshot or share anything you see in here.

You may be friends with a guy and think that the words posted about him can't possibly be true, but I'm telling you right now to please trust me when I say that some men act differently with women in the dating scene and that can include violent encounters and behavior that they don't exhibit in front of friends and colleagues. Letting your friend know he was shared here compromises the safety of every girl that spoke up.

You may have just found your boyfriend on here and feel the need to confront him about it. Don't let your emotions cloud your judgement. Take the time to think of another place where you heard the information and don't ever let him know that he was posted in any sort of group. That slip up could lead him back here to harass girls in an effort to destroy the evidence.

You may think you're just innocently sharing something funny, but then that person sends it to someone who knows someone and soon after the guy is coming after the girl who thought she could post safely here. Just put yourself in her shoes for one second and think about how scared she must feel.

We have a rigorous vetting process and have been working extremely hard to keep out any fake profiles and Trojan horses. And honestly I think we've gotten it down really good! Just to give you one example of the things we're dealing with: One man who was posted about in the group created two fake profiles (having stolen his profile pics from a girl on Instagram) in an attempt to get in. We caught and blocked both of them, at which point he messaged every moderator of the page threatening legal action in an attempt to get the post taken down.

We're working our absolute hardest to keep this group as safe as humanly possible, but it's all for nothing if girls are leaking info out of the group anyways.

So please, strongly consider ==the harm== you might cause and don't screenshot or share anything outside of the group. We want to keep this as safe of a space as we possibly can.

And, as always, thank you from the bottom of my heart to the vast majority of you who are doing nothing wrong except existing in here and supporting each other 😊 🙏 😊

 👍❤️🤗 30

27 comments



From:
To:
Date:



6:35    🎙    .ıl LTE 41

1/14/24, 12:53 AM

**Paola Sanchez** ✓
Admin · April 6 · 🌐

Hey everyone! Some of you may have noticed already, but early last week I got my account back 😣❤️ It only took a letter to the CA Attorney General, tickets submitted by Meta employees who were in some of our groups, and over 2 weeks of stress to get it back 😣🙏

That being said, I'm still going to start putting more of my time towards developing our own app just in case shutdowns continue to happen! If you'd like to sign up to receive progress updates on the app, I set up a simple sign up page at https://www.awdtsg.com ❤️ the signup has optional fields for your name and city. If this page ever goes down, we'll use that email list to help regroup members 😊 if you want updates but don't check your email, I'll also be posting updates on my Instagram @hownowpaopao 💕

Our current plan is to build it where it could function in a similar way to these groups should they ever get taken down, but also serve as an extension for these groups for as long as Facebook allows these groups to stay up 😊 essentially meaning that if you crosspost and link between the two, it provides a way to comment anonymously, prevent screenshots, and allow us better tracking on which users view content that later leaks. At least that's the current plan 😊

The other thing I wanted to mention today is that, with it having been months since we last did the pinned posts here, starting on Monday we're going to repost all of them over the next month or two! In the spirit of me focusing more of my time on the app, some of the moderators who stepped up to keep things running while I was deactivated will be the ones running the series in most cities 😊

We wrote out a bunch of informational posts that will hopefully answer some of the most common questions and criticisms 😊 Some of the topics we'll be covering include:

Anonymous Posting Issues



Screenshots - Don't Do It
Screenshots - Risk
Screenshots - Be Prepared
Screenshots - Confrontation
Screenshots - What To Do
Posts and Content - What We Accept



Sent from my iPhone