**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NIKKO D'AMBROSIO,

     Plaintiff,

vs.

ABBIGAIL RAJALA, CAROL RAJALA, RODNEY
RAJALA, PAOLA SANCHEZ, BLAKE
MILLBRAND, META PLATFORMS, INC., a
Delaware Corporation, SPILL THE TEA, INC., a
Delaware Corporation, JANE DOES 1-26, Unnamed
Defendants using screen names: Sam Daniels, Alexis
Kyle, Coraline Lotz, Dianne Wesley, Madison Pierce,
Madison Bynum, Vanessa Villatoro, Christy Graessle,
Sharleen Waa, Kaitlyn Mishay Moody, Linda Juarez,
Amber Michelle, Laura Maddox, Alina Drake, Chandi
Constance, Alicia Ann, Salisha P. Dean, Jillian Cara,
Jen Rahbar, Shannon Marie, Luisa Resendez, Daryl
Ceasar, Lisa Miko, Amy Dukstein-Reynolds, Melissa
Pinkerton, Monica Tska,

     Defendants.

Case No. 1:24-cv-678

District Judge Sunil R. Harjani

## DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS
## FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.      D'AMBROSIO'S IRPA CLAIM FAILS AS A MATTER OF LAW ................................3

      A.      The IRPA Claim Fails As A Matter Of State Law ..................................3

            1.      D'Ambrosio Does Not Plausibly Allege That His Identity Was Misappropriated For A "Commercial Purpose" ...........................3

            2.      IRPA Exempts Meta's Alleged Use Of D'Ambrosio's Photograph............7

      B.      Section 230 Bars D'Ambrosio's IRPA Claim .........................................7

            1.      Section 230 Forbids Treating Meta As A "Publisher"................................8

            2.      D'Ambrosio's Attempts To Plead Around Section 230 Fail ......................9

      C.      The First Amendment Bars D'Ambrosio's IRPA Claim .......................14

II.     D'AMBROSIO'S UNJUST-ENRICHMENT CLAIM ALSO FAILS.............................15

CONCLUSION.....................................................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................3, 14

*Blair v. Nevada Landing P'ship*,
   859 N.E.2d 1188 (Ill. App. 2006) ...............................................4

*Chapman v. Journal Concepts, Inc.*,
   528 F. Supp. 2d 1081 (D. Haw. 2007) .........................................6

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
   519 F.3d 666 (7th Cir. 2008) ......................................................8

*Children's Health Defense v. Meta Platforms, Inc.*,
   __ F.4th __, 2024 WL 3734422 (9th Cir. Aug. 9, 2024) .................14, 15

*Christianson v. Henry Holt & Company, LLC*,
   2007 WL 2680822 (C.D. Ill. June 29, 2007) ................................6, 15

*Collier v. Murphy*,
   2003 WL 1606637 (N.D. Ill. Mar. 26, 2003)...............................7

*Douglass v. Hustler Magazine, Inc.*,
   769 F.2d 1128 (7th Cir. 1985) ....................................................4, 12

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019).........................................................8, 14

*Free Kick Master LLC v. Apple Inc.*,
   140 F. Supp. 3d 975 (N.D. Cal. 2015) .........................................10

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) ......................................................3

*Hepp v. Facebook*,
   14 F.4th 204 (3d Cir. 2021) .......................................................10, 11, 12, 13

*Huon v. Denton*,
   841 F.3d 733 (7th Cir. 2016) ......................................................8, 13

*Huston v. Hearst Commc'ns, Inc.*,
   53 F.4th 1097 (7th Cir. 2022) ....................................................7

*In re Social Media Adolescent Addiction/Personal Injury Prods. Liability Litig.*,
  702 F. Supp. 3d 809 (N.D. Cal. 2023) ...................................................................14

*La'Tiejira v. Facebook, Inc.*,
  272 F. Supp. 3d 981 (S.D. Tex. 2017) .....................................................................9

*Lama v. Meta Platforms, Inc.*,
  ___ F. Supp. 3d ___, 2024 WL 2021896 (N.D.N.Y. May 6, 2024) ........................9

*Lloyd v. Facebook, Inc.*,
  2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .............................................................9

*Love v. Simmons*,
  2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ..........................................................7, 15

*Lukis v. Whitepages Inc.*,
  549 F. Supp. 3d 798 (N.D. Ill. 2021) .......................................................................4

*Moody v. NetChoice, LLC*,
  144 S. Ct. 2383 (2024) ..........................................................................................2, 15

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) .........................................................................9, 10, 11

*Ratermann v. Pierre Fabre USA, Inc.*,
  651 F. Supp. 3d 657 (S.D.N.Y. 2023).....................................................................12

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023)................................................................................................14

*Vanzant v. Hill's Pet Nutrition, Inc.*,
  934 F.3d 730 (7th Cir. 2019) .................................................................................15

*Vrdolyak v. Avvo, Inc.*,
  206 F. Supp. 3d 1384 (N.D. Ill. 2016) .....................................................................3

## STATUTES

18 U.S.C. § 1591.................................................................................................. 13, 15

18 U.S.C. § 2421A ..................................................................................................... 15

42 Pa. Cons. Stat. § 8316(e).................................................................................. 16, 17

47 U.S.C. § 230...................................................................................................... *passim*

47 U.S.C. § 230(b)(2) ................................................................................................. 15

47 U.S.C. § 230(c)(1)....................................................................................... 2, 9, 10, 11

iii

47 U.S.C. § 230(e)(2) ............................................................................................ *passim*

47 U.S.C. § 230(e)(3) ........................................................................................ 13, 14

47 U.S.C. § 230(e)(4) ........................................................................................ 13, 14

47 U.S.C. § 230(e)(5)(B) ......................................................................................... 13

47 U.S.C. § 230(e)(5)(B)-(C) .................................................................................. 14

47 U.S.C. § 230(f)(2) ............................................................................................... 11

47 U.S.C. § 230(f)(3) ............................................................................................... 11

765 ILCS 1075/1 *et seq* ............................................................................................ 1

765 ILCS 1075/5 ....................................................................................................... 5

765 ILCS 1075/10 ................................................................................................... 17

765 ILCS 1075/30(a) ........................................................................................ 1, 4, 5

765 ILCS 1075/35(b)(1) .................................................................................... 2, 4, 9

N.Y. Civ. Rights Law § 51 ..................................................................................... 16

## RULES

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 3

## TREATISES

Restatement (Second) of Torts § 652 cmt. d ............................................................. 7

Restatement (Second) of Torts §§ 652A-E ............................................................. 16

## OTHER AUTHORITIES

H.R. Journal, 90th Gen. Assemb., Reg. Sess. 224, 225 (Ill. Apr. 24, 1997) .................................. 5

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Meta Platforms, Inc. moves to dismiss the First Amended Complaint (Dkt. 29).

## INTRODUCTION

Plaintiff Nikko D'Ambrosio blames Meta and a host of other defendants for critical comments that several women made about him on an online Facebook Group called "Are We Dating The Same Guy?" Although D'Ambrosio brings defamation, doxing, and false light privacy claims against the other defendants—Abbigail Rajala, who posted critical comments about him; Rajala's relatives, who allegedly allowed her to access Facebook through their home internet network; and the administrators of the "Are We Dating The Same Guy?" Facebook Group—his only substantive claim against Meta is under the Illinois Right of Publicity Act (IRPA), 765 ILCS 1075/1 *et seq.* His theory is that the other defendants posted what he calls his "intellectual property"—namely, "a photograph … containing his personal likeness"—and that Meta unlawfully "republish[ed] [his] intellectual property and likeness without authorization for the purpose of commercial profit." Dkt. 29 ¶¶ 67, 71. That theory fails as a matter of law three times over: first, under IRPA itself; second, under Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which forbids treating Meta as the "publisher" of other people's Facebook posts; and third, under the First Amendment, which offers robust protection for speech on and by services like Facebook.

First, IRPA creates a cause of action only for claims arising from the use of "an individual's identity for commercial purposes." 765 ILCS 1075/30(a). No defendant in this case, least of all Meta, used D'Ambrosio's identity for a commercial purpose. Rather, women who had bad dating experiences with him posted his photo and name on Facebook in order to warn other women to steer clear. D'Ambrosio does not allege that they posted his photo for any commercial purpose. While he alleges that Meta derived commercial gain from his photo by displaying advertisements

on webpages where the photo appeared, that theory of liability fails under settled case law. In any event, use of an "individual's identity" in an "article" or visual "work"—such as in a comment posted on Facebook—is not actionable under IRPA unless that work is "in and of itself a commercial advertisement." 765 ILCS 1075/35(b)(1) (emphasis added). Because D'Ambrosio's photo was not used in a commercial advertisement, he has no IRPA claim.

Second, even if D'Ambrosio had pleaded an IRPA claim, it would be barred by Section 230, which provides in pertinent part that the operator of an "interactive computer service" may not be treated as the "publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). D'Ambrosio seeks to hold Meta, the operator of an interactive computer service, liable for "republish[ing]" his photograph, which was allegedly posted to Facebook by other information content providers (Rajala and other women). Dkt. 29 ¶ 71. This claim runs headlong into Section 230, and D'Ambrosio's effort to circumvent that provision by attempting to characterize his IRPA claim as an "intellectual property" claim fails.

Third, any IRPA claim here would run afoul of the First Amendment. Meta has a First Amendment right to make "choices about whether—and, if so, how—to convey posts having a certain content or viewpoint." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2405 (2024). D'Ambrosio's IRPA theory—which seeks damages for all references to his "identity" on Facebook—would plainly violate Meta's First Amendment rights.

D'Ambrosio's IRPA claim thus fails as a matter of law, and his unjust enrichment claim—which is not pleaded as an independent cause of action—fails along with it. None of these flaws is curable, let alone all of them, so the claims against Meta should be dismissed with prejudice.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must state a claim for relief that is "plausible" on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must

plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true." *Id.* Where, as here, a complaint's allegations establish the basis for a defense under Section 230, the court may consider that defense on a motion to dismiss. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023). Likewise, Meta's argument that the First Amendment forecloses D'Ambrosio's claim may be evaluated on a motion to dismiss. *See Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386-87 (N.D. Ill. 2016).

## ARGUMENT

## I. D'AMBROSIO'S IRPA CLAIM FAILS AS A MATTER OF LAW

### A. The IRPA Claim Fails As A Matter Of State Law

D'Ambrosio's IRPA claim fails as a matter of state law for two independent reasons. First, IRPA provides a right of relief for the unauthorized use of the plaintiff's identity "for commercial purposes," 765 ILCS 1075/30(a), but D'Ambrosio's claim does not involve the use of his identity for commercial purposes under IRPA. Second, IRPA expressly provides that the "use of an individual's identity in an attempt to portray" that individual in an "article" or visual "work" is not actionable unless the work is, "in and of itself," a "commercial advertisement for a product, merchandise, goods, or services." 765 ILCS 1075/35(b)(1). But the Facebook posts of which D'Ambrosio complains are not in and of themselves commercial advertisements.

#### 1. D'Ambrosio Does Not Plausibly Allege That His Identity Was Misappropriated For A "Commercial Purpose"

Analysis of D'Ambrosio's IRPA claim begins—and should end—with the question whether the complaint plausibly alleges that his identity was misappropriated for a commercial purpose. It does not: the IRPA claim rests on the allegation that defendants "intentionally

republished … a photograph" that contained D'Ambrosio's "personal identity and likeness" without his consent. Dkt. 29 ¶ 67. But D'Ambrosio does not plausibly connect the use of that photograph to any cognizable commercial purpose.

IRPA's reach is limited: it "codifies the common law right of publicity in Illinois." *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 805 (N.D. Ill. 2021) (quoting H.R. Journal, 90th Gen. Assemb., Reg. Sess. 224, 225 (Ill. Apr. 24, 1997)). That right arises from the "commercial-appropriation branch of the right of privacy," which "prevent[s] others from using one's name or picture for commercial purposes without consent." *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985). As at common law, an IRPA misappropriation claim has three elements: (1) appropriation of one's name or likeness (2) without one's consent (3) for commercial benefit. *See Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1191-92 (Ill. App. 2006). Thus, under IRPA, a plaintiff may assert a misappropriation claim only where the defendant has used the plaintiff's identity "for commercial purposes." 765 ILCS 1075/30(a). And IRPA defines "commercial purpose" narrowly as the "public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5.

D'Ambrosio does not allege that anyone used his photograph for a commercial purpose: according to the complaint, Rajala published his photograph on Facebook "to over 100,000 anonymous women with the intent of causing [him] reputational harm." Dkt. 29 ¶ 46. There is no allegation that she sought or received any commercial benefit for posting that photo, and the complaint's attachments show that the photo was posted alongside a note indicating that after Rajala met D'Ambrosio "organically," he became "[v]ery clingy very fast" and "[f]launted money

4

very awkwardly and kept talking about how I don't want to see his bad side, especially when he was on business calls." *Id.* Ex. C at 4. Rajala noted that after she "blocked his number, he texted me on another one." *Id.* Put simply, Rajala posted D'Ambrosio's photo in order to warn other women that he was a cad. D'Ambrosio does not allege that Rajala posted the photo in connection with the sale of any product or services, for the purpose of advertising any product or services, or for the purpose of fundraising. *See* 765 ILCS 1075/5 (definition of "commercial purpose"). He thus fails to plead that Rajala used his photo for a commercial purpose under IRPA.

The same holds for Meta. Rajala used D'Ambrosio's photo to publicize her dating experience with him. She happened to do so on Facebook, prompting D'Ambrosio to assert that Meta is liable under IRPA because it "republished" the photo for "the purpose of commercial profit." Dkt. 29 ¶ 71. But that allegation again neglects IRPA's definition of "commercial purpose," as D'Ambrosio does not allege that Meta "use[d]" or "h[eld] out" D'Ambrosio's photo "on or in connection with the offering for sale or sale of a product, merchandise, goods, or services," "for purposes of advertising or promoting products, merchandise, goods, or services," or for "fundraising." 765 ILCS 1075/5.

D'Ambrosio gestures at the "commercial purpose" requirement by alleging that "Meta … willfully and intentionally displayed and continue[s] to display advertising materials for the purposes of commercial profit *on pages … misappropriating Plaintiff's likeness*." Dkt. 29 ¶ 64 (emphasis added). That is not a viable theory of IRPA misappropriation, as its necessary implication would be to convert non-commercial material displayed in a newspaper, magazine, book, or website into an actionable misappropriation merely because such publications *also* carry advertisements or are sold to customers. As the court in *Christianson v. Henry Holt & Company,*

*LLC*, 2007 WL 2680822 (C.D. Ill. June 29, 2007), explained, "if an individual appeared in a parade, and the parade was discussed in a magazine," the individual has no IRPA claim. *Id*. at *3.

The result does not change if the magazine displays advertisements, just as the "fact that a book is sold does not make the speech it contains commercial in nature." *Id.* at *3 n.1. This principle aligns with the Restatement's understanding of common law misappropriation, under which the defendant's being "engaged in the business of publication … is not enough to make [an] incidental publication a commercial use of [a] name or likeness." Restatement (Second) of Torts § 652C cmt d. "Thus a newspaper, although it is not a philanthropic institution, does not become liable [for misappropriation] … to every person whose name or likeness it publishes." *Id.*; *see also Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081, 1096 (D. Haw. 2007) (the unauthorized use of a person's likeness for a "magazine story" does not give rise to a common law misappropriation claim, "even if the article was arguably motivated by [the magazine's] desire for profits or tangentially results in increased income"). The same holds for Facebook's placement of advertisements on webpages displaying users' photographic posts.

D'Ambrosio hints at two other theories, but they are even more attenuated from IRPA's "commercial purpose" requirement. First, D'Ambrosio alleges that Meta "took particular action to misappropriate [his] likeness … by way of its recommendation algorithms." Dkt. 29 ¶ 63. That allegation does not even pretend to connect Meta's supposed use of his photo with any commercial purpose. Second, D'Ambrosio alleges that Meta "continues to collect consumer information from users for the purpose of commercial profit on pages … misappropriating [his] likeness." *Id.* ¶ 65. That vague allegation has nothing to do with the commercial purposes cognizable under IRPA: "offering for sale or sale" of a product or services, "advertising or promoting" products or services, or "fundraising." 765 ILCS 1075/5. IRPA covers only the "use or holding out of an individual's

6

identity with the aim of effectuating a sale." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1101 (7th Cir. 2022). Meta's purported "collect[ion]" of "consumer information" from webpages displaying D'Ambrosio's photo does not qualify. He therefore fails to state an IRPA claim.

### 2. IRPA Exempts Meta's Alleged Use Of D'Ambrosio's Photograph

D'Ambrosio does not state an IRPA claim for a second, independent reason. Section 35(b)(1) of IRPA expressly exempts the "use of an individual's identity" to "portray … that individual" in an "article" or "visual … work," so long as the work "does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services." 765 ILCS 1075/35(b)(1). That is precisely what happened here. According to the complaint, Rajala posted D'Ambrosio's photo in a visual work on Facebook in order to portray her experience with his substandard dating behavior. Dkt. 29 ¶ 46 & Ex. C. Under Section 35(b)(1), that portrayal does not amount to an act of misappropriation unless it is, "in and of itself," a "commercial advertisement for a product, merchandise, goods or services." 765 ILCS 1075/35(b)(1). Rajala's post plainly was not "in and of itself" a commercial advertisement—from either Rajala's or Meta's perspective—and D'Ambrosio does not even allege it was. For that reason, too, D'Ambrosio fails to state an IRPA claim. *See Love v. Simmons*, 2024 WL 809107, at *7-9 (N.D. Ill. Feb. 27, 2024) (rejecting misappropriation claim involving use of plaintiff's identity in a music video and documentary); *Collier v. Murphy*, 2003 WL 1606637, at *2-3 (N.D. Ill. Mar. 26, 2003) (rejecting misappropriation claim involving use of plaintiff's identity in a documentary).

### B. Section 230 Bars D'Ambrosio's IRPA Claim

Even if D'Ambrosio stated an IRPA claim against Meta, the claim would be barred by Section 230, which forbids any "provider … of an interactive computer service" from being "treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 covers D'Ambrosio's claim because he seeks to

treat Meta as the publisher of information provided by Rajala. D'Ambrosio's effort to plead around Section 230 by re-styling his IRPA claim as an "intellectual property" claim is meritless.

### 1. Section 230 Forbids Treating Meta As A "Publisher"

As noted, Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "This means that for purposes of defamation and other related theories of liability, a company like Gawker [a blog focused on celebrities] cannot be considered the publisher of information simply because the company hosts an online forum for third-party users to submit comments." *Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016). So, where a website hosts information content generated by others, the website may not be treated as the "author [or] … 'speaker' of the posters' words, given § 230(c)(1)." *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008).

That principle precludes D'Ambrosio's IRPA claim. Meta operates Facebook, which is unquestionably an "interactive computer service" under Section 230. See 47 U.S.C. § 230(f)(2) (defining an "interactive computer service" as any "information service … that provides or enables computer access by multiple users to a computer server"); *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) (Facebook is an interactive computer service). By alleging that Rajala posted his photo on Facebook, Dkt. 29 ¶¶ 2, 77, D'Ambrosio necessarily pleads that she is an "information content provider," meaning one "responsible … for the creation or development of information provided through the Internet." 47 U.S.C. § 230(f)(3). And D'Ambrosio seeks to impose liability on Meta for "republish[ing]" the photo that Rajala posted. Dkt. 29 ¶ 71. Thus, D'Ambrosio treats Meta, a "provider … of an interactive computer service," as the "publisher" of "information provided by another information content provider," which Section 230 forbids. 47 U.S.C. § 230(c)(1). Courts routinely dismiss similar claims against Meta, and this Court should do the

same.  *See, e.g., Lama v. Meta Platforms, Inc.*, __ F. Supp. 3d __, 2024 WL 2021896, at *4-7 (N.D.N.Y. May 6, 2024); *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *7-8 (N.D. Cal. Oct. 3, 2022); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 993-94 (S.D. Tex. 2017).

### 2.     D'Ambrosio's Attempts To Plead Around Section 230 Fail

D'Ambrosio tries to plead around Section 230 in three ways, all of which fail.

a.     D'Ambrosio repeatedly alleges that Meta infringed his "intellectual property" rights and styles his IRPA claim as an "intellectual property" claim.  Dkt. 29 ¶¶ 62-72.  He does so in an effort to invoke the "intellectual property" exception to Section 230, which provides that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property."  47 U.S.C. § 230(e)(2).  But Section 230(e)(2) applies only to federal intellectual property law.  As the Ninth Circuit explained in *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007), "federal intellectual property law is relatively well-established," while "state laws protecting 'intellectual property,' however defined, are by no means uniform."  *Id.* at 1118. Accordingly, "permitting the reach of any particular state's definition of intellectual property to dictate the contours of [Section 230's application] would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes."  *Id.*  It follows, the Ninth Circuit concluded, that the term "intellectual property" in Section 230(e)(2) refers to "federal intellectual property."  *Id.* at 1119.

That understanding subsection (e)(2) accords with Section 230's context and structure. Throughout Section 230, where Congress wished to define the relationship between Section 230 and state law, it did so expressly.  *See* 47 U.S.C. § 230(e)(3) (providing that Section 230 shall not be "construed to prevent any State from enforcing any State law that is consistent with this section" and preempting any "cause of action" or "liability" under "any State or local law that is inconsistent with this section"); *id.* § 230(e)(4) (providing that Section 230 does not "limit the application of

9

the Electronic Communications Privacy Act of 1986 … or any similar State law"); *id.* § 230(e)(5)(B) (providing that Section 230 does not limit "any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 1591 of Title 18"). Accordingly, Congress's choice not to refer expressly to "state" intellectual property laws in Section 230(e)(2) necessarily conveys that a plaintiff cannot evade Section 230 by styling his claim under state intellectual property law. *See Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015) (holding that Section 230 forbids the assertion of "state intellectual property claims" against interactive computer services).

Meta acknowledges that a divided Third Circuit panel, disagreeing with *Perfect 10*, held that Section 230(e)(2) encompasses claims arising under "state intellectual property law." *Hepp v. Facebook*, 14 F.4th 204, 211-212 (3d Cir. 2021). In the Third Circuit's view, Section 230's structure "cuts both ways" because it "suggest[s] that when Congress wanted to cabin" state law, "it knew how to do so—and did so explicitly." *Id.* at 211. The court also reasoned that because "property rights can facilitate market exchange," interpreting Section 230(e)(2) to encompass state intellectual property claims would "track[ ] Congress's pro-free-market goals." *Id.*

The Ninth Circuit has the better of the dispute. As for statutory structure, Section 230 generally provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). So Congress knew how to—and did—expressly provide that any state law cause of action that is "inconsistent with" Section 230 is preempted. *Id.* Thus, a state law intellectual property claim that rests on treating the operator of an interactive computer service as the publisher of content developed by others is inconsistent with Section 230. And while Congress expressly provided carveouts for certain state laws, *see id.* § 230(e)(4) ("any … State law" "similar" to the Electronic

Communications Privacy Act of 1986); *id.* § 230(e)(5)(B)-(C) ("State law" comparable to sex trafficking offenses under 18 U.S.C. § 1591 or § 2421A), it provided no such express carveout for state intellectual property law. As Judge Cowen noted in his *Hepp* dissent, it is incongruous to conclude that "Congress [would] have really gone so far as to grant immunity from a wide range of state and federal laws—including state criminal law—yet permit claims to go forward under the nebulous (and expansive) category of state 'intellectual property'/'rights of publicity' laws." *Hepp*, 14 F.4th at 220 (Cowen, J., dissenting in part).

As for Congress's "pro-free-market goals," a categorical carveout for state intellectual property claims would undermine those goals. Congress enacted Section 230 to "preserve the vibrant and competitive free market ... [for] interactive computer services, unfettered by ... State regulation." 47 U.S.C. § 230(b)(2). As the Ninth Circuit correctly recognized, broadly exempting the cacophony of "state laws protecting 'intellectual property'" from Section 230's reach would directly undermine the "expressed goal[s]" of Section 230. *Perfect 10*, 488 F.3d at 1118; *see also Hepp*, 14 F.4th at 221-26 (Cowen, J., dissenting in part).

In any event, even if *Hepp* correctly held that Section 230(e)(2) could apply to some state law intellectual property claims, IRPA is not an "intellectual property" law within the meaning of the provision. As noted, the Seventh Circuit has explained that IRPA codified a common law "branch of the right of privacy"—privacy, not intellectual property. *Douglass*, 769 F.2d at 1138. The Restatement reflects the origins and nature of that right, treating the "appropriation of name or likeness" alongside other common law "invasion of privacy" torts like intrusion upon seclusion and false light invasion of privacy. *See* Restatement (Second) of Torts §§ 652A-E. Illustrating the point, several courts have recognized that New York's analog to IRPA, creating a cause of action for the unauthorized use of a "name, portrait, picture, likeness or voice ... for advertising

purposes," N.Y. Civ. Rights Law § 51, is a "statutory right to privacy, not property." *Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 668 (S.D.N.Y. 2023) (collecting cases). Thus, because that right "sounds in privacy, not intellectual property," it "does not fall within the intellectual property exception to Section 230." *Id*. at 669. The same reasoning applies to IRPA.

This result is consistent even with *Hepp*. *Hepp* held only that Pennsylvania's right of publicity statute is an "intellectual property law." That holding expressly rested on the ground that the Pennsylvania statute offers a right of action "only for those whose valuable interest in their likeness 'is developed through the investment of time, effort, and money.'" *Hepp*, 14 F.4th at 214 (emphasis added) (quoting 42 Pa. Cons. Stat. § 8316(e)). At the same time, the court "express[ed] no opinion as to whether other states' rights of publicity qualify as intellectual property as a matter of federal law." *Id.* This is significant, for by contrast to the Pennsylvania statute, IRPA requires no showing that the plaintiff's interest in his likeness was "developed through the investment of time, effort, and money." Rather, IRPA provides that "[t]he right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity," 765 ILCS 1075/10, and crucially defines "identity" to mean "*any* attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice," 765 ILCS 1075/5 (emphasis added). "Any" attribute means any attribute, not just attributes that, as with the Pennsylvania statute, are "developed through the investment of time, effort, and money"—a concept aligned with property, not privacy, rights. 42 Pa. Cons. Stat. § 8316(e); *see also Hepp*, 14 F. 4th at 214. Thus, *Hepp* would not understand IRPA to be among the state intellectual property laws encompassed by Section 230(e)(2).

Indeed, it is hard to imagine what would be left of Section 230 if an IRPA claim like D'Ambrosio's could serve as an "intellectual property" end-run around Section 230. D'Ambrosio's complaint is that various women defamed him through posts on Facebook. Dkt. 29 ¶¶ 13, 17-19, 38, 46-47, 56-59, 62-65, 76-86. Section 230 indisputably prevents the assertion of such defamation claims against interactive computer services like Facebook. *See Huon*, 841 F.3d at 741 (Section 230 protects against "defamation and other related theories of liability"). Under D'Ambrosio's theory, a plaintiff could escape Section 230 simply by restyling any defamation claim—which must turn on the defendant's reference to the plaintiff's identity—as an "intellectual property" claim involving appropriation of his "identity." That cannot be, and is not, the law.

b.      D'Ambrosio also alleges Meta's "group moderators and administrators" somehow "create[d], edit[ed], modif[ied], and develop[ed] particular pieces of content and software for the purpose of use by the Are We Dating the Same Guy communities." Dkt. 29 ¶ 26. This vague allegation appears intended to suggest that Meta is an information content provider, not an interactive computer service, for Section 230 purposes. But D'Ambrosio does not allege (plausibly or otherwise) that Meta created, edited, modified, or otherwise developed the "pieces of content" that ground his IRPA claim—that is, his photo and other references to his identity—all of which he acknowledges were posted by third parties. Dkt. 29 ¶¶ 2, 18, 46-47, 49-53. He therefore fails to provide "[f]actual allegations" that "raise a right to relief" against Meta "above the speculative level." *Twombly*, 550 U.S. at 555. To the contrary, the remainder of his complaint makes clear that his IRPA claim targets Meta simply for "republish[ing]" content supplied by others. Dkt. 29 ¶ 71. As explained, Section 230 forbids that kind of claim.

c.      In his final effort to plead around Section 230, D'Ambrosio refers to Meta's use of "recommendation algorithms" that supposedly "elevat[ed]" certain "defamatory statements

pertaining to Plaintiff … to the top of users' content feeds." *Id.* ¶ 62; *see also id.* ¶ 63. But the suggestion that using "recommendation" algorithms—that is, algorithms that sort various content in order to display that which a user is likely to find most "relevant," *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 498 (2023)—somehow takes an interactive computer service outside the protections of Section 230 has been rejected by every court to consider it. *See Force*, 934 F.3d at 66-68; *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 833-34 (N.D. Cal. 2023). Algorithms are the tools through which "[a]ll the content" on internet platforms is "filtered." *Twitter*, 598 U.S. at 499. Indeed, earlier this month in *Children's Health Defense v. Meta Platforms, Inc.*, __ F.4th __, 2024 WL 3734422 (9th Cir. Aug. 9, 2024), the Ninth Circuit observed that "Section 230 is just as protective of a provider's right to maintain objectionable content on its platform as it is of a provider's right to delete such content." *Id.* at *12. It surely permits Meta to use algorithms that implement those editorial decisions. *Twitter*, 598 U.S. at 499. There is no basis to chart a different course here.

## C. The First Amendment Bars D'Ambrosio's IRPA Claim

Finally, D'Ambrosio's IRPA claim—even if plausible under state law and not precluded by Section 230—violates the First Amendment. As the Supreme Court recently observed, the First Amendment protects the "editorial choices" of services, like Facebook, that are "engaged in expression" when they make "choices about what third-party speech to display and how to display it." *NetChoice*, 144 S. Ct. at 2393. Like "[t]raditional publishers and editors," Facebook creates its own "curated speech products," and the First Amendment's protection of that speech "does not change because the curated compilation has gone from the physical to the virtual world." *Id.*

D'Ambrosio's sweeping theory of IRPA would—if credited—unconstitutionally impose liability on Meta for its editorial choices. Assume that Rajala posted a vacation photo of herself and D'Ambrosio on Facebook. Under D'Ambrosio's understanding of IRPA, he could bring a

14

suit against Meta for misappropriation. But if Rajala submitted the photo to the *Chicago Tribune*, and the *Tribune* published it in connection with a news story, the First Amendment would clearly bar D'Ambrosio from suing the *Tribune* for misappropriation. *See Christianson*, 2007 WL 2680822, at \*3. The same rule must apply to Facebook, since the First Amendment's protection "does not change because the [published product] has gone from the physical to the virtual world." *NetChoice*, 144 S. Ct. at 2393; *see also Children's Health Defense*, 2024 WL 3734422, at \*9 ("Meta has a First Amendment right to use its platform to promote views it finds congenial and to refrain from promoting views it finds distasteful.").

## II.   D'AMBROSIO'S UNJUST-ENRICHMENT CLAIM ALSO FAILS

"Under Illinois law, unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (citation omitted). If a plaintiff's "substantive claims fail," any related "unjust enrichment" claim fails too. *Love*, 2024 WL 809107, at \*16. D'Ambrosio has no IRPA claim against Meta, so his unjust enrichment claim fails.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the amended complaint with prejudice.

Dated:  August 21, 2024

Respectfully submitted,

/s/ *Gary Feinerman*
Gary Feinerman, One of the Attorneys for
Defendant Meta Platforms, Inc,

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com

Melanie M. Blunschi (*pro hac vice*
forthcoming)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415-391-0600
melanie.blunschi@lw.com

Charles S. Dameron (*pro hac vice*
forthcoming)
LATHAM & WATKINS LLP
555 11th Street, NW, Suite 1000
Washington, DC 20004
Telephone:  202-637-2200
charles.dameron@lw.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 21, 2024, a true and accurate copy of the

foregoing was electronically filed with the CM/ECF system of the United States District Court

for the Northern District of Illinois, which sends notice to counsel of record via e-mail.


Dated: August 21, 2024

/s/ *Gary Feinerman*
Gary Feinerman, One of the Attorneys for
Defendant Meta Platforms, Inc,

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com

17