**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NIKKO D'AMBROSIO,<br><br>    Plaintiff,<br><br>        v.<br><br>ABBIGAIL RAJALA, et al.,<br><br>    Defendants. | Case No. 1:24-cv-00678<br><br>Hon. Sunil R. Harjani |

**SPILL THE TEA DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**
**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Amanda N. Catalano
Megan E. Ryan
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, Suite 700
Chicago, IL 60604
Tel: (312) 762-9450
acatalano@tdrlaw.com
mryan@tdrlaw.com
*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION ............................................................................................................1

FACTS ALLEGED IN THE COMPLAINT ....................................................................2

LEGAL STANDARD ......................................................................................................3

ARGUMENT ...................................................................................................................3

I.      Section 230 of the CDA bars the Plaintiff's claims in their entirety ................................3

       A.     The Plaintiff's claims improperly seek to treat the Spill the Tea Defendants as the "publisher or speaker" of third-party comments .....................4

       B.     The Plaintiff's attempts to plead around Section 230 fail.......................................5

           1.     The Spill the Tea Defendants are not "information content providers"......6

           2.     The "intellectual property" exception to Section 230 does not apply ...... 10

II.     The Plaintiff's claims fail as a matter of law ................................................................ 10

       A.     The IRPA claim fails as a matter of law................................................................. 10

       B.     The defamation *per se* claim fails as a matter of law ........................................... 11

           1.     The complaint does not identify any false statements ............................. 12

           2      The AWDTSG posts do not fall within any of the limited categories of defamation *per se* ................................................................. 12

           3.     The AWDTSG posts are nonactionable opinions..................................... 15

           4.     The complaint does not allege a defamation *per quod* claim .................. 16

       C.     The false light and civil conspiracy claims fail as a matter of law ....................... 16

       D.     The Doxing Act claim fails as a matter of law....................................................... 17

i

1.    The Defendants did not publish "personally identifiable information" ................................................................................... 18

2.    The Plaintiff is not "likely to suffer death, bodily injury, or stalking" ..... 18

3.    The Plaintiff did not suffer "emotional distress," a "substantial life disruption," or fear of "serious bodily injury" .................................. 19

E.    The unjust enrichment claim fails as a matter of law ........................................... 20

CONCLUSION ............................................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 3, 19, 20

*Basile v. Prometheus Glob. Media*,
225 F. Supp. 3d 737 (N.D. Ill. 2016) ............................................................. 13, 14

*Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*,
287 F. Supp. 3d 726 (N.D. Ill. 2018) ............................................................. 13, 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 3, 8, 19, 20

*Bittman v. Fox*,
107 F. Supp. 3d 896 (N.D. Ill. 2015) ........................................................................ 17

*Blair v. Nevada Landing P'ship*,
859 N.E.2d 1188 (Ill. App. 2006) .............................................................................. 10

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) .................................................................................... 8

*Chi. Lawyers' Comm. for Civil Rights Under the Law, Inc. v. Craigslist, Inc.*,
519 F.3d 666 (7th Cir. 2008) ............................................................................ 4, 8, 10

*Cody v. Harris*,
409 F.3d 853 (7th Cir. 2005) ............................................................................. 13, 14

*Cunningham v. UTI Integrated Logistics, Inc.*,
Civil No. 09-1019-GPM, 2010 WL 1558718 (S.D. Ill. Apr. 19, 2010) .................. 14

*DeLuna v. Burciaga*,
857 N.E.2d 229 (Ill. 2006) ........................................................................................ 18

*Doe v. Columbia Coll. Chi.*,
933 F.3d 849 (7th Cir. 2019) ...................................................................................... 3

*Dornhecker v. Ameritech Corp.*,
99 F. Supp. 2d 918 (N.D. Ill. 2000) .......................................................................... 16

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .................................................................................... 6

iii

*Fed. Trade Comm'n v. LeadClick Media, LLC*,
   838 F.3d 158 (2d Cir. 2016)......................................................................5, 6

*Fed. Trade Comm'n v. Accusearch Inc.*,
   570 F.3d 1187 (10th Cir. 2009) ...................................................................7

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019)........................................................................4, 5

*Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*,
   128 F.3d 1074 (7th Cir. 1997) ....................................................................1

*Glob. Royalties, Ltd. v. Xcentric Ventures, LLC*,
   544 F. Supp. 2d 929 (D. Ariz. 2008) .........................................................7

*Great Northern Ins. Co. v. Amazon.com, Inc.*,
   524 F. Supp. 3d 852 (N.D. Ill. 2021) ........................................................9

*Henderson v. Source for Pub. Data, L.P.*,
   53 F.4th 110 (4th Cir. 2022) ....................................................................6, 7

*Heying v. Simonaitis*,
   466 N.E.2d 1137 (Ill. App. 1984) ...........................................................14

*Honaker v. Smith*,
   256 F.3d 477 (7th Cir. 2001) ...................................................................20

*Huon v. Denton*,
   841 F.3d 733 (7th Cir. 2016) .............................................................. *passim*

*Hurst v. Capital Cities Media, Inc.*,
   754 N.E.2d 429 (Ill. App. 2001) .............................................................16

*Huston v. Hearst Commc'ns, Inc.*,
   53 F.4th 1097 (7th Cir. 2022) .................................................................11

*Jaros v. Vill. of Downer's Grove*,
   180 N.E.3d 125 (Ill. App. 2020) .............................................................14

*Jones v. Dirty World Ent. Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) ............................................................6, 7, 8, 9

*Kirchner v. Greene*,
   691 N.E.2d 107 (Ill. App. 1998) .............................................................12

*Law Offices of David Freydin, P.C. v. Chamara*,
   24 F.4th 1122 (7th Cir. 2022) .......................................................12, 15, 17

*Lifton v. Bd. of Educ. of City of Chi.*,
   416 F.3d 571 (7th Cir. 2005) ..................................................................15

*Lott v. Levitt*,
   556 F.3d 570 (7th Cir. 2009) ..................................................................16

*Love v. Simmons*,
   Case No. 23-cv-2392, 2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ........................20

*Ludlow v. Northwestern Univ.*,
   79 F. Supp. 3d 824 (N.D. Ill. 2015) ..................................................12, 16

*Madison v. Frazier*,
   539 F.3d 646 (7th Cir. 2008) ..................................................................15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ..........................................................4, 8, 9

*Osundairo v. Geragos*,
   447 F. Supp. 3d 727 (N.D. Ill. 2020) ......................................................17

*People v. Bailey*,
   657 N.E.2d 953 (Ill. 1995) ....................................................................19

*People v. Nakajima*,
   691 N.E.2d 153 (Ill. App. 1998) ............................................................19

*People v. Sucic*,
   928 N.E.2d 1231 (Ill. App. 2010) ..........................................................19

*Rivera v. Allstate Ins. Co.*,
   189 N.E.3d 982 (Ill. App. 2021) ............................................................13

*Schivarelli v. CBS, Inc.*,
   776 N.E.2d 693 (Ill. App. 2002) ............................................................17

*Solaia Tech., LLC v. Specialty Publ'g Co.*,
   852 N.E.2d 825, 839 (Ill. 2006) ............................................................12

*Thomason v. Nachtrieb*,
   888 F.2d 1202 (7th Cir. 1989) ..............................................................16

*Thompson v. Ill. Dep't of Prof. Reg.*,
   300 F.3d 750 (7th Cir. 2002) ..............................................................11

*Vanzant v. Hill's Pet Nutrition, Inc.*,
   934 F.3d 730 (7th Cir. 2019) ..............................................................20

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ......................................................................9

**Statutes**

740 ILCS 14/10 ...........................................................................................18

740 ILCS 195/1 *et seq.* ..................................................................................3

740 ILCS 195/5 ..................................................................................18, 19, 20

740 ILCS 195/10(a) ......................................................................................17

740 ILCS 195/10(a)(1), (2), (3) ..............................................................18, 19

765 ILCS 1075/1 *et seq.* ....................................................................3, 5, 10, 11

47 U.S.C. § 230 .................................................................................... *passim*

47 U.S.C. §§ 230(a), (b) ..................................................................................4

47 U.S.C. § 230(c)(1) ...............................................................................3, 4, 5

47 U.S.C. § 230(f)(2) .......................................................................................4

47 U.S.C. § 230(f)(3) .......................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................1, 3

Pursuant to Rule 12(b)(6), defendants Spill the Tea, Inc., Blake Milbrand, and Paola Sanchez (the "Spill the Tea Defendants") move to dismiss the First Amended Complaint (Dkt. 29).

## INTRODUCTION

Plaintiff Nikko D'Ambrosio, who was recently sentenced to federal prison for tax fraud (*see* Judgment in a Criminal Case, attached as **Exhibit 1**), has filed this lawsuit against a slew of defendants based on his contention that some women spoke poorly about him in a Facebook Group called *Are We Dating the Same Guy?* ("AWDTSG"). The gist of the messages on AWDTSG is that women should "steer clear" from D'Ambrosio because he is "cruel." *See* Compl., Ex. C at 1, 3.

As one indication of D'Ambrosio's cruelty, defendant Abbigail Rajala posted a text message she says D'Ambrosio sent her. *Id.* at 2. The message stated:

> Speak for yourself you ugly vial fake whore. Your ego matches that fake fucking face where you can't even smile in pictures because your teeth are so fucked. The truth hurts bitch and my message will stay with you forever cunt.

*Id.* (The text message appears in Exhibit C to the complaint but is illegible. The Spill the Tea Defendants have attached a legible copy of the text message as **Exhibit 2**.) The text message is consistent with D'Ambrosio's statement in his sentencing memorandum that he has "tried" to "be kind (arguably except to the occasional dating prospect)." *See* D'Ambrosio's Sentencing Memorandum, attached as **Exhibit 3**, at 5.[1]

The Spill the Tea Defendants did not post anything about D'Ambrosio on AWDTSG. Nevertheless, D'Ambrosio alleges that the Spill the Tea Defendants are liable for misappropriation,

---

[1] The Court may take judicial notice of the criminal judgment against the plaintiff, his federal prison sentence, and the statements in his sentencing memorandum. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).

defamation *per se*, "doxing," and other state law torts because they administer the Facebook Group on which the purportedly offensive statements appeared.

D'Ambrosio's misguided attempt to paint the defendants as bad actors does not mask the multitude of deficiencies in his complaint. First, D'Ambrosio's claims are barred by Section 230 of the Communications Decency Act (the "CDA"), 47 U.S.C. § 230, which expressly precludes liability against online forum administrators for third-party users' statements. Second, and regardless of the CDA, D'Ambrosio does not and cannot plead even the most basic elements of his claims. The complaint should be dismissed with prejudice.

## FACTS ALLEGED IN THE COMPLAINT

AWDTSG is a collection of Facebook Groups that aims to empower women to protect one another from potentially dangerous men. *See* Compl., Ex. A at 1. Sanchez and Milbrand administer AWDTSG. *Id.* at ¶ 15. Sanchez and Milbrand own Spill the Tea, Inc., which owns and operates AWDTSG. *Id.* at ¶¶ 5-7, 8.

D'Ambrosio and Rajala had a casual dating relationship. *Id.* at ¶ 45. In November 2023, Rajala posted D'Ambrosio's photograph in the AWDTSG "Chicago Subgroup," along with a screenshot of a text message she says she received from D'Ambrosio after their relationship ended. *Id.* at ¶ 46, Ex. C at 2. The text message called Rajala an "ugly vial fake whore" and a "bitch" (among other things) and made derogatory comments about her appearance. *Id.*; Ex. 2. It further warned Rajala: "[M]y message will stay with you forever cunt." Compl., Ex. C at 2; Ex. 2.

Several women posted comments in response to Rajala's AWDTSG post. *See* Compl., Ex. C at 1. The comments generally described D'Ambrosio as "cruel" and warned others to "steer clear." *See id.* Defendant Monica Tska posted a link to a CBS News story about sexual assault charges against a man named Anthony LaMonica. *Id.* at ¶ 50, Ex. C at 1. The link displayed

LaMonica's name and photograph. *Id.* at Ex. C at 1. The link did not refer to D'Ambrosio or otherwise contain any information about him. *See id.*

D'Ambrosio seeks to hold the Spill the Tea Defendants liable for defamation *per se*, claiming the AWDTSG posts "damaged Plaintiff in his trade, office, or profession" and "falsely accuse [him] of engaging in criminal activity." *Id.* at ¶ 81. D'Ambrosio further alleges that the Spill the Tea Defendants violated the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* ("IRPA"), by misappropriating his photograph for financial gain. *Id.* at ¶ 68. In support of that claim, D'Ambrosio points to two AWDTSG online fundraisers, neither of which displays D'Ambrosio's photograph or otherwise refers to him in any manner. *Id.* at ¶ 68, Ex. A, Ex. D. The complaint also asserts claims for violations of the Illinois Civil Liability for Doxing Act, 740 ILCS 195/1 *et seq.* (the "Doxing Act"), invasion of privacy by false light, and unjust enrichment.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "the complaint must 'state a claim for relief that is plausible on its face.'" *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

## I.    Section 230 of the CDA bars the Plaintiff's claims in their entirety.

Section 230 of the CDA forbids any "provider or user of an interactive computer service" from being "treated as the publisher or speaker of any information provided by another information

content provider." 47 U.S.C. § 230(c)(1). All of D'Ambrosio's claims hinge on attributing AWDTSG users' statements to the Spill the Tea Defendants. Section 230 plainly prohibits that tactic, and D'Ambrosio's efforts to plead around Section 230 fail.

### A. The Plaintiff's claims improperly seek to treat the Spill the Tea Defendants as the "publisher or speaker" of third-party comments.

In passing the CDA, Congress expressly recognized the need "to preserve the vibrant and competitive free market" and "forum for a true diversity" of ideas that the internet promotes. 47 U.S.C. §§ 230(a), (b). To further that policy, Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "This means that for purposes of defamation and other related theories of liability, a company [ ] cannot be considered the publisher of information simply because [it] hosts an online forum for third-party users to submit comments." *Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016). In other words, Section 230 bars "state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009); *Chi. Lawyers' Comm. for Civil Rights Under the Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (affirming judgment for Craigslist because it "could not be treated as the 'speaker' of the posters' words, given § 230(c)(1)"). Courts construe Section 230 "broadly" in favor of shielding online forum hosts from liability for user content. *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019).

Section 230 bars D'Ambrosio's claims. The Spill the Tea Defendants both "use" and "provide" an "interactive computer service" under Section 230. They operate AWDTSG through Facebook, which is unquestionably an interactive computer service. *See* 47 U.S.C. § 230(f)(2) (defining an "interactive computer service" as any "information service . . . that provides or enables

computer access by multiple users to a computer server"); *Force*, 934 F.3d at 64 (holding that Facebook is an interactive computer service). They also administer an online message board, which courts have repeatedly held is an interactive computer service. *See Huon*, 841 F.3d at 741 (the host of "an online forum for third-party users to submit comments" is a provider of an interactive computer service); *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) ("Courts typically have held that . . . online message boards . . . fall within this definition."). Accordingly, under Section 230, the Plaintiff cannot treat the Spill the Tea Defendants as a "publisher or speaker" of Rajala's or other AWDTSG users' comments. 42 U.S.C. § 230(c)(1).

Yet that is exactly what D'Ambrosio attempts to do. Count I of the complaint asserts that the Spill the Tea Defendants ran afoul of IRPA for "republishing" a photo that Rajala posted on AWDTSG. Compl., ¶¶ 2, 67-70. Count III asserts a defamation *per se* claim based on comments that Rajala and others "published" on AWDTSG. *Id.* at ¶ 77-80. Counts IV and V similarly assert state law claims based on the AWDTSG posts. *See id.* at ¶¶ 88-89, 95. Count II asserts an unjust enrichment claim based on these same facts. *See id.* at ¶¶ 73-76. By seeking to hold the Spill the Tea Defendants liable for the AWDTSG posts, D'Ambrosio treats the Spill the Tea Defendants, who are "provider[s] or user[s] of an interactive computer service," as the "publisher" of "information provided by another information content provider"—which Section 230 expressly forbids. 47 U.S.C. § 230(c)(1). The complaint should be dismissed for this reason alone.

**B.      The Plaintiff's attempts to plead around Section 230 fail.**

Recognizing that Section 230 bars his claims, D'Ambrosio attempts to plead around it by alleging that the Spill the Tea Defendants are "'information content providers' within the meaning of 47 U.S.C. § 230" (Compl., ¶ 77) and by styling his IRPA claim as an "intellectual property" claim (*id.* at ¶¶ 62-72). Both attempts fail.

5

1.    **The Spill the Tea Defendants are not "information content providers."**

The complaint does not allege the particularized facts necessary to show that the Spill the Tea Defendants are "information content providers." Section 230 defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). To meet this definition, a plaintiff must plausibly allege that the defendant "directly and 'materially' contributed to what made the content itself 'unlawful.'" *See, e.g.*, *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 127 (4th Cir. 2022) (quoting *Force*, 934 F.3d at 68); *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008) (an information content provider "contributes materially to the alleged illegality of the conduct"); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 413 (6th Cir. 2014) ("[c]onsistent with our sister circuits, we adopt the material contribution test").

This is a high hurdle. In light of Section 230's "broad" interpretation in favor of non-liability (*see, e.g.*, *Jones*, 755 F.3d at 407 (collecting cases)), to show that a defendant is an information content provider, courts require plaintiffs to allege detailed facts showing that the defendant is directly responsible for the purportedly offensive content by, for example, drafting the content themselves, requiring users to post unlawful content as a condition of using the forum, or compensating users for posting unlawful content. *See, e.g.*, *LeadClick Media*, 838 F.3d at 171 (defendant "required alterations to the content of its affiliates' fake news pages by instructing them to revise their pages to comply with explicit directives from [the defendant's client]"); *Roommates.com*, 521 F.3d at 1166 (defendant required subscribers to complete a "limited set of pre-populated answers" about their sex, family status, and sexual orientation—*i.e.*, content that violated federal and state discrimination laws—as a condition of accessing the website's services); *Henderson*, 53 F.4th at 117-18, 128 (defendant obtained the plaintiffs' public criminal records,

then "reformatted and altered" those records by "stripping out or suppressing" critical information and "replacing" the stripped information with "its own internally created summaries of the charges") (cleaned up); *Fed. Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009) (defendant directed "researchers" to illegally obtain individuals' confidential information, paid the "researchers" for their work, then sold the information to third parties even though it "knew that its researchers were obtaining the information through fraud or illegality").

In contrast, courts routinely hold that defendants are *not* information content providers if they "provide a forum for user posts" but "[do] not require users to violate the law as a condition of posting, [do] not compensate for the posting of actionable speech, [do] not post actionable content themselves, and therefore [are] not responsible for the actionable speech that was displayed on their websites." *Jones*, 755 F.3d at 414. That is true even if the forum is a "passive conduit for disseminating defamatory statements." *See Huon*, 841 F.3d at 742; *Glob. Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008) ("It is obvious that a website entitled Ripoff Report encourages the publication of defamatory content. However, there is no authority for the proposition that this makes the website operator responsible, in whole or in part, for the 'creation or development' of every post on the site.").

*Jones* is directly on point. In that case, the defendants operated a website called www.TheDirty.com, which encouraged users to submit "stories, news, and gossip about local individuals"—in short, "a user-generated tabloid primarily targeting nonpublic figures." *Jones*, 755 F.3d at 401, 403. The defendants manually selected which user submissions to publish, but did "not materially change, create, or modify any part" of the submissions or "fact-check [them] for accuracy." *Id.* at 403. The Sixth Circuit held that the defendants were not information content providers because they did not require users to post actionable content as a condition of use and

did not directly solicit unlawful information. *Id.* at 416; *accord Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (dating website's user questionnaire did not make the website an information content provider because, while the questionnaire "facilitated [ ] expression," the users nonetheless had exclusive control over deciding what content to include in their profiles); *Nemet Chevrolet, Ltd.*, 591 F.3d at 257-58 (business review website was not an information content provider because, while the website solicited users' opinions about local businesses, the users ultimately chose what content to post).

While the Seventh Circuit has not expressly relied on the material contribution test, its jurisprudence is consistent with that approach. *Jones*, 755 F.3d at 413 (citing *Chi. Lawyers' Comm.*, 519 F.3d at 671). In *Huon*, for example, the plaintiff's assertion that the defendant's employees "authored" one or more of the defamatory comments at issue—an assertion the plaintiff supported with "over four pages" of detailed factual allegations—was sufficient to plausibly allege that the defendant was an information content provider. 841 F.3d at 742. In contrast, in *Chicago Lawyers' Committee*, the court held that Craigslist was not an information content provider because it merely offered a forum for its users to post the content of their choice. 519 F.3d at 671-72.

D'Ambrosio does not come close to alleging that the Spill the Tea Defendants are information content providers. His blanket statement that the "[d]efendants are 'information content providers' within the meaning of 47 U.S.C. § 230" (Compl., ¶ 77) is plainly insufficient, *see Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions"). His remaining allegations fare no better.

First, the vague assertions that Sanchez and Spill the Tea provide unspecified "legal and editorial advice" to posters and somehow "assist in the editing of language in particular posts" (Compl., ¶¶ 20, 77) are the sorts of threadbare, conclusory allegations that courts have held are

insufficient to hold a defendant liable as an information content provider. *See Huon*, 841 F.3d at 742 (complaint "asserting one or two standalone factual allegations concerning [a defendant's] control over comments" does not suffice); *Nemet Chevrolet, Ltd.*, 591 F.3d at 258 (allegation that the defendant engaged in "revising or redrafting" consumer complaints, without identifying what the defendant actually revised or redrafted or how its edits affected the posts, was "both threadbare and conclusory" and thus insufficient). Moreover, even if the complaint could plausibly allege that Sanchez edits *some* AWDTSG posts, it does not allege that she edited the posts at issue here.

Second, the allegation that Sanchez manually reviews and approves all AWDTSG posts (Compl., ¶ 5) is insufficient as a matter of law, as "'[l]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred.'" *Great Northern Ins. Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852, 859-60 (N.D. Ill. 2021) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)); *Jones*, 755 F.3d at 403 (website operator, who manually selected which user submissions to publish, was not an information content provider). This allegation also is implausible. The complaint alleges that AWDTSG has more than three million users across "a large number of subgroups reflecting major metropolitan areas across the globe," with "thousands" of posts in the Chicago Subgroup alone and "dozens" more added each day. *See* Compl., ¶¶ 14-17, Ex. A. Even if Sanchez wanted to manually review and approve all AWDTSG posts, she would not be able to do so.

Finally, the complaint does not plead any facts regarding whether or how Milbrand acts as an information content provider. The complaint vaguely suggests that Milbrand may be liable as "the primary software developer for the companies" (*id.* at ¶ 6), but that is irrelevant. "[N]o one

could think" that "firms that make the [ ] software that owners use to post their notices online" are information content providers. *Chi. Lawyers' Comm.*, 519 F.3d at 671.

The Spill the Tea Defendants provide a passive forum where users are free to post the content of their choice. They do not require users to post unlawful information as a condition of using AWDTSG, they do not reward users for posting unlawful information, and they do not post actionable content themselves. As the Seventh Circuit has made clear, the Spill the Tea Defendants "cannot be considered the publisher of information simply because [they] host[ ] an online forum for third-party users to submit comments." *Huon*, 841 F.3d at 741. The Spill the Tea Defendants are not "information content providers," and Section 230 bars D'Ambrosio's claims.

### 2. The "intellectual property" exception to Section 230 does not apply.

D'Ambrosio also attempts to invoke the "intellectual property" exception to Section 230 by styling his IRPA claim as an "intellectual property" claim. *See* Compl., ¶¶ 62-72. That effort fails for the reasons set forth in section I(B)(2)(a) of Defendant Meta Platform, Inc.'s Motion to Dismiss First Amended Complaint (Dkt. 38 at 9-13) (the "Meta Motion to Dismiss"), which the Spill the Tea Defendants hereby adopt and incorporate by reference.

## II. The Plaintiff's claims fail as a matter of law.

Regardless of whether Section 230 bars D'Ambrosio's claims in their entirety, the complaint should be dismissed with prejudice for the independent reason that D'Ambrosio does not allege the elements of his claims, and he cannot cure his pleading deficiencies.

### A. The IRPA claim fails as a matter of law.

As set forth in the Meta Motion to Dismiss, an IRPA misappropriation claim has three elements: (1) appropriation of one's name or likeness (2) without one's consent (3) for a commercial purpose. Dkt. 38 at 9 (citing *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1191-92 (Ill. App. 2006)). D'Ambrosio alleges the defendants violated IRPA by publishing his

photograph on AWDTSG without his permission. Compl., ¶ 67. For all the reasons set forth in section I(A)(1) of the Meta Motion to Dismiss, which the Spill the Tea Defendants adopt and incorporate by reference, the IRPA claim fails as a matter of law because the complaint does not plausibly allege that Rajala or any other defendant posted D'Ambrosio's photograph to AWDTSG for a "commercial purpose." Further, for all the reasons set forth in section I(A)(2) of the Meta Motion to Dismiss, which the Spill the Tea Defendants also adopt and incorporate by reference, section 35(b)(1) of IRPA expressly exempts the Spill the Tea Defendants' alleged use of D'Ambrosio's photograph.

D'Ambrosio tries to save his IRPA claim by alleging the Spill the Tea Defendants published his photograph in connection with two online fundraisers, and he attaches those fundraisers as exhibits to the complaint. *Id.* at ¶ 68, Ex. A, Ex. D. However, "IRPA requires that the individual's identity be used or held out to advance a commercial goal . . . and, necessarily, *precede or accompany* the [commercial] activity." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1103 (7th Cir. 2022) (emphasis added). As the exhibits make clear, D'Ambrosio's photograph does not appear at all on the fundraising pages. *See id.* at Ex. A, Ex. D.[2] Indeed, the complaint alleges that Sanchez published the GoFundMe page "[o]n or about April, 2023"—eight months *before* Rajala posted D'Ambrosio's photograph on AWDTSG. *See* Compl., ¶¶ 31, 46. The Spill the Tea Defendants' alleged use of D'Ambrosio's photograph neither preceded nor accompanied AWDTSG's fundraising activity, and the IRPA claim necessarily fails.

**B.**     **The defamation *per se* claim fails as a matter of law.**

To state a claim for defamation under Illinois law, "a plaintiff must present facts showing

---

[2] It is well-settled that "where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Ill. Dep't of Prof. Reg.*, 300 F.3d 750, 754 (7th Cir. 2002).

that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (quoting *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 829 (Ill. 2006)). As set forth above, the Spill the Tea Defendants did not make any statements about D'Ambrosio, and Section 230 prohibits D'Ambrosio from attributing Rajala's and other AWDTSG users' statements to them. Even assuming the statements alleged in the complaint could be attributed to the Spill the Tea Defendants, however, they are non-actionable as a matter of law.

### 1. The complaint does not identify any false statements.

As an initial matter, the complaint fails to allege a defamation claim because D'Ambrosio does not even identify the purportedly false statements with which he takes issue (aside from the statement about Anthony LaMonica, which the Spill the Tea Defendants address below). The complaint vaguely asserts that Rajala posted "provably false and defamatory statements" on AWDTSG, then generally points to Exhibits B and C of the complaint. Compl., ¶ 46. But those exhibits contain statements that even D'Ambrosio admits are true, including that he and Rajala "met organically" in Chicago and had a brief dating relationship. *See* Compl., ¶ 45, Ex. C at 2. "'Absent some allegation as to what specific statement was false, a claim based on *false* [statements] simply fails to satisfy the most basic element of the cause of action.'" *Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824, 842 (N.D. Ill. 2015) (quoting *Kirchner v. Greene*, 691 N.E.2d 107, 116 (Ill. App. 1998)) (emphasis in original).

### 2. The AWDTSG posts do not fall within any of the limited categories of defamation *per se*.

D'Ambrosio expressly limits his defamation claim to one of defamation *per se*. Under Illinois law, defamation *per se* is restricted to statements that fall into five limited categories,

including, as relevant here: "(1) those imputing the commission of a criminal offense; . . . (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; [and] (4) those imputing a lack of ability, or that prejudice a party in his trade, profession, or business." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). D'Ambrosio's attempt to shoehorn the AWDTSG statements into these categories is baseless.

D'Ambrosio first alleges that the AWDTSG statements "are reasonably understood to state or imply that Plaintiff has engaged in criminal activity by way of falsely accusing him of criminal sexual assault." Compl., ¶ 80. The only fact D'Ambrosio alleges to support that legal conclusion is that someone posted a link to an article about a man named "Anthony LaMonica" being "charged with Criminal Sexual Assault." Compl., ¶ 50. But as D'Ambrosio himself acknowledges, and as the exhibits to the complaint make clear, the article in question contained *LaMonica's* name and photograph—not D'Ambrosio's. *Id.* at ¶¶ 51-52, Ex. C at 4. "[A] statement is not actionable *per se* if the statement can be reasonably interpreted as referring to someone other than the plaintiff." *Rivera v. Allstate Ins. Co.*, 189 N.E.3d 982, 994-95 (Ill. App. 2021) (collecting cases). Because the statement, on its face, does not refer to D'Ambrosio, it cannot support a claim of defamation *per se*. *See Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 287 F. Supp. 3d 726, 733-34 (N.D. Ill. 2018) ("[I]f a statement can be reasonably interpreted as referring to someone else, it fails to qualify as even being a statement targeting the plaintiff."); *Basile v. Prometheus Glob. Media*, 225 F. Supp. 3d 737, 743 (N.D. Ill. 2016) ("Because the article does not attribute criminal activity to Basile, her claim under the first defamation *per se* category is without merit.").

D'Ambrosio next attempts to fit his claim within the third or fourth category of defamation *per se* by alleging that the AWDTSG posts "imply that Plaintiff is dishonest, immoral and/or untrustworthy" and therefore "have damaged Plaintiff in his trade, office, or profession." Compl.,

13

¶¶ 79, 81. Even if these allegations were true, the AWDTSG posts are not defamatory *per se* because actionable statements "under the third and/or fourth categories have always been related to job performance; to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Cody*, 409 F.3d at 857 (emphasis in original). "Conversely, attacks related to personal integrity and character have not been deemed defamatory *per se*." *Id.* at 858; *Basile*, 225 F. Supp. 3d at 743 ("Significantly, it is not sufficient that the statement implies that the subject lacked integrity or judgment.").

It is clear from the complaint that none of the AWDTSG posts relate to D'Ambrosio's job performance or professional integrity. Rather, they attack his unfavorable personal character, as evidenced by his "cruel" dating behavior. *See* Compl., Ex. C. The closest any statement comes to implicating D'Ambrosio's professional character is Rajala's comment that D'Ambrosio "kept talking about how I don't want to see his bad side, especially when he was on business calls." *See id.* Setting aside that this comment is hopelessly vague, it is not actionable because it lacks the requisite "nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff." *Jaros v. Vill. of Downer's Grove*, 180 N.E.3d 125, 144 (Ill. App. 2020) (citation omitted); *see also Heying v. Simonaitis*, 466 N.E.2d 1137, 1143 (Ill. App. 1984) (statements regarding personality conflicts between a nurse and her fellow employees were not actionable because they did not impugn the plaintiff's ability as a nurse); *Cunningham v. UTI Integrated Logistics, Inc.*, Civil No. 09-1019-GPM, 2010 WL 1558718, at *4 (S.D. Ill. Apr. 19, 2010) (statements that plaintiff made racially derogatory remarks and physically intimidated coworkers "related more to [his] personal character (by impugning that he was a bigot and a bully) than to his work or professional traits").

Finally, D'Ambrosio alleges that AWDTSG users "requested personally identifiable

14

information related to Plaintiff's employer in an effort to make contact with [the employer] and defame [D'Ambrosio's] character and reputation." Compl., ¶ 47. These statements are not actionable. First, D'Ambrosio grossly misstates the AWDTSG posts from which he derives his allegation. As set forth in Exhibit C to the complaint, one AWDTSG user responded to Rajala's post by noting: "these receipts [*i.e.*, the text message to Rajala] can ruin a career[,] hope karma finds him." *Id.*, Ex. C at 1. Another stated: "I was just about to say, I'd find out [his] company and let them [know] who they're employing." *Id.* These words were clearly "employed only in a loose, figurative sense," and therefore are nonactionable. *See Huon*, 841 F.3d at 744. Second, even if the posts did represent a sincere intent, requesting information about D'Ambrosio's employer is not an attack on D'Ambrosio's professional integrity. The complaint does not identify any statement that is *per se* defamatory, and Count III should be dismissed with prejudice.

### 3. The AWDTSG posts are nonactionable opinions.

D'Ambrosio's defamation claim fails for another, independent reason: The AWDTSG posts constitute protected opinions. "[O]pinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment, and that is so even when the opinions concern one of the five defamation *per se* categories under Illinois law." *Bd. of Forensic Document Exam'rs, Inc.*, 922 F.3d at 832. Thus, statements which "fail to amount to verifiable assertions of fact" and "lack[ ] readily understood meaning" are protected statements of opinion that do not give rise to a defamation claim. *Madison v. Frazier*, 539 F.3d 646, 655 (7th Cir. 2008). The thrust of the AWDTSG posts—that D'Ambrosio is "cruel" and that others should "steer clear" of him, coupled with "red flag" emojis and opinions about D'Ambrosio's "true colors"—reflect subjective opinions about D'Ambrosio's character and are not verifiable statements of fact. *See Lifton v. Bd. of Educ. of City of Chi.*, 416 F.3d 571, 579 (7th Cir. 2005) (descriptions of plaintiff as "lazy," "unstable," or "doesn't want to work" were nonactionable opinion); *Law Offices of David Freydin,*

*P.C.*, 24 F.4th at 1130 (statements such as "terrible experience," "awful customer service," and "don't waste your money" were too imprecise to constitute actionable facts).[3]

### 4. The complaint does not allege a defamation *per quod* claim.

To the extent D'Ambrosio attempts to assert a defamation *per quod* claim in his opposition brief, that attempt fails. First, the complaint alleges only a defamation *per se* claim, and "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989).

Second, in a *per quod* defamation action, "the plaintiff must plead and prove special damages, meaning actual damage to his reputation and pecuniary loss resulting from the defamatory statement." *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 933 (N.D. Ill. 2000). D'Ambrosio alleges only generally that he has suffered "impairment of reputation and standing in the community, personal humiliation, mental anguish and suffering, emotional distress, stress, anxiety, lost earnings, and other pecuniary loss." Compl., ¶ 86. These vague and conclusory allegations fail to provide "a specific accounting of those damages or an explanation of how the purported defamation caused them." *Lott v. Levitt*, 556 F.3d 570 (7th Cir. 2009). They do not support a claim for defamation *per quod*. *See id.*

### C. The false light and civil conspiracy claims fail as a matter of law.

D'Ambrosio's false light claim fails for the same reasons his defamation claim fails. First, the complaint does not specifically identify any false statements, which alone warrants dismissal. *See Ludlow*, 79 F. Supp. 3d at 842 (dismissing defamation and false light claims). Second, to the

---

[3] The only factually verifiable statement is Rajala's assertion that D'Ambrosio sent her a text message calling her an "ugly vial fake whore," a "bitch," and a "cunt" with a "fake fucking face." *See* Compl. Ex. B at 2; Ex. 2. Tellingly, D'Ambrosio does not base his defamation claim on this statement because it would require him to deny that he sent Rajala the text message, which he cannot do without violating Rule 11. *See Hurst v. Cap. Cities Media, Inc.*, 754 N.E.2d 429, 433 (Ill. App. 2001) (truth is an absolute defense to defamation claims).

extent D'Ambrosio's false light claim is based on the same statements that form the basis of his defamation claim, it necessarily fails because the defamation and false light claims rise and fall together. *See Osundairo v. Geragos*, 447 F. Supp. 3d 727, 738 (N.D. Ill. 2020) ("Where an unsuccessful defamation *per se* claim is the basis of his false-light claim, plaintiff's false light invasion of privacy claim fails as well."). Third, the bulk of the AWDTSG posts are merely "statements that are expressions of opinion devoid of any factual content," which "are not actionable as false light claims." *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 701 (Ill. App. 2002). Fourth, to the extent the false light claim is based on statements that are allegedly defamatory *per quod*, it fails because D'Ambrosio has not alleged special damages. *See Bittman v. Fox*, 107 F. Supp. 3d 896, 904 (N.D. Ill. 2015) ("if a false light claim is based on statements that are not defamatory per se, special damages too must be pleaded").

D'Ambrosio's civil conspiracy claim is tethered to his false light claim. Compl., ¶¶ 99-100. As the false light claim fails, the civil conspiracy claim must also be dismissed. *See Law Offices of David Freydin, P.C.*, 24 F.4th at 1133 ("When a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for conspiracy also fails.").

### D. The Doxing Act claim fails as a matter of law.

To state a claim under the Doxing Act, a plaintiff must allege: (1) that the defendant published his "personally identifiable information"; (2) that the publication rendered him "reasonably likely to suffer death, bodily injury, or stalking"; and (3) that the publication caused him to suffer "emotional distress," to "fear serious bodily injury," or to "suffer a substantial life disruption." *See* 740 ILCS 195/10(a). As set forth above, Section 230 prohibits D'Ambrosio from alleging that the Spill the Tea Defendants "published" any of the AWDTSG comments at issue. D'Ambrosio also fails to allege the remaining elements of his claim.

### 1. No defendant published "personally identifiable information."

The Doxing Act defines "personally identifiable information" as information that "can be used to distinguish or trace a person's identity," such as the person's name, "in combination with any other information that is linked or linkable to a person." 740 ILCS 195/5. The statute provides examples of "information that is linked or linkable to a person," including a person's "social security number, home address, phone number, email address, social media accounts, or biometric data," a person's work or medical records, or "information that provides access to a person's teleconferencing, video-teleconferencing, or other digital meeting room." 740 ILCS 195/5. These examples reflect the statute's requirement that "the person whose information is published must be identifiable from the published personally identifiable information itself." *Id.*, § 10(a)(3).

D'Ambrosio alleges that the defendants published his personally identifiable information by posting his first name and "likeness" (*i.e.*, his photograph) on AWDTSG. Compl., ¶ 88, Ex. C. Even assuming a person's first name alone is enough to "distinguish or trace" that person's identity (an implausible inference), the statutory text makes clear that a photograph does not qualify as information that is "linked or linkable to a person." Such information falls into two buckets: (1) a person's contact information (*e.g.*, home address, phone number, email address); and (2) sensitive, uniquely identifying personal information (*e.g.*, social security number, biometric data, medical records). *See* 740 ILCS 195/5. The closest a photograph comes to any of these is "biometric data," but the Illinois Biometric Information Privacy Act expressly states that a photograph is *not* a biometric identifier. 740 ILCS 14/10; *see DeLuna v. Burciaga*, 857 N.E.2d 229, 236 (Ill. 2006) ("[i]t is appropriate statutory construction to consider similar and related enactments").

### 2. The Plaintiff is not "likely to suffer death, bodily injury, or stalking."

The Doxing Act claim fails for the independent reason that D'Ambrosio does not allege any facts to show that he was "reasonably likely to suffer death, bodily injury, or stalking" (740

ILCS 195/10(a)(1). He alleges that he is "reasonably likely or otherwise [has] reasonable fear that he is likely to suffer significant injury, including risk of death, bodily injury, or stalking" (Compl., ¶ 89), but parroting the statutory language is insufficient. *See Twombly*, 550 U.S. at 555 (conclusory allegations and "a formulaic recitation of the elements of a cause of action will not do"). In any event, the complaint misstates the relevant legal standard. The Doxing Act requires that a plaintiff *actually* be likely to suffer death, bodily injury, or stalking—not that he has a "reasonable fear" that he is likely to suffer such things. 740 ILCS 195/10(a)(1).

D'Ambrosio cannot cure this deficiency. The Doxing Act incorporates the stalking statute at Section 12.73 of Illinois' Criminal Code. *See id.* at § 5. Under that statute, courts have held that victims reasonably feared bodily injury where, for example, the defendant told the victim he "was going to come over with a gun" and "blow her and her children away" (*People v. Bailey*, 657 N.E.2d 953, 970 (Ill. 1995) (cleaned up)), "left the victim several voice mail messages threatening to kill her" (*People v. Sucic*, 928 N.E.2d 1231, 1249 (Ill. App. 2010)), and followed the victim at her workplace, trailed her vehicle, and lurked outside her home (*People v. Nakajima*, 691 N.E.2d 153, 155-56 (Ill. App. 1998)). D'Ambrosio does not allege that anyone even contacted him as a result of the AWDTSG posts, let alone engaged in any behavior that seriously threatened his safety. The opposite is true: The AWDTSG posts warned others to "steer clear." Compl., Ex. C at 1.

### 3. The Plaintiff did not suffer "emotional distress," a "substantial life disruption," or fear of "serious bodily injury."

In an effort to meet section 10(a)(2) of the Doxing Act, D'Ambrosio alleges, with no supporting facts, that he suffered "significant emotional distress, disruption to his life, and fear of serious bodily injury" as a "direct and proximate cause of the Defendants' actions." Compl., ¶ 90). This blanket assertion simply regurgitates the statutory language and fails as a matter of law. *See Iqbal*, 556 U.S. at 679 (claims that tender "'naked assertions' devoid of 'further factual

enhancement'" do not suffice) (quoting *Twombly*, 550 U.S. at 557). Once again, D'Ambrosio cannot cure this pleading deficiency.

First, the statute limits "emotional distress" to "significant . . . emotional suffering that is protracted and not merely trivial or transitory." 740 ILCS 195/5. In the tort context, "emotional stress must be *severe*," and "fright, horror, grief, shame, humiliation, worry, etc. . . . alone are not actionable." *Honaker v. Smith*, 256 F.3d 477, 495 (7th Cir. 2001) (emphasis in original). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* D'Ambrosio does not come close to alleging this level of emotional distress.

Second, the Doxing Act narrowly defines a "substantial life disruption" as "a material and significant alteration of an individual's livelihood," which includes "moving from an established residence, changing routes to and from work, changing employment or work schedule, or losing time at work or a job." 740 ILCS 195/5. D'Ambrosio alleges nothing of the sort.

Third, for the reasons set forth above, D'Ambrosio cannot plausibly allege that he suffered a fear of "serious bodily injury." Accordingly, the Doxing Act claim should be dismissed.

### E.    The unjust enrichment claim fails as a matter of law.

"Under Illinois law, unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (citation omitted). Because D'Ambrosio's substantive claims fail, his unjust enrichment claim also fails. *Love v. Simmons*, Case No. 23-cv-2392, 2024 WL 809107, at *16 (N.D. Ill. Feb. 27, 2024).

### CONCLUSION

For all the foregoing reasons, the First Amended Complaint should be dismissed with prejudice.

Dated: August 28, 2024

Respectfully submitted,

SPILL THE TEA, INC.,
PAOLA SANCHEZ, and
BLAKE MILLBRAND

Amanda N. Catalano
Megan E. Ryan
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, 7th Floor
Chicago, IL 60604
(312) 762-9450
acatalano@tdrlaw.com
mryan@tdrlaw.com

By: */s/ Amanda N. Catalano*