## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

NIKKO D'AMBROSIO,

     Plaintiff,

vs.

ABBIGAIL RAJALA, CAROL RAJALA, RODNEY RAJALA, PAOLA SANCHEZ, BLAKE MILLBRAND, META PLATFORMS, INC., a Delaware Corporation, SPILL THE TEA, INC., a Delaware Corporation, JANE DOES 1-26, Unnamed Defendants using screen names: Sam Daniels, Alexis Kyle, Coraline Lotz, Dianne Wesley, Madison Pierce, Madison Bynum, Vanessa Villatoro, Christy Graessle, Sharleen Waa, Kaitlyn Mishay Moody, Linda Juarez, Amber Michelle, Laura Maddox, Alina Drake, Chandi Constance, Alicia Ann, Salisha P. Dean, Jillian Cara, Jen Rahbar, Shannon Marie, Luisa Resendez, Daryl Ceasar, Lisa Miko, Amy Dukstein-Reynolds, Melissa Pinkerton, Monica Tska,

     Defendants.

Case No. 1:24-cv-678

District Judge Sunil R. Harjani

## DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION                                                                      1

FACTUAL BACKGROUND                                                               1

ARGUMENT                                                                         2

I.   **D'AMBROSIO'S CLAIMS AGAINST META FAIL UNDER STATE LAW**                   2

    A.   IRPA                                                 3

    B.   Defamation                                           4

    C.   False Light Invasion of Privacy and Civil Conspiracy  6

    D.   Strict  Products Liability                           7

    E.   Negligence and Negligent Entrustment                 8

    F.   Unjust Enrichment                                    9

II.  **SECTION 230 BARS ALL OF D'AMBROSIO'S CLAIMS AGAINST META**                9

    A.   Section 230 Precludes All Claims Against Meta        10

    1.   Meta is a provider of an "interactive computer service"  10

    2.   The posts were made by "another information content provider"  10

    3.   D'Ambrosio impermissibly treats Meta as a "publisher"  10

    B.   D'Ambrosio's Attempts To Plead Around Section 230 Fail  12

III. **THE FIRST AMENDMENT BARS D'AMBROSIO'S CLAIMS AGAINST META**               14

CONCLUSION                                                                       15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Anderson v. TikTok, Inc.*,
116 F.4th 180 (3d Cir. 2024) ................................................................. 13

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ................................................................. 15

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ................................................................. 10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................. 2, 13, 15

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ................................................................. 10

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
519 F.3d 666 (7th Cir. 2008) ................................................................. 8

*Christianson v. Henry Holt & Co.*,
2007 WL 2680822 (C.D. Ill. June 29, 2007) ................................................................. 3

*Cody v. Harris*,
409 F.3d 853 (7th Cir. 2005) ................................................................. 5

*Collier v. Murphy*,
2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) ................................................................. 4

*Crosby v. Twitter, Inc.*,
921 F.3d 617 (6th Cir. 2019) ................................................................. 8

*Doe (K.B.) v. Backpage.com, LLC*,
724 F. Supp. 3d 882 (N.D. Cal. 2024) ................................................................. 12

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ................................................................. 8, 12

*Eberhart v. Amazon.com, Inc.*,
325 F. Supp. 3d 393 (S.D.N.Y. 2018) ................................................................. 7

*Est. of Bride v. Yolo Techs., Inc.*,
112 F.4th 1168 (9th Cir. 2024) ................................................................. 11

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) ..................................................................... 9, 12, 13

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) ........................................................... 2, 9, 10, 11

*Ginsberg v. Google Inc.*,
    586 F. Supp. 3d 998 (N.D. Cal. 2022) ................................................................ 8

*Gracia v. SigmaTron Int'l, Inc.*,
    986 F.3d 1058 (7th Cir. 2021) ........................................................................... 6

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2021) ............................................................................. 14

*Herceg v. Hustler Mag., Inc.*,
    814 F.2d 1017 (5th Cir. 1987) ......................................................................... 15

*Herrick v. Grindr LLC*,
    765 F. App'x 586 (2d Cir. 2019) ..................................................................... 11

*Huon v. Denton*,
    841 F.3d 733 (7th Cir. 2016) ........................................................................... 12

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021) ......................................................................... 11, 12

*In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*,
    702 F. Supp. 3d 809 (N.D. Cal. 2023) ............................................................. 12

*Jackson v. Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022) ............................................................... 7

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002) ............................................................................. 7

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) ........................................................................... 10

*Johnson v. Xtra Lease LLC*,
    2010 WL 706037 (N.D. Ill. Feb. 24, 2010) ....................................................... 9

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .................................................................... 8, 10

*Lama v. Meta Platforms, Inc.*,
    2024 WL 2021896 (N.D.N.Y May 6, 2024) ................................................... 11

*Law Offices of David Freydin, P.C. v. Chamara*,
   24 F.4th 1122 (7th Cir. 2022) ............................................................ 4, 5

*Lott v. Levitt*,
   556 F.3d 564 (7th Cir. 2009) .................................................................. 6

*Love v. Simmons*,
   2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ........................................ 4, 9

*Lukis v. Whitepages Inc.*,
   549 F. Supp. 3d 798 (N.D. Ill. 2021) .................................................... 14

*M.P. by & through Pinckney v. Meta Platforms, Inc.*,
   692 F. Supp. 3d 534 (D.S.C. 2023)........................................................ 12

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
   925 F.3d 1263 (D.C. Cir. 2019) ............................................................. 9

*Milford v. Com. Carriers, Inc.*,
   210 F. Supp. 2d 987 (N.D. Ill. 2002) ..................................................... 7

*Moody v. NetChoice, LLC*,
   144 S. Ct. 2383 (2024)................................................................... 14, 15

*Muzikowski v. Paramount Pictures Corp.*,
   322 F.3d 918 (7th Cir. 2003) .............................................................. 4, 6

*Muzikowski v. Paramount Pictures Corp.*,
   477 F.3d 899 (7th Cir. 2007) .................................................................. 5

*Parr v. Sunbeam Prods., Inc.*,
   2009 WL 10682264 (C.D. Ill. June 3, 2009) .......................................... 7

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ......................................................... 13, 14

*Pope v. Chron. Pub. Co.*,
   95 F.3d 607 (7th Cir. 1996) .................................................................... 6

*Ratermann v. Pierre Fabre USA, Inc.*,
   651 F. Supp. 3d 657 (S.D.N.Y. 2023)................................................... 14

*Siegel v. Shell Oil Co.*,
   656 F. Supp. 2d 825 (N.D. Ill. 2009) ..................................................... 7

*Simpkins v. CSX Transp., Inc.*,
   965 N.E.2d 1092 (Ill. 2012)................................................................... 8

iv

*Smith v. California*,
361 U.S. 147 (1959) ................................................................................... 14, 15

*Sondag v. Pneumo Abex Corp.*,
55 N.E.3d 1259 (Ill. App. 2016) ............................................................... 7

*Sorrell v. IMS Health, Inc.*,
564 U.S. 552 (2011) ................................................................................... 14

*Tuite v. Corbitt*,
866 N.E.2d 114 (Ill. 2006) ........................................................................ 5

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023) ................................................................................... 12

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) .................................................................... 9

*Video Software Dealers Ass'n v. Webster*,
968 F.2d 684 (8th Cir. 1992) .................................................................... 15

*Vrdolyak v. Avvo, Inc.*,
206 F. Supp. 3d 1384 (N.D. Ill. 2016) .................................................... 2

*Winter v. Facebook, Inc.*,
2021 WL 5446733 (E.D. Mo. Nov. 22, 2021) ........................................ 8

*Ziencik v. Snap, Inc.*,
2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ........................................... 7

## STATUTES

47 U.S.C. § 230 ............................................................................................... 1

47 U.S.C. § 230(c)(1) ...................................................................................... 9

47 U.S.C. § 230(e)(2) ...................................................................................... 13

47 U.S.C. § 230(e)(3) ...................................................................................... 13

47 U.S.C. § 230(e)(4) ...................................................................................... 13

47 U.S.C. § 230(e)(5)(B) ................................................................................ 13

47 U.S.C. § 230(f)(2) ....................................................................................... 10

47 U.S.C. § 230(f)(3) ....................................................................................... 10

765 ILCS 1075/1 *et seq* ................................................................................. 1

v

765 ILCS 1075/30(a) ............................................................................................. 3

765 ILCS 1075/35(b)(1) ........................................................................................ 4

765 ILCS 1075/5 .................................................................................................. 3

## TREATISES

Restatement (Second) of Torts § 402A ................................................................ 7

## OTHER AUTHORITIES

H.R. Journal, 90th Gen. Assemb., Reg. Sess. 224, 225 (Ill. Apr. 24, 1997) ................................ 14

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Meta Platforms, Inc. moves to dismiss with prejudice the Second Amended Complaint (Dkt. 53).

## INTRODUCTION

In his third attempt to plead a claim, Plaintiff Nikko D'Ambrosio continues to blame Meta and others for critical comments made about him in an online Facebook Group but again fails to address the cross-cutting problems with his claims. The Second Amended Complaint includes a litany of new claims against Meta—instead of a single claim under the Illinois Right of Publicity Act (IRPA), 765 ILCS 1075/1 *et seq.*, D'Ambrosio now alleges defamation *per se* and *per quod*, invasion of privacy by false light, strict products liability, negligence, and negligent entrustment. But all the new claims arise out of the same allegations and fail for the reasons set forth in Meta's prior motion to dismiss (Dkt. 38) and more. First, each claim fails as a matter of state law. Second, each runs headlong into Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which precludes liability for publishing other people's Facebook posts. Finally, the First Amendment independently bars each claim because Meta has a protected right to disseminate the posts at issue. After three chances, D'Ambrosio's claims should now be dismissed with prejudice.

## FACTUAL BACKGROUND

D'Ambrosio alleges that he and Defendant Abbigail Rajala had a brief romantic relationship. Dkt. 53 ¶ 45. Rajala later posted about D'Ambrosio in a Facebook Group where Chicago-area women share information about their dating experiences, with the goal of helping avoid "toxic men." *Id.* ¶¶ 12-14, 46. Rajala's posts indicated a negative experience with D'Ambrosio, whom she described as being "[v]ery clingy very fast," "[f]launt[ing]" his money, and warning her that she "[didn't] want to see his bad side." *Id.* at p. 48. Rajala also posted a photo of D'Ambrosio and a screenshot of a profane message he sent after she told him she did not want to stay the night. *Id.* ¶ 2 & pp. 48, 51; Dkt. 47-2 (more legible copy). Other users commented

1

on Rajala's post.  Dkt. 53 at p. 48.  One posted a link to a CBS News article about a different man—Anthony LaMonica, who had been criminally charged with sexual assault—but did not explicitly connect the article or LaMonica to D'Ambrosio.  *Id*. ¶ 50 & p. 48.

Upset by these posts, D'Ambrosio sued Rajala, her relatives (who allegedly allowed her to access Facebook through their home internet network), administrators of the Facebook Group where Rajala posted, and Meta.  Dkt. 1 (original complaint); Dkt. 29 (amended complaint).  Meta moved to dismiss the amended complaint, as did defendants Blake Millbrand, Paola Sanchez, and Spill the Tea, Inc.  Dkts. 38, 47.  D'Ambrosio then filed a Second Amended Complaint, which amends his defamation *per se* and false light claims to run against Meta and adds new claims for defamation *per quod*, strict products liability, negligence, and negligent entrustment.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must state a claim that is "plausible" on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true."  *Id*.  Where, as here, a complaint's allegations establish the basis for a defense under Section 230, the court may consider that defense on a motion to dismiss.  *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023).  Likewise, the court can evaluate whether the First Amendment forecloses claims. *See Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388-89 (N.D. Ill. 2016) (granting motion to dismiss where speech was "fully protected by the First Amendment").

## ARGUMENT

## I.  D'AMBROSIO'S CLAIMS AGAINST META FAIL UNDER STATE LAW

Each of D'Ambrosio's claims fails as a matter of state law.

A.    IRPA

D'Ambrosio's IRPA claim fails twice over, for the same reasons that Meta set forth in its prior motion to dismiss.  Dkt. 38 at 8-12.

*First*, his claim does not allege use of his identity for commercial purposes.  An IRPA misappropriation claim arises only where a plaintiff's identity is misused "for commercial purposes," 765 ILCS 1075/30(a), which is defined narrowly to mean the "public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising," 765 ILCS 1075/5.

D'Ambrosio's IRPA claim rests on the allegation that Defendants "intentionally republished ... a photograph" containing his "personal identity and likeness" without his consent.  Dkt. 53 ¶ 79.  He does not allege that Meta "use[d]" or "h[eld] out" the photo in connection with the "sale of a product, merchandise, goods, or services," "for purposes of advertising or promoting products, merchandise, goods, or services," or for "fundraising."  765 ILCS 1075/5.  At best, he gestures at a "commercial purpose" by alleging that Meta "willfully and intentionally displayed and continue[s] to display advertising materials for the purposes of commercial profit on pages ... misappropriating Plaintiff's likeness."  Dkt. 53 ¶ 64.  But that is not a viable theory of IRPA misappropriation, as its necessary implication would be to convert non-commercial material in a newspaper, magazine, or website into an actionable misappropriation merely because such publications *also* carry advertisements or are sold to customers.  As *Christianson v. Henry Holt & Co.*, 2007 WL 2680822 (C.D. Ill. June 29, 2007), explained, "if an individual appeared in a parade, and the parade was discussed in a magazine," the individual has no IRPA claim.  *Id*. at *3.  The result does not change if the magazine displays advertisements, just as the "fact that a book is sold does not make the speech it contains commercial in nature."  *Id.* at *3 n.1.

*Second*, IRPA expressly exempts the "use of an individual's identity" to "portray … that individual" in an "article" or "visual … work," so long as the work "does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services." 765 ILCS 1075/35(b)(1). According to the complaint, Rajala posted D'Ambrosio's photo in a visual work on Facebook in order to portray her experience with his substandard dating behavior. Dkt. 53 ¶ 46 & pp. 45-51. The post plainly was not "in and of itself" a commercial advertisement—from either Rajala's or Meta's perspective—and D'Ambrosio does not allege it was. For that reason, too, D'Ambrosio fails to state an IRPA claim. *See Love v. Simmons*, 2024 WL 809107, at *7-9 (N.D. Ill. Feb. 27, 2024) (rejecting misappropriation claim involving plaintiff's appearance in a documentary); *Collier v. Murphy*, 2003 WL 1606637, at *2-3 (N.D. Ill. Mar. 26, 2003) (rejecting misappropriation claim involving use of plaintiff's identity in a television show).

### B. Defamation

Defamation *per se* requires "statements so harmful to reputation that damages are presumed," while defamation *per quod* requires "statements requiring extrinsic facts to show their defamatory meaning" and for which a plaintiff must plead special damages. *Muzikowski v. Paramount Pictures Corp.* ("*Muzikowski I*"), 322 F.3d 918, 924 (7th Cir. 2003). D'Ambrosio brings both kinds of claims, and both fail.

*Defamation per se.* Illinois law recognizes five categories of statements that are defamatory *per se*: words imputing "(1) commission of a crime, (2) a 'loathsome communicable disease,' (3) a person's inability to perform or lack of integrity in performing employment duties, (4) adultery or fornication, and last, (5) that the person lacks ability in his profession or the words otherwise prejudice the person in his profession." *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (citation omitted). Statements within those categories are not actionable if they can "reasonably be innocently interpreted" or "reasonably be interpreted as

4

referring to someone other than the plaintiff." *Muzikowski v. Paramount Pictures Corp.* ("*Muzikowski II*"), 477 F.3d 899, 904 (7th Cir. 2007) (quoting *Tuite v. Corbitt*, 866 N.E.2d 114, 122 (Ill. 2006)). "[I]f a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." *Id.* (internal quotation marks and citation omitted).

Those principles doom D'Ambrosio's claim that a comment linking to an article about *another man* falsely accused *D'Ambrosio* of criminal sexual assault. Dkt. 53 ¶¶ 50-53, 93. Facing a "difficult standard to meet," *Muzikowski II*, 477 F.3d at 904, D'Ambrosio pleads himself out of court: He alleges that the article detailed *Anthony LaMonica's* arrest and charge, and LaMonica's photo and name are visible in the comment itself. Dkt. 53 ¶ 50 & p. 48. It is thus eminently reasonable to conclude that the post referred to LaMonica, not to D'Ambrosio.

The only other statement that even remotely comes close to a *per se* category is the assertion that D'Ambrosio "kept talking about how [Rajala didn't] want to see his bad side, especially when he was on business calls." *Id.* at p. 48; *see id.* ¶¶ 91-92, 94. To be defamatory under either job-related category of defamation *per se*, a statement must accuse the plaintiff of "lacking ability in his trade or doing something bad in the course of carrying out his job." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). The vague assertion Rajala allegedly attributed to D'Ambrosio does not suggest that he lacks professional ability—at most, it suggests that he is interpersonally unpleasant, including on work calls. But "attacks related to personal integrity and character" are not defamatory *per se*. *Id.* at 858 (discussing cases). Thus, because Rajala's statement can reasonably be given a non-defamatory construction, it is not actionable. *See Tuite*, 866 N.E.2d at 122.[1]

---

[1] Moreover, the assertion that D'Ambrosio had a "bad side" is an inactionable statement of opinion. *See Law Offices of David Freydin*, 24 F.4th at 1130 (comment about a "'terrible experience'" was not actionable because it had no "precise and readily understood specific meaning[]" and could

*Defamation per quod.* D'Ambrosio's defamation *per quod* claim stumbles out of the gate. When brought in federal court, such a claim must meet Civil Rule 9(g)'s heightened pleading standard for special damages and pecuniary loss. *See Muzikowski I*, 322 F.3d at 924. D'Ambrosio's claim fails because he "did not itemize his losses or plead specific damages of actual financial injury." *Id.* at 927. Rather, D'Ambrosio offers general allegations of "emotional loss, loss of professional opportunities, and damages to his reputation[.]" Dkt. 53 ¶ 162. "[W]ithout a specific accounting of those damages or an explanation of how the purported defamation caused them," D'Ambrosio's claim fails. *See Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009) (affirming dismissal of defamation *pro quod* claim where plaintiff alleged "that he encountered people in job interviews and at academic seminars who understood the passage to be a swipe at his professional reputation but [did] not describe what pecuniary losses he suffered as a result").

## C.    False Light Invasion of Privacy and Civil Conspiracy

D'Ambrosio's false light claim fails for substantially the same reasons. To state such a claim, D'Ambrosio must allege that he was placed before the public in a false light that would be highly offensive to a reasonable person *and* that Meta acted with actual malice. *See Pope v. Chron. Pub. Co.*, 95 F.3d 607, 616 (7th Cir. 1996). If the claim is based on statements that are not defamatory *per se*, a plaintiff must plead special damages. *See Muzikowski I*, 322 F.3d at 927. D'Ambrosio does not do so, so his false light claim can rest only on any statements that are defamatory *per se*. But "when a false light invasion of privacy claim follows an unsuccessful defamation claim, the false light claim must also fail." *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021). D'Ambrosio's false light claim fails and, as a result, his civil

---

not "be objectively verified as true or false"). It would defy common sense if the statement were actionable merely because Rajala attributed it to D'Ambrosio rather than saying it herself.

conspiracy claim fails too. *See Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 836 (N.D. Ill. 2009) (civil conspiracy requires an underlying cause of action).

### D.  Strict Products Liability

D'Ambrosio's strict products liability claim fails as a matter of law for two reasons.

*First*, Meta provides services—not products—and strict products liability "does not extend to services." *Milford v. Com. Carriers, Inc.*, 210 F. Supp. 2d 987, 990 (N.D. Ill. 2002). Meta offers the Facebook service, similar to the way a library or bookstore makes books available to interested readers, and to which product liability law does not apply. *E.g.*, *James v. Meow Media, Inc.*, 300 F.3d 683, 700-01 (6th Cir. 2002) (games, movies, and websites are not "products" for the purposes of strict liability (citing Restatement (Second) of Torts § 402A)); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022) (dismissing product liability claim because Airbnb's platform is "more akin to a service than to a product"); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 399 (S.D.N.Y. 2018) (granting summary judgment to Amazon on product liability claim because its online marketplace is a "provider of services"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (dismissing product liability claims because "Snapchat is more like a service than a product").

*Second*, an "essential element" of a products liability claim under the Restatement (Second) of Torts § 402A, which Illinois has adopted is, "physical harm." *Sondag v. Pneumo Abex Corp.*, 55 N.E.3d 1259, 1263 (Ill. App. 2016). "Physical harm" is a *physically impairing* loss or detriment. *Id.* at 1264-65 (distinguishing "physical harm" from "bodily harm"). Under Illinois law, "emotional distress is not available for causes of action based on strict products liability." *Parr v. Sunbeam Prods., Inc.*, 2009 WL 10682264, at *9 (C.D. Ill. June 3, 2009). D'Ambrosio alleges only "permanent reputational, emotional, and financial harm." Dkt. 53 ¶ 126. He alleges no physical loss or detriment, so his strict products liability claim fails for this reason as well.

### E.      Negligence and Negligent Entrustment

To plead negligence, D'Ambrosio must plausibly allege that Meta owed him a duty of care, that Meta breached that duty, and that the breach proximately caused his injuries.  *See Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012)*.*  Both of D'Ambrosio's negligence claims fail because he does not plausibly allege either duty or proximate cause.

As to duty, online services do not owe duties of care to their users or the public regarding potentially harmful third-party content.  *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1360 (D.C. Cir. 2014) (no special relationship between Facebook and its users); *Winter v. Facebook, Inc.*, 2021 WL 5446733, at \*6 (E.D. Mo. Nov. 22, 2021) (dismissing negligence claim against Facebook and TikTok because no duty of care existed for alleged victims of abusive posts); *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1009 (N.D. Cal. 2022) ("Google does not owe a general duty to the public based on its operation of the Play Store"); *see also Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019) (no website "could function if a duty of care was created" anytime the service facilitated "communication … of its users' content").

As for proximate causation, making third-party content available or helping disseminate it is not enough to allege proximate cause of injuries arising from that third-party content.  *See Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) ("Doubtless craigslist plays a causal role in the sense that no one could post a discriminatory ad if craigslist did not offer a forum.  That is not, however, a useful definition of cause."); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 625 (6th Cir. 2019) (affirming dismissal for lack of causation against online services, including Facebook, regarding dissemination of terrorism content).

Finally, the contours of D'Ambrosio's negligent entrustment claim are unclear.  Dkt. 53 ¶¶ 152-157.  Under Illinois law, the claim requires "entrusting a dangerous article to another whom the lender knows, or should know, is likely to use it in a manner involving an unreasonable risk of

harm to others." *Johnson v. Xtra Lease LLC*, 2010 WL 706037, at *4 (N.D. Ill. Feb. 24, 2010) (citation omitted). To the extent D'Ambrosio alleges Meta is liable because it entrusted its algorithm to users (Dkt. 53 ¶ 156), he fails to allege that Meta had knowledge that users would "use [the algorithm] in a manner" that creates an unreasonable risk of harm or anything specific about the Facebook users here. Accordingly, both of D'Ambrosio's negligence claims fail.

### F.     Unjust Enrichment

"Under Illinois law, unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (citation omitted). If a plaintiff's "substantive claims fail," any related "unjust enrichment" claim fails too. *Love*, 2024 WL 809107, at *16. Despite three pleading attempts, D'Ambrosio has no viable claim against Meta, so his unjust enrichment claim fails.

## II.     SECTION 230 BARS ALL OF D'AMBROSIO'S CLAIMS AGAINST META

Section 230(c)(1) states that "[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "[C]ourts uniformly recognize" that Section 230 "immunizes internet services for third-party content that they publish, including false statements, against causes of action of all kinds." *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 (D.C. Cir. 2019); *see also, e.g.*, *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) (noting "general agreement" that Section 230 "should be construed broadly in favor of immunity").[2] Section 230 bars claims where, as here, (1) the defendant provides an "interactive computer service" and (2) is being "treated as the publisher or speaker" of (3) "information provided by

---

[2] The Seventh Circuit interprets Section 230(c)(1) to create an affirmative defense rather than to confer immunity. *See G.G.*, 76 F.4th at 566. That distinction does not diminish the persuasive force of decisions from other courts underscoring the breadth of Section 230's protections.

another information content provider." *G.G.*, 76 F.4th at 566 (quoting 47 U.S.C. § 230(c)(1)). Each element is satisfied as to Meta.

### A.    Section 230 Precludes All Claims Against Meta

#### 1.    Meta is a provider of an "interactive computer service"

Meta operates Facebook, which unquestionably is an "interactive computer service" under Section 230 because it is an "information service … that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2); *see Klayman*, 753 F.3d at 1357 ("Facebook qualifies as an interactive computer service."); *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024) ("All agree that Meta is an interactive computer service provider under the statute.").

#### 2.    The posts were made by "another information content provider"

Nor is the requirement that information originate with "another information content provider" plausibly in dispute. D'Ambrosio alleges that Rajala and others posted defamatory statements about him on Facebook and that Rajala posted his photo. Dkt. 53 ¶¶ 2, 46. Rajala and the other posters are thus "information content provider[s]" under 47 U.S.C. § 230(f)(3).

#### 3.    D'Ambrosio impermissibly treats Meta as a "publisher"

Finally, D'Ambrosio treats Meta as a "publisher" of third-party content. Though D'Ambrosio attempts to repackage publisher liability under different labels, "what matters is not the name of the cause of action," but rather whether the claim "inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009).

Here, each claim stems from Meta's publication of content "originating with third-party users of the service." *Johnson v. Arden*, 614 F.3d 785, 792 (8th Cir. 2010). Across his claims, D'Ambrosio seeks to hold Meta liable for "intentionally republish[ing]," "cho[osing] to display,"

"retransmit[ting]," "facilitat[ing] the widespread dissemination of," "select[ing]," "broadcast[ing]," "present[ing]," "[f]ailing to timely remove," "amplif[ying]," and "publish[ing]" third-party content. Dkt. 53 ¶¶ 79-80, 84 (Count One); *id.* ¶¶ 99-100 (Count Three); *id.* ¶ 108 (Count Five); *id.* ¶ 124 (Count Six); *id.* ¶ 144i (Count Seven); *id.* ¶ 157 (Count Eight); *id.* ¶ 159 (Count Nine). As these verbs reveal, the claims target quintessential publishing activities. And Section 230 protects publishers from liability for those publication choices, regardless of the cause of action a plaintiff invokes. *See Force*, 934 F.3d at 64 n.18 (explaining that Section 230 applies to "'a wide variety of causes of actions'" and "not only to defamation claims, where publication is an explicit element" (citation omitted)); *Barnes*, 570 F.3d at 1102 ("[A] plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory from defamation to negligence."); *G.G.*, 76 F.4th at 567 (agreeing with *Barnes* that "the name of the cause of action" does not determine Section 230's applicability (citation omitted)).

Invoking products liability law does not change that result. D'Ambrosio alleges that Meta created a defectively designed "app and algorithm" that circulated defamatory content. Dkt. 53 ¶¶ 129-132. But courts routinely hold that Section 230 bars claims "alleging that defectively designed internet products allowed for transmission of harmful third-party communications." *In re Facebook, Inc.*, 625 S.W.3d 80, 94 (Tex. 2021); *see also, e.g.*, *Est. of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179-82 (9th Cir. 2024) (design defect and negligence); *Herrick v. Grindr LLC*, 765 F. App'x 586, 590 (2d Cir. 2019) (manufacturing and design defect); *Lama v. Meta Platforms, Inc.*, 2024 WL 2021896, at *6 (N.D.N.Y May 6, 2024) (claims including design defect).

D'Ambrosio's brief references to failure to warn (Dkt. 53 ¶ 124) fare no better. Any such claim "is inextricably linked to [Meta's] alleged failure to edit, monitor, or remove" third-party content, and thus is likewise barred by Section 230. *Herrick*, 765 F. App'x at 591; *see also Est. of*

11

*Bride*, 112 F.4th at 1180; *Facebook*, 625 S.W.3d at 94-95.  D'Ambrosio's fundamental "product" theory is that Meta makes third-party content available and that such third-party content harmed him.  Section 230 defeats that theory of liability no matter how D'Ambrosio tries to frame it.

### B.       D'Ambrosio's Attempts To Plead Around Section 230 Fail

D'Ambrosio tries to plead around Section 230 in three unavailing ways.

*First*, D'Ambrosio suggests that the algorithms used on Facebook make Meta more than a mere publisher.  Apparently recognizing that Meta cannot be liable for "host[ing] an online forum" where "third-party users … submit comments," *Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016), D'Ambrosio alleges that Meta has gone "beyond passive hosting by actively deciding what content to promote" through an algorithm that supposedly "elevat[ed]" certain "defamatory statements" about him "to the top of users' content feeds."  Dkt. 53 ¶¶ 71, 62; *see also id.* ¶ 99 (asserting that Meta "is not shielded by Section 230" because "it acted as more than a passive host of content" when its "algorithmic choices directly facilitated the widespread dissemination of false and defamatory statements about Plaintiff").  But courts have roundly rejected attempts to plead around Section 230 merely by invoking the defendant's use of algorithms.  *E.g.*, *Dyroff*, 934 F.3d at 1098; *Force*, 934 F.3d at 65-68; *Doe (K.B.) v. Backpage.com, LLC*, 724 F. Supp. 3d 882, 885 (N.D. Cal. 2024); *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 833-34 (N.D. Cal. 2023); *M.P. by & through Pinckney v. Meta Platforms, Inc.*, 692 F. Supp. 3d 534, 537 (D.S.C. 2023).  The suggestion that using "recommendation" algorithms—that is, algorithms that prioritize content to display what a user may find most "relevant," *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 498 (2023)—somehow takes an interactive computer service outside of Section 230's protections is wrong.  As the Second Circuit explained, "it would turn Section 230(c)(1) upside down to hold that Congress intended that when publishers of third-party content become especially adept at performing the functions of publishers, they are

12

no longer immunized from civil liability." *Force*, 934 F.3d at 67.[3]

     *Second*, D'Ambrosio alleges that Meta and its agents somehow "create, edit, modify, and develop particular pieces of content and software for the purpose of use by the Are We Dating the Same Guy communities." Dkt. 53 ¶ 26. This vague allegation appears intended to suggest that Meta is itself an information content provider. But D'Ambrosio does not allege (plausibly or otherwise) that Meta created, edited, modified, or otherwise developed the "pieces of content" that ground his claims against Meta, all of which he acknowledges were posted by third parties. *Id.* ¶¶ 2, 46-47, 49-53. He therefore fails to provide "[f]actual allegations" that "raise a right to relief" against Meta "above the speculative level." *Twombly*, 550 U.S. at 555.

     *Third*, D'Ambrosio tries to invoke Section 230's intellectual property exception by styling his IRPA claim as an "intellectual property" claim. Dkt. 53 ¶¶ 79-84. Section 230(e)(2) provides: "Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). But Section 230(e)(2) applies only to *federal* intellectual property law. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007). Throughout Section 230, where Congress wished to define the relationship between Section 230 and *state* law, it did so expressly. *See* 47 U.S.C. § 230(e)(3), (e)(4), (e)(5)(B). Congress's choice *not* to refer to "state" intellectual property laws in Section 230(e)(2) indicates that a plaintiff cannot avoid Section 230 by styling his claim under state intellectual property law. That choice is unsurprising—state intellectual property laws "are by no means uniform," and Congress's "expressed goal" in enacting Section 230 was to "insulat[e] the development of the Internet from

---

[3] A Third Circuit panel reversed the dismissal of claims asserting that TikTok's algorithm produces expression attributable to the platform itself. *See Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024). That outlier decision does not change the result here. Even if *Anderson* was correctly decided, D'Ambrosio does not plausibly allege that he was defamed by Meta's own expression, unmediated by user inputs. And if he did, the First Amendment would bar his claims. *See infra*.

the various state-law regimes." *Perfect 10*, 488 F.3d at 1118.  Moreover, D'Ambrosio's theory would let a plaintiff evade Section 230 by repackaging any defamation claim—which must involve a reference to the plaintiff's identity—as an "intellectual property" claim involving appropriation of his "identity."  That cannot be, and is not, the law.[4]

## III.    THE FIRST AMENDMENT BARS D'AMBROSIO'S CLAIMS AGAINST META

Even if D'Ambrosio's claims were viable under state law and not barred by Section 230, they violate the First Amendment.  First Amendment protections are not limited to those who create or originate speech: "[T]he creation *and dissemination* of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (emphasis added); *see also Smith v. California*, 361 U.S. 147, 155 (1959) (First Amendment barred conviction of bookstore owner for housing and distributing obscene books).  The Supreme Court recently confirmed that such protections extend to websites when engaged in "compiling and curating others' speech." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2401 (2024).  "Deciding on the third-party speech that will be included in or excluded from a compilation—and then

---

[4] Although a divided Third Circuit panel disagreed with *Perfect 10* and held that Section 230(e)(2) encompasses claims arising under state intellectual property law, *see Hepp v. Facebook*, 14 F.4th 204, 210-12 (3d Cir. 2021), Meta submits that the Ninth Circuit has the better reasoning, in line with Congress's intent, *see id.* at 220 (Cowen, J., concurring in part and dissenting in part) (expressing doubt that "Congress [would] have really gone so far as to grant immunity from a wide range of state and federal laws—including state criminal law—yet permit claims to go forward under the nebulous (and expansive) category of state 'intellectual property'/'rights of publicity' laws").  But even if Section 230(e)(2) encompassed state law intellectual property claims, IRPA is not an "intellectual property" law.  IRPA "codifies the common law right of publicity." *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 805 (N.D. Ill. 2021) (quoting H.R. Journal, 90th Gen. Assemb., Reg. Sess. 224, 225 (Ill. Apr. 24, 1997)).  And the right of publicity is a "branch of the right of privacy," *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985)—privacy, not intellectual property. *See Hepp*, 14 F.4th at 214 (describing unique feature of Pennsylvania law and "express[ing] no opinion as to whether other states' rights of publicity qualify as intellectual property"); *Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 668-69 (S.D.N.Y. 2023) (concluding that New York's analog to IRPA "sounds in privacy, not intellectual property" and does not fall within Section 230's intellectual property exception).

organizing and presenting the included items—is an expressive activity of its own." *Id.* at 2402.

Regardless of D'Ambrosio's varied pleading labels, nothing in the Second Amended Complaint defeats the application of these First Amendment principles to his claims against Meta. Each claim is premised on Meta's choices regarding what content to disseminate and how such content is displayed to users. *Supra*, Section II. D'Ambrosio seeks to impose liability on Meta for exercising its First Amendment rights to disseminate protected third-party speech and to engage in protected "editorial discretion in the selection and presentation" of content. *Moody*, 144 S. Ct. at 2402. D'Ambrosio cannot circumvent the First Amendment with state law claims seeking to impose his own preferences on the way Meta selects and moderates content.

Finally, even if the posts at issue were not protected, Meta could be liable only if it had actual "knowledge" of the speech's unlawful character. *See Smith*, 361 U.S. at 153; *accord Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992) (applying *Smith* to bar liability for disseminating allegedly harmful videos). D'Ambrosio alleges Meta's "knowledge" in the broadest and most conclusory fashion, claiming that Meta "would have viewed" intellectual property violations as part of its content moderation responsibilities and was "aware of the risks" of its algorithm. *E.g.*, Dkt. 53 ¶¶ 7, 24, 72-77. Such conclusory and unsupported allegations are insufficient to attribute knowledge of the allegedly offending posts to Meta. *See Twombly*, 550 U.S. at 555; *Herceg v. Hustler Mag., Inc.*, 814 F.2d 1017, 1024 (5th Cir. 1987) ("[m]ere negligence" cannot "form the basis of liability" for publishing allegedly dangerous speech).

## CONCLUSION

The Court should dismiss the Second Amended Complaint with prejudice. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818-19 (7th Cir. 2013) (affirming dismissal with prejudice of plaintiff's third pleading attempt, observing, "in court, as in baseball, three strikes and you're out").

Dated:  November 22, 2024

Respectfully submitted,

/s/ *Gary Feinerman*
Gary Feinerman, One of the Attorneys for
Defendant Meta Platforms, Inc.

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com

Melanie M. Blunschi (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415-391-0600
melanie.blunschi@lw.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 22, 2024, a true and accurate copy of the foregoing was electronically filed with the CM/ECF system of the United States District Court for the Northern District of Illinois, which sends notice to counsel of record via e-mail.


Dated:  November 22, 2024

/s/ *Gary Feinerman*
Gary Feinerman, One of the Attorneys for
Defendant Meta Platforms, Inc.

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com
