# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NIKKO D'AMBROSIO,

    Plaintiff,

        v.

ABBIGAIL RAJALA, et al.,

    Defendants.

Case No. 1:24-cv-00678

Hon. Sunil R. Harjani

**SPILL THE TEA DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Amanda N. Catalano
Megan E. Ryan
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, Suite 700
Chicago, IL 60604
Tel: (312) 762-9450
acatalano@tdrlaw.com
mryan@tdrlaw.com
*Counsel for Defendants*

# <u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION .............................................................................................................1

FACTS ALLEGED IN THE COMPLAINT ......................................................................2

LEGAL STANDARD .......................................................................................................3

ARGUMENT ....................................................................................................................3

I.     Section 230 of the CDA bars the plaintiff's claims in their entirety ...............................3

     A.     The plaintiff's claims improperly seek to treat the Spill the Tea Defendants as the "publisher or speaker" of third-party comments .....................3

     B.     The plaintiff's attempts to plead around Section 230 fail .......................................5

          1.     The Spill the Tea Defendants are not "information content providers"......5

          2.     The "intellectual property" exception to Section 230 does not apply ...... 10

II.     The plaintiff's claims fail as a matter of law .................................................. 10

     A.     The IRPA claim fails as a matter of law................................................ 10

     B.     The defamation claims fail as a matter of law ....................................... 11

          1.     The complaint does not identify any false statements ............................ 12

          2     The AWDTSG posts do not fall within any of the limited categories of defamation *per se* .................................................. 12

          3.     The AWDTSG posts are nonactionable opinions.................................... 14

          4.     The plaintiff fails to plead special damages to support his defamation *per quod* claim .................................................... 15

     C.     The false light and civil conspiracy claims fail as a matter of law ...................... 16

     D.     The Doxing Act claim fails as a matter of law.................................................... 16

i

1.    No defendant published "personally identifiable information .................. 17

2.    The plaintiff is not "likely to suffer death, bodily injury, or stalking" ..... 18

3.    The plaintiff did not suffer "emotional distress," a "substantial life disruption," or fear of "serious bodily injury" .................................. 18

E.    The unjust enrichment claim fails as a matter of law ........................... 19

CONCLUSION .......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................3, 19

*Basile v. Prometheus Glob. Media,*
225 F. Supp. 3d 737 (N.D. Ill. 2016) ...........................................................................13

*Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n,*
287 F. Supp. 3d 726 (N.D. Ill. 2018) ......................................................................13, 14

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ..........................................................................................3, 8, 18

*Bittman v. Fox,*
107 F. Supp. 3d 896 (N.D. Ill. 2015) ...........................................................................16

*Blair v. Nevada Landing P'ship,*
859 N.E.2d 1188 (Ill. App. 2006) ................................................................................10

*Carafano v. Metrosplash.com, Inc.,*
339 F.3d 1119 (9th Cir. 2003) .......................................................................................7

*Chi. Lawyers' Comm. for Civil Rights Under the Law, Inc. v. Craigslist, Inc.,*
519 F.3d 666 (7th Cir. 2008) ................................................................................4, 8, 9

*Cody v. Harris,*
409 F.3d 853 (7th Cir. 2005) ..................................................................................12, 13

*Cunningham v. UTI Integrated Logistics, Inc.,*
Civil No. 09-1019-GPM, 2010 WL 1558718 (S.D. Ill. Apr. 19, 2010) .................................14

*DeLuna v. Burciaga,*
857 N.E.2d 229 (Ill. 2006) .........................................................................................17

*Doe v. Columbia Coll. Chi.,*
933 F.3d 849 (7th Cir. 2019) .........................................................................................3

*Dornhecker v. Ameritech Corp.,*
99 F. Supp. 2d 918 (N.D. Ill. 2000) .............................................................................15

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
521 F.3d 1157 (9th Cir. 2008) ........................................................................................6

*Fed. Trade Comm'n v. Accusearch Inc.*,
    570 F.3d 1187 (10th Cir. 2009) .......................................................................6

*Fed. Trade Comm'n v. LeadClick Media, LLC*,
    838 F.3d 158 (2d Cir. 2016) ........................................................................4, 6

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) ..............................................................................4

*Garcia v. SigmaTron Int'l, Inc.*,
    986 F.3d 1058 (7th Cir. 2021) ........................................................................16

*Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*,
    128 F.3d 1074 (7th Cir. 1997) ..........................................................................1

*Glob. Royalties, Ltd. v. Xcentric Ventures, LLC*,
    544 F. Supp. 2d 929 (D. Ariz. 2008) ...............................................................7

*Great Northern Ins. Co. v. Amazon.com, Inc.*,
    524 F. Supp. 3d 852 (N.D. Ill. 2021) ...............................................................9

*Henderson v. Source for Pub. Data, L.P.*,
    53 F.4th 110 (4th Cir. 2022) .............................................................................6

*Heying v. Simonaitis*,
    466 N.E.2d 1137 (Ill. App. 1984) ...................................................................14

*Honaker v. Smith*,
    256 F.3d 477 (7th Cir. 2001) ..........................................................................19

*Huon v. Denton*,
    841 F.3d 733 (7th Cir. 2016) ...............................................................4, 7, 8, 10

*Hurst v. Cap. Cities Media, Inc.*,
    754 N.E.2d 429 (Ill. App. 2001) .....................................................................15

*Huston v. Hearst Commc'ns, Inc.*,
    53 F.4th 1097 (7th Cir. 2022) .........................................................................11

*Jaros v. Vill. of Downer's Grove*,
    180 N.E.3d 125 (Ill. App. 2020) .....................................................................14

*Jones v. Dirty World Ent. Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ....................................................................6, 7, 9

*Kirchner v. Greene*,
    691 N.E.2d 107 (Ill. App. 1998) .....................................................................12

*Law Offices of David Freydin, P.C. v. Chamara*,
    24 F.4th 1122 (7th Cir. 2022) ...................................................................................11, 14, 16

*Lifton v. Bd. of Educ. of City of Chi.*,
    416 F.3d 571 (7th Cir. 2005) ...................................................................................................14

*Lott v. Levitt*,
    556 F.3d 564 (7th Cir. 2009) ...................................................................................................15

*Love v. Simmons*,
    Case No. 23-cv-2392, 2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ........................................19

*Ludlow v. Northwestern Univ.*,
    79 F. Supp. 3d 824 (N.D. Ill. 2015) ...................................................................................12, 16

*Madison v. Frazier*,
    539 F.3d 646 (7th Cir. 2008) ...................................................................................................14

*Muzikowski v. Paramount Pictures Corp.*,
    322 F.3d 918 (7th Cir. 2003) ...................................................................................................15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ...............................................................................................4, 7, 8

*Osundairo v. Geragos*,
    447 F. Supp. 3d 727 (N.D. Ill. 2020) ......................................................................................16

*People v. Bailey*,
    657 N.E.2d 953 (Ill. 1995) .......................................................................................................18

*People v. Nakajima*,
    691 N.E.2d 153 (Ill. App. 1998) ..............................................................................................18

*People v. Sucic*,
    928 N.E.2d 1231 (Ill. App. 2010) ............................................................................................18

*Rivera v. Allstate Ins. Co.*,
    189 N.E.3d 982 (Ill. App. 2021) ..............................................................................................13

*Schivarelli v. CBS, Inc.*,
    776 N.E.2d 693 (Ill. App. 2002) ..............................................................................................16

*Solaia Tech., LLC v. Specialty Publ'g Co.*,
    852 N.E.2d 825, 839 (Ill. 2006) ...............................................................................................11

*Thompson v. Ill. Dep't of Prof. Reg.*,
    300 F.3d 750 (7th Cir. 2002) ...................................................................................................11

*Vanzant v. Hill's Pet Nutrition, Inc.*,
    934 F.3d 730 (7th Cir. 2019) ................................................................19

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) .................................................................9

**Statutes**

740 ILCS 14/10 ...........................................................................................17

740 ILCS 195/5 .......................................................................................17, 19

740 ILCS 195/10(a) ...............................................................................16, 17

740 ILCS 195/10(a)(1) ...............................................................................18

740 ILCS 195/10(a)(2) ...............................................................................18

740 ILCS 195/10(a)(3) ...............................................................................17

47 U.S.C. § 230 ...................................................................................... *passim*

47 U.S.C. §§ 230(a), (b) ...........................................................................3, 4

47 U.S.C. § 230(c)(1) ............................................................................3, 4, 5

47 U.S.C. § 230(f)(2) ...................................................................................4

47 U.S.C. § 230(f)(3) ...................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..............................................1, 3

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Spill the Tea, Inc., Blake Milbrand, and Paola Sanchez (the "Spill the Tea Defendants") move to dismiss the Second Amended Complaint (the "SAC") (Dkt. 53) with prejudice.

## INTRODUCTION

Plaintiff Nikko D'Ambrosio, who was recently sentenced to federal prison for tax fraud (*see* Judgment in a Criminal Case, attached as **Exhibit 1**), has now made his third attempt to sustain this lawsuit against a slew of defendants based on his contention that some women spoke poorly about him in a Facebook Group called *Are We Dating the Same Guy?* ("AWDTSG"). The gist of the messages on AWDTSG is that women should "steer clear" from D'Ambrosio because he is "cruel." *See* SAC, Ex. C at 1, 3.

As one indication of D'Ambrosio's cruelty, defendant Abbigail Rajala posted a text message she says D'Ambrosio sent her. *Id.* at 2. The message stated:

> Speak for yourself you ugly vial fake whore. Your ego matches that fake fucking face where you can't even smile in pictures because your teeth are so fucked. The truth hurts bitch and my message will stay with you forever cunt.

*Id.* (The text message appears in Exhibit C to the complaint but is illegible. The Spill the Tea Defendants have attached a legible copy of the text message as **Exhibit 2**.) The text message is consistent with D'Ambrosio's statement, in his sentencing memorandum in his criminal case, that he has "tried" to "be kind (arguably except to the occasional dating prospect)." *See* D'Ambrosio's Sentencing Memorandum, attached as **Exhibit 3**, at 5.[1]

---

[1] The Court may take judicial notice of the criminal judgment against the plaintiff, his federal prison sentence, and the statements in his sentencing memorandum. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).

The Spill the Tea Defendants did not post anything about D'Ambrosio on AWDTSG. Nevertheless, D'Ambrosio alleges that the Spill the Tea Defendants are liable for misappropriation, defamation, "doxing," and other state law torts because they administer the Facebook Group on which the purportedly offensive statements appeared.

D'Ambrosio's misguided attempt to paint the defendants as bad actors does not mask the multitude of deficiencies in his second amended complaint. D'Ambrosio has now had three attempts to plead cognizable claims and has failed to do so. The second amended complaint should be dismissed with prejudice.

## FACTS ALLEGED IN THE COMPLAINT

AWDTSG is a collection of Facebook Groups that aims to protect women from dangerous men. *See* SAC, Ex. A at 1. Sanchez and Milbrand administer AWDTSG. *Id.* at ¶ 15. Sanchez and Milbrand own Spill the Tea, Inc., which owns and operates AWDTSG. *Id.* at ¶¶ 5-6, 8.

D'Ambrosio and Rajala had a casual dating relationship. *Id.* at ¶ 45. In November 2023, Rajala posted D'Ambrosio's photograph in the AWDTSG "Chicago Subgroup," along with a screenshot of a text message she says she received from D'Ambrosio after their relationship ended. *Id.* at ¶ 46, Ex. C at 2. The text message called Rajala an "ugly vial fake whore" and a "bitch" (among other things), made derogatory comments about her appearance, and warned her: "[M]y message will stay with you forever cunt." SAC, Ex. C at 2; Ex. 2.

Several women posted comments in response to Rajala's AWDTSG post. *See* SAC, Ex. C at 1. The comments generally described D'Ambrosio as "cruel" and warned others to "steer clear." *See id.* Defendant Monica Tska posted a link to a CBS News story about sexual assault charges against a man named Anthony LaMonica. *Id.* at ¶ 50, Ex. C at 1. The link displayed LaMonica's

name and photograph. *Id.* at Ex. C at 1. The link did not refer to D'Ambrosio or otherwise contain any information about him. *See id.*

D'Ambrosio seeks to hold the Spill the Tea Defendants liable for various state law torts based on the AWDTSG users' posts.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "the complaint must 'state a claim for relief that is plausible on its face.'" *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

**I.     Section 230 of the CDA bars the plaintiff's claims in their entirety.**

Section 230 of the CDA forbids any "provider or user of an interactive computer service" from being "treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). All of D'Ambrosio's claims hinge on attributing third-party AWDTSG users' statements to the Spill the Tea Defendants. Section 230 plainly prohibits that tactic, and D'Ambrosio's efforts to plead around Section 230 fail.

**A.     The plaintiff's claims improperly seek to treat the Spill the Tea Defendants as the "publisher or speaker" of third-party comments.**

In passing the CDA, Congress expressly recognized the need "to preserve the vibrant and competitive free market" and "forum for a true diversity" of ideas that the internet promotes. 47

3

U.S.C. §§ 230(a), (b). To further that policy, Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "This means that for purposes of defamation and other related theories of liability, a company [ ] cannot be considered the publisher of information simply because [it] hosts an online forum for third-party users to submit comments." *Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016). Thus, Section 230 bars "state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009); *Chi. Lawyers' Comm. for Civil Rights Under the Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (affirming judgment for Craigslist because it "could not be treated as the 'speaker' of the posters' words, given § 230(c)(1)"). Courts construe Section 230 "broadly" in favor of shielding online forum hosts from liability for user content. *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019).

Section 230 bars D'Ambrosio's claims. The Spill the Tea Defendants both "use" and "provide" an "interactive computer service" under Section 230. They operate AWDTSG through Facebook, which is unquestionably an interactive computer service. *See* 47 U.S.C. § 230(f)(2) (defining an "interactive computer service" as any "information service . . . that provides or enables computer access by multiple users to a computer server"); *Force*, 934 F.3d at 64 (holding that Facebook is an interactive computer service). They also administer an online message board, which courts have repeatedly held is an interactive computer service. *See Huon*, 841 F.3d at 741 (the host of "an online forum for third-party users to submit comments" is a provider of an interactive computer service); *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) ("Courts typically have held that . . . online message boards . . . fall within this

4

definition."). Accordingly, under Section 230, the Plaintiff cannot treat the Spill the Tea Defendants as a "publisher or speaker" of Rajala's or other AWDTSG users' comments. 42 U.S.C. § 230(c)(1).

Yet that is exactly what D'Ambrosio attempts to do. Count I asserts that the Spill the Tea Defendants ran afoul of IRPA for "republishing" a photo that Rajala posted on AWDTSG. SAC, ¶¶ 2, 79-85. Counts III and IX assert defamation claims based on comments that Rajala and others "published" on AWDTSG. *Id.* at ¶¶ 90-102, 159-166. Counts IV and V similarly assert state law claims based on the AWDTSG posts. *See id.* at ¶¶ 104-117. Count II asserts an unjust enrichment claim based on these same facts. *See id.* at ¶¶ 87-88. By seeking to hold the Spill the Tea Defendants liable for the AWDTSG posts, D'Ambrosio treats the Spill the Tea Defendants, who are "provider[s] or user[s] of an interactive computer service," as the "publisher" of "information provided by another information content provider," which Section 230 expressly forbids. 47 U.S.C. § 230(c)(1). The complaint should be dismissed for this reason alone.

**B.      The plaintiff's attempts to plead around Section 230 fail.**

Recognizing that Section 230 bars his claims, D'Ambrosio attempts to plead around it by alleging that the Spill the Tea Defendants are "'information content providers' within the meaning of 47 U.S.C. § 230" (SAC, ¶ 90) and by styling his IRPA claim as an "intellectual property" claim (*id.* at ¶¶ 79-85). Both attempts fail.

**1.      The Spill the Tea Defendants are not "information content providers."**

The complaint does not allege the particularized facts necessary to show that the Spill the Tea Defendants are "information content providers" within the meaning of Section 230.

Section 230 defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). To meet this definition, a plaintiff must plausibly allege that the defendant "directly and 'materially' contributed

5

to what made the content itself 'unlawful.'" *See, e.g.*, *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 127 (4th Cir. 2022) (quoting *Force*, 934 F.3d at 68); *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008) (an information content provider "contributes materially to the alleged illegality of the conduct"); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 413 (6th Cir. 2014) ("[c]onsistent with our sister circuits, we adopt the material contribution test").

This is a high hurdle. In light of Section 230's "broad" interpretation in favor of non-liability (*see, e.g.*, *Jones*, 755 F.3d at 407 (collecting cases)), courts require plaintiffs to allege detailed facts showing that the defendant is directly responsible for the purportedly offensive content by, for example, drafting the content themselves, requiring users to post unlawful content as a condition of using the forum, or compensating users for posting unlawful content. *See, e.g.*, *LeadClick Media*, 838 F.3d at 171 (defendant "required alterations to the [forum's] content" by "instructing [users] to revise their pages to comply with explicit directives"); *Roommates.com*, 521 F.3d at 1166 (defendant required subscribers to complete a "limited set of pre-populated answers" with content that violated federal and state laws as a condition of accessing the website's services); *Henderson*, 53 F.4th at 117-18, 128 (defendant "reformatted and altered" the plaintiffs' public criminal records by "stripping out or suppressing" critical information and "replacing" the stripped information with "its own internally created summaries of the charges") (cleaned up); *Fed. Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009) (defendant directed "researchers" to illegally obtain individuals' confidential information, paid the "researchers" for their work, then sold the information to third parties even though it "knew that its researchers were obtaining the information through fraud or illegality").

In contrast, courts routinely hold that defendants are *not* information content providers if they "provide a forum for user posts" but "[do] not require users to violate the law as a condition of posting, [do] not compensate for the posting of actionable speech, [do] not post actionable content themselves, and therefore [are] not responsible for the actionable speech that was displayed on their websites." *Jones*, 755 F.3d at 414. That is true even if the forum is a "passive conduit for disseminating defamatory statements." *See Huon*, 841 F.3d at 742; *Glob. Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008) ("It is obvious that a website entitled Ripoff Report encourages the publication of defamatory content. However, there is no authority for the proposition that this makes the website operator responsible, in whole or in part, for the 'creation or development' of every post on the site.").

*Jones* is directly on point. In that case, the defendants operated a website called www.TheDirty.com, which encouraged users to submit "stories, news, and gossip about local individuals"—in short, "a user-generated tabloid primarily targeting nonpublic figures." *Jones*, 755 F.3d at 401, 403. The defendants hand-selected which submissions to publish, but did "not materially change, create, or modify any part" of the submissions or "fact-check [them] for accuracy." *Id.* at 403. The Sixth Circuit held that the defendants were not information content providers because they did not require users to post actionable content as a condition of use and did not directly solicit unlawful information. *Id.* at 416; *accord Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (dating website's user questionnaire did not make the website an information content provider because, while the questionnaire "facilitated [ ] expression," the users nonetheless had exclusive control over deciding what content to include in their profiles); *Nemet Chevrolet, Ltd.*, 591 F.3d at 257-58 (business review website was not an information content

7

provider because, while the website solicited users' opinions about local businesses, the users ultimately chose what content to post).

The Seventh Circuit takes a similar approach. In *Huon*, for example, the plaintiff's assertion that the defendant's employees "authored" one or more of the defamatory comments at issue—an assertion the plaintiff supported with "over four pages" of detailed factual allegations—was sufficient to plausibly allege that the defendant was an information content provider. 841 F.3d at 742. In contrast, in *Chicago Lawyers' Committee*, the court held that Craigslist was not an information content provider because it merely offered a forum for its users to post the content of their choice. 519 F.3d at 671-72.

D'Ambrosio does not come close to alleging that the Spill the Tea Defendants are information content providers. His blanket statement that the "[d]efendants are 'information content providers' within the meaning of 47 U.S.C. § 230" (SAC, ¶ 90) is plainly insufficient. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions"). His remaining allegations fare no better.

First, the vague assertions that Sanchez and Spill the Tea provide unspecified "legal and editorial advice" to posters and somehow "assist in the editing of language in particular posts" (SAC, ¶ 20) are the sorts of threadbare, conclusory allegations that courts have held are insufficient to hold a defendant liable as an information content provider. *See Huon*, 841 F.3d at 742 (complaint "asserting one or two standalone factual allegations concerning [a defendant's] control over comments" does not suffice); *Nemet Chevrolet, Ltd.*, 591 F.3d at 258 (allegation that the defendant engaged in "revising or redrafting" consumer complaints, without identifying what the defendant actually revised or redrafted or how its edits affected the posts, was "both threadbare and

conclusory" and thus insufficient). Moreover, even if the complaint could plausibly allege that Sanchez edits *some* AWDTSG posts, it does not allege that she edited the posts at issue here.

Second, the allegation that Sanchez manually reviews and approves all AWDTSG posts (SAC, ¶ 5) is insufficient as a matter of law, as "'[l]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred.'" *Great Northern Ins. Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852, 859-60 (N.D. Ill. 2021) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)); *Jones*, 755 F.3d at 403 (website operator, who hand-selected which user submissions to publish, was not an information content provider). This allegation also is implausible. The complaint alleges that AWDTSG has more than three million users across "a large number of subgroups reflecting major metropolitan areas across the globe," with "thousands" of posts in the Chicago Subgroup alone and "dozens" more added each day. *See* SAC, ¶¶ 12-15, Ex. A. Even if Sanchez wanted to manually review and approve all AWDTSG posts, she would not be able to do so.

Finally, the complaint does not plead any facts regarding whether or how Milbrand acts as an information content provider. The complaint vaguely suggests that Milbrand may be liable as "the primary software developer for the companies" (*id.* at ¶ 6), but that is irrelevant. Developing technology does not make a defendant an information content provider. *Chi. Lawyers' Comm.*, 519 F.3d at 671 ("no one could think" that "firms that make the [ ] software that owners use to post their notices online" are information content providers).

The Spill the Tea Defendants provide a passive forum where users are free to post the content of their choice. They do not require users to post unlawful information as a condition of using AWDTSG, they do not reward users for posting unlawful information, and they do not post

actionable content themselves. As the Seventh Circuit has made clear, the Spill the Tea Defendants "cannot be considered the publisher of information simply because [they] host[ ] an online forum for third-party users to submit comments." *Huon*, 841 F.3d at 741. The Spill the Tea Defendants are not "information content providers," and Section 230 bars D'Ambrosio's claims.

### 2. The "intellectual property" exception to Section 230 does not apply.

D'Ambrosio also attempts to invoke the "intellectual property" exception to Section 230 by styling his IRPA claim as an "intellectual property" claim. *See* SAC, ¶¶ 79-85. That effort fails for the reasons set forth in section II(B) of Defendant Meta Platform, Inc.'s Motion to Dismiss Second Amended Complaint (Dkt. 65 at 13-14) (the "Meta Motion to Dismiss"), which the Spill the Tea Defendants hereby adopt and incorporate by reference.

## II. The plaintiff's claims fail as a matter of law.

Regardless of whether Section 230 bars D'Ambrosio's claims in their entirety, the complaint should be dismissed with prejudice for the independent reason that D'Ambrosio does not allege the elements of his claims, and he cannot cure his pleading deficiencies.

### A. The IRPA claim fails as a matter of law.

An IRPA misappropriation claim has three elements: (1) appropriation of one's name or likeness (2) without one's consent (3) for a commercial purpose. *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1191-92 (Ill. App. 2006). D'Ambrosio alleges the defendants violated IRPA by publishing his photograph on AWDTSG without his permission. SAC, ¶ 81. For all the reasons set forth in section I(A) of the Meta Motion to Dismiss, which the Spill the Tea Defendants adopt and incorporate by reference, the IRPA claim fails as a matter of law because the complaint does not plausibly allege that Rajala or any other defendant posted D'Ambrosio's photograph to AWDTSG for a "commercial purpose." Further, for all the reasons set forth in the Meta Motion to Dismiss,

section 35(b)(1) of IRPA expressly exempts the Spill the Tea Defendants' alleged use of D'Ambrosio's photograph.

D'Ambrosio tries to save his IRPA claim by alleging the Spill the Tea Defendants published his photograph in connection with two online fundraisers, and he attaches those fundraisers as exhibits to the complaint. SAC at ¶ 81, Ex. A, Ex. D. However, "IRPA requires that the individual's identity be used or held out to advance a commercial goal . . . and, necessarily, *precede or accompany* the [commercial] activity." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1103 (7th Cir. 2022) (emphasis added). As the exhibits make clear, D'Ambrosio's photograph does not appear at all on the fundraising pages. *See* SAC at Ex. A, Ex. D.[2] Indeed, the complaint alleges that Sanchez published the GoFundMe page "[o]n or about April, 2023"—eight months *before* Rajala posted D'Ambrosio's photograph on AWDTSG. *See* SAC, ¶¶ 31, 46. The Spill the Tea Defendants' alleged use of D'Ambrosio's photograph neither preceded nor accompanied AWDTSG's fundraising activity, and the IRPA claim necessarily fails.

### B. The defamation claims fail as a matter of law.

To state a claim for defamation under Illinois law, "a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (quoting *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 829 (Ill. 2006)). D'Ambrosio cannot plead these elements, and the defamation claims should be dismissed as a matter of law.

---

[2] It is well-settled that "where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Ill. Dep't of Prof. Reg*., 300 F.3d 750, 754 (7th Cir. 2002).

### 1. The complaint does not identify any false statements.

The defamation claims fail out of the gate because D'Ambrosio does not even identify the purportedly false statements with which he takes issue (aside from the statement about Anthony LaMonica, which the Spill the Tea Defendants address below). The complaint vaguely asserts that Rajala posted "provably false and defamatory statements" on AWDTSG, then generally points to Exhibits B and C. SAC, ¶ 46. But those exhibits contain statements that even D'Ambrosio admits are true, including that he and Rajala "met organically" in Chicago and had a brief dating relationship. *See* SAC, ¶ 45, Ex. C at 2. "'Absent some allegation as to what specific statement was false, a claim based on *false* [statements] simply fails to satisfy the most basic element of the cause of action.'" *Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824, 842 (N.D. Ill. 2015) (quoting *Kirchner v. Greene*, 691 N.E.2d 107, 116 (Ill. App. 1998)) (emphasis in original).

### 2. The AWDTSG posts do not fall within any of the limited categories of defamation *per se*.

Defamation *per se* is restricted to statements that fall into five limited categories, including, as relevant here: "(1) those imputing the commission of a criminal offense; . . . (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; [and] (4) those imputing a lack of ability, or that prejudice a party in his trade, profession, or business." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). D'Ambrosio's attempt to shoehorn the AWDTSG statements into these categories is baseless.

D'Ambrosio first alleges that the AWDTSG statements "are reasonably understood to state or imply that Plaintiff has engaged in criminal activity by way of falsely accusing him of criminal sexual assault." SAC, ¶ 92. The only fact D'Ambrosio alleges to support that legal conclusion is that someone posted a link to an article about a man named "Anthony LaMonica" being "charged with Criminal Sexual Assault." SAC, ¶ 50. But as D'Ambrosio himself acknowledges, and as the

12

exhibits to the complaint make clear, the article in question contained *LaMonica's* name and photograph—not D'Ambrosio's. *Id.* at ¶¶ 51-52, Ex. C at 4. "[A] statement is not actionable *per se* if the statement can be reasonably interpreted as referring to someone other than the plaintiff." *Rivera v. Allstate Ins. Co.*, 189 N.E.3d 982, 994-95 (Ill. App. 2021) (collecting cases). Because the statement, on its face, does not refer to D'Ambrosio, it cannot support a claim of defamation *per se*. *See Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 287 F. Supp. 3d 726, 733-34 (N.D. Ill. 2018) ("[I]f a statement can be reasonably interpreted as referring to someone else, it fails to qualify as even being a statement targeting the plaintiff."); *Basile v. Prometheus Glob. Media*, 225 F. Supp. 3d 737, 743 (N.D. Ill. 2016) ("Because the article does not attribute criminal activity to Basile, her claim under the first defamation *per se* category is without merit.").

D'Ambrosio next attempts to fit his claim within the third or fourth category of defamation *per se* by alleging that the AWDTSG posts "imply that Plaintiff is dishonest, immoral and/or untrustworthy" and therefore "have damaged Plaintiff in his trade, office, or profession." SAC, ¶¶ 92, 94. But actionable statements "under the third and/or fourth categories have always been related to job performance; to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Cody*, 409 F.3d at 857 (emphasis in original). "Conversely, attacks related to personal integrity and character have not been deemed defamatory *per se*." *Id.* at 858; *Basile*, 225 F. Supp. 3d at 743 ("Significantly, it is not sufficient that the statement implies that the subject lacked integrity or judgment.").

It is clear from the complaint that none of the AWDTSG posts relate to D'Ambrosio's job performance or professional integrity. While Rajala referenced D'Ambrosio's "bad side" . . . on business calls," *see id.*, that statement is not actionable because it lacks the requisite "nexus between the content of the defamatory statement" and the "skills" necessary to "carry out"

D'Ambrosio's "particular occupation." *Jaros v. Vill. of Downer's Grove*, 180 N.E.3d 125, 144 (Ill. App. 2020) (citation omitted); *see also Heying v. Simonaitis*, 466 N.E.2d 1137, 1143 (Ill. App. 1984) (statements regarding personality conflicts between a nurse and her fellow employees were not actionable because they did not impugn the plaintiff's ability as a nurse); *Cunningham v. UTI Integrated Logistics, Inc.*, Civil No. 09-1019-GPM, 2010 WL 1558718, at *4 (S.D. Ill. Apr. 19, 2010) (statements that plaintiff made racially derogatory remarks and physically intimidated coworkers "related more to [his] personal character (by impugning that he was a bigot and a bully) than to his work or professional traits"). Indeed, D'Ambrosio does not even allege what his occupation was before his imprisonment. The complaint does not identify any statement that is *per se* defamatory, and Count III should be dismissed with prejudice.

### 3.    The AWDTSG posts are nonactionable opinions.

D'Ambrosio's defamation claims fail for another, independent reason: The AWDTSG posts constitute protected opinions. "[O]pinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment, and that is so even when the opinions concern one of the five defamation *per se* categories under Illinois law." *Bd. of Forensic Document Exam'rs, Inc.*, 922 F.3d at 832. Thus, statements which "fail to amount to verifiable assertions of fact" and "lack[ ] readily understood meaning" are protected statements of opinion that do not give rise to a defamation claim. *Madison v. Frazier*, 539 F.3d 646, 655 (7th Cir. 2008). The thrust of the AWDTSG posts—that D'Ambrosio had a "bad side," or is "cruel" and that others should "steer clear" of him, coupled with "red flag" emojis and opinions about D'Ambrosio's "true colors"— reflect subjective opinions about D'Ambrosio's character and are not verifiable statements of fact. *See Lifton v. Bd. of Educ. of City of Chi.*, 416 F.3d 571, 579 (7th Cir. 2005) (descriptions of plaintiff as "lazy," "unstable," or "doesn't want to work" were nonactionable opinion); *Law Offices of*

*David Freydin, P.C.*, 24 F.4th at 1130 (statements such as "terrible experience," "awful customer service," and "don't waste your money" were too imprecise to constitute actionable facts).[3]

### 4. The plaintiff fails to plead special damages to support his defamation *per quod* claim.

In a *per quod* defamation action, "the plaintiff must plead and prove special damages, meaning actual damage to his reputation and pecuniary loss resulting from the defamatory statement." *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 933 (N.D. Ill. 2000). D'Ambrosio's feeble and conclusory allegations do not meet this heightened pleading standard, and Count IX should be dismissed.

The only special damages D'Ambrosio alleges are "emotional distress, emotional loss, loss of professional opportunities, and damage to his reputation and relationships." SAC, ¶ 162. These allegations cannot support a claim for defamation *per quod* because D'Ambrosio "did not itemize his losses or plead specific damages of actual financial injury," which "is a required element of a *per quod* claim." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003). "Such general allegations, which make no effort to explain how any reputational damage translated into actual harm, are not enough." *Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009) (upholding dismissal of a defamation claim where the plaintiff alleged he encountered people who understood the statements "to be a swipe at his professional reputation but does not describe what pecuniary losses he suffered as a result.").

---

[3] The only factually verifiable statement is Rajala's assertion that D'Ambrosio sent her a text message calling her an "ugly vial fake whore," a "bitch," and a "cunt" with a "fake fucking face." *See* SAC Ex. B at 2; Ex. 2. Tellingly, D'Ambrosio does not base his defamation claim on this statement because it would require him to deny that he sent Rajala the text message, which he cannot do without violating Rule 11. *See Hurst v. Cap. Cities Media, Inc.*, 754 N.E.2d 429, 433 (Ill. App. 2001) (truth is an absolute defense to defamation claims).

### C.      The false light and civil conspiracy claims fail as a matter of law.

D'Ambrosio's false light claim fails for the same reasons his defamation claim fails. First, the complaint does not specifically identify any false statements, which alone warrants dismissal. *See Ludlow*, 79 F. Supp. 3d at 842 (dismissing defamation and false light claims). Second, "when a false light invasion of privacy claim follows an unsuccessful defamation claim, the false light claim must also fail." *Garcia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021); *see also Osundairo v. Geragos*, 447 F. Supp. 3d 727, 738 (N.D. Ill. 2020) ("Where an unsuccessful defamation *per se* claim is the basis of his false-light claim, plaintiff's false light invasion of privacy claim fails as well."). Third, the AWDTSG posts are "statements that are expressions of opinion devoid of any factual content," which "are not actionable as false light claims." *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 701 (Ill. App. 2002). Fourth, to the extent the false light claim is based on statements that are allegedly defamatory *per quod*, it fails because D'Ambrosio has not alleged special damages. *See Bittman v. Fox*, 107 F. Supp. 3d 896, 904 (N.D. Ill. 2015) ("if a false light claim is based on statements that are not defamatory per se, special damages too must be pleaded").

D'Ambrosio's civil conspiracy claim is tethered to his false light claim. SAC, ¶¶ 115-116. As the false light claim fails, the civil conspiracy claim must also be dismissed. *See Law Offices of David Freydin, P.C.*, 24 F.4th at 1133 ("When a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for conspiracy also fails.").

### D.      The Doxing Act claim fails as a matter of law.

To state a claim under the Doxing Act, a plaintiff must allege: (1) that the defendant published his "personally identifiable information"; (2) that the publication rendered him "reasonably likely to suffer death, bodily injury, or stalking"; and (3) that the publication caused him to suffer "emotional distress," to "fear serious bodily injury," or to "suffer a substantial life

disruption." *See* 740 ILCS 195/10(a). D'Ambrosio also fails to allege even the most basic elements of this claim, and it should be dismissed.

### 1. No defendant published "personally identifiable information."

The Doxing Act defines "personally identifiable information" as (1) information that "can be used to distinguish or trace a person's identity," such as the person's legal name or place of birth, *plus* (2) "other information that is linked or linkable to a person," such as a person's "social security number, home address, phone number, email address, social media accounts, or biometric data," a person's work or medical records, or "information that provides access to a person's teleconferencing, video-teleconferencing, or other digital meeting room." 740 ILCS 195/5. Further, "the person whose information is published must be identifiable from the published personally identifiable information itself." *Id.*, § 10(a)(3).

D'Ambrosio alleges that the defendants published his personally identifiable information by posting his first name and "likeness" (*i.e.*, his photograph) on AWDTSG. SAC, ¶ 104, Ex. C. D'Ambrosio fails to allege even the first prong of "personally identifiable information," as a person's first name alone is not enough to "distinguish or trace" that person's identity. *See* 740 ILCS 195/5. He also fails to allege the second prong, as the statutory text makes clear that a photograph does not qualify as information that is "linked or linkable to a person." Such information falls into two buckets: (1) a person's contact information (*e.g.*, home address, phone number, email address); and (2) sensitive, uniquely identifying personal information (*e.g.*, social security number, biometric data, medical records). *See* 740 ILCS 195/5. The closest a photograph comes to any of these is "biometric data," but the Illinois law expressly states that a photograph is *not* a biometric identifier. *See* 740 ILCS 14/10 ("[b]iometric identifiers do not include . . . photographs"); *see DeLuna v. Burciaga*, 857 N.E.2d 229, 236 (Ill. 2006) ("[i]t is appropriate statutory construction to consider similar and related enactments").

17

### 2. The plaintiff is not "likely to suffer death, bodily injury, or stalking."

The Doxing Act claim fails for the independent reason that D'Ambrosio does not allege any facts to show that he was "reasonably likely to suffer death, bodily injury, or stalking." *See* 740 ILCS 195/10(a)(1). He alleges only that he is "reasonably likely or otherwise [has] reasonable fear that he is likely to suffer significant injury, including risk of death, bodily injury, or stalking" (SAC, ¶ 105), but parroting the statutory language is insufficient. *See Twombly*, 550 U.S. at 555 (conclusory allegations and "a formulaic recitation of the elements of a cause of action will not do"). In any event, the complaint misstates the relevant legal standard. The Doxing Act requires that a plaintiff *actually* be likely to suffer death, bodily injury, or stalking—not that he has a "reasonable fear" that he is likely to suffer such things. 740 ILCS 195/10(a)(1).

D'Ambrosio cannot cure this deficiency. The Doxing Act incorporates the stalking statute at Section 12.73 of Illinois' Criminal Code. *See id.* at § 5. Under that statute, courts have held that victims reasonably feared bodily injury where, for example, the defendant told the victim he "was going to come over with a gun" and "blow her and her children away" (*People v. Bailey*, 657 N.E.2d 953, 970 (Ill. 1995) (cleaned up)), "left the victim several voice mail messages threatening to kill her" (*People v. Sucic*, 928 N.E.2d 1231, 1249 (Ill. App. 2010)), and followed the victim at her workplace, trailed her vehicle, and lurked outside her home (*People v. Nakajima*, 691 N.E.2d 153, 155-56 (Ill. App. 1998)). D'Ambrosio does not allege that anyone even contacted him as a result of the AWDTSG posts, let alone engaged in any behavior that seriously threatened his safety. The opposite is true: The AWDTSG posts warned others to "steer clear." *See* SAC, Ex. C at 1.

### 3. The plaintiff did not suffer "emotional distress," a "substantial life disruption," or fear of "serious bodily injury."

In an effort to meet section 10(a)(2) of the Doxing Act, D'Ambrosio alleges, with no supporting facts, that he suffered "significant emotional distress, disruption to his life, and fear of

serious bodily injury" as a "direct and proximate cause of the Defendants' actions." SAC, ¶ 106). This blanket assertion simply regurgitates the statutory language and fails as a matter of law. *See Iqbal*, 556 U.S. at 679 (claims that tender "'naked assertions' devoid of 'further factual enhancement'" do not suffice) (quoting *Twombly*, 550 U.S. at 557). Once again, D'Ambrosio cannot cure this pleading deficiency.

First, the statute limits "emotional distress" to "significant . . . emotional suffering that is protracted and not merely trivial or transitory." 740 ILCS 195/5. In the tort context, "emotional stress must be *severe*," and "fright, horror, grief, shame, humiliation, worry, etc. . . . alone are not actionable." *Honaker v. Smith*, 256 F.3d 477, 495 (7th Cir. 2001) (emphasis in original). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* D'Ambrosio does not come close to alleging this level of emotional distress.

Second, the Doxing Act narrowly defines a "substantial life disruption" as "a material and significant alteration of an individual's livelihood," which includes "moving from an established residence, changing routes to and from work, changing employment or work schedule, or losing time at work or a job." 740 ILCS 195/5. D'Ambrosio alleges nothing of the sort.

Third, for the reasons set forth in Section II.D.2 above, D'Ambrosio cannot plausibly allege that he suffered a fear of "serious bodily injury." The Doxing Act claim should be dismissed.

### E.     The unjust enrichment claim fails as a matter of law.

"Under Illinois law, unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (citation omitted). Because D'Ambrosio's substantive claims fail, his unjust enrichment claim also fails. *Love v. Simmons*, Case No. 23-cv-2392, 2024 WL 809107, at *16 (N.D. Ill. Feb. 27, 2024).

19

## CONCLUSION

For all the foregoing reasons, the Second Amended Complaint should be dismissed with prejudice.

Dated: November 27, 2024                    Respectfully submitted,

                                            SPILL THE TEA, INC.,
Amanda N. Catalano                          PAOLA SANCHEZ, and
Megan E. Ryan                               BLAKE MILLBRAND
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, 7th Floor            By: */s/ Amanda N. Catalano*
Chicago, IL 60604
(312) 762-9450
acatalano@tdrlaw.com
mryan@tdrlaw.com

20