UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**Nikko D'Ambrosio**,

    Plaintiff,

v.

**Carol and Rodney Rajala,**

    Defendant.

No. 24-cv-00678

Judge Sunil R. Harjani

## <u>Defendant Abbigail Rajala's Motion to Dismiss</u>

Defendant Abbigail Rajala moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Second Amended Complaint (Dkt. 53) with prejudice.

# Table of Contents

Background ................................................................................................. 1

Legal Standard ........................................................................................... 2

Argument .................................................................................................... 2

    I.    The IRPA claim fails as a matter of law ............................................ 2

    II.   The defamation claims fail as a matter of law ................................... 4

        A.   The complaint does not identify any false statements ................. 4

        B.   The complaint fails to plead damages for the defamation claims ............................. 6

    III.  The false light invasion of privacy and civil conspiracy claims also fail ....................... 10

    IV.  The Doxing Act claim fails as a matter of law ..................................... 10

        A.   Ms. Rajala did not publish "personally identifiable information" ........................... 11

        B.   The complaint fails to plead Ms. Rajala's intent under the statute ......................... 12

        C.   D'Ambrosio did not suffer "emotional distress," "substantial life disruption," or fear of "serious bodily injury" from Ms. Rajala's alleged publication ................................ 14

    V.   The unjust enrichment claim fails as a matter of law. ............................ 15

Conclusion .................................................................................................. 15

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................... 2, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................... 2

*Bittman v. Fox*,
   107 F. Supp. 3d 896 (N.D. Ill. 2015) ...................................................... 10

*Bryson v. News Am. Publ'ns*,
   174 Ill. 2d 77 (1996) ................................................................................ 8

*Cody v. Harris*,
   409 F.3d 853 (7th Cir. 2005) ................................................................... 9

*Collier v. Murphy*,
   No. 02 C 2121, 2003 WL 1606637 (N.D. Ill. Mar. 24, 2003) ............................ 4

*DeLuna v. Burciaga*,
   857 N.E.2d 229 (Ill. 2006) ..................................................................... 12

*Dornhecker v. Ameritech Corp.*,
   99 F. Supp. 2d 918 (N.D. Ill. 2000) ........................................................ 6

*Gracia v. Sigmatron Int'l, Inc.*,
   986 F.3d 1058 (7th Cir. 2021) ................................................................ 10

*Heying v. Simonaitis*,
   126 Ill. App. 3d 157 (1984) ..................................................................... 9

*Honaker v. Smith*,
   256 F.3d 477 (7th Cir. 2001) ................................................................. 15

*Huston v. Hearst Commc'ns, Inc.*,
   53 F.4th 1097 (7th Cir. 2022) ................................................................. 3

*Jaros v. Vill. of Downers Grove*,
   2020 IL App (2d) 180654 (2020) ............................................................ 9

*Law Offices of David Freydin, P.C. v. Chamara*,
   24 F.4th 1122 (7th Cir. 2022) ....................................................... 4, 6, 7, 10

*Lifton v. Bd. of Educ. of Chi.*,
   416 F.3d 571 (7th Cir. 2005) ................................................................... 6

*Lott v. Levitt,*
   556 F.3d 564 (7th Cir. 2009) ............................................................. 7

*Love v. Simmons,*
   No. 23-cv-2392, 2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ...................... 4, 15

*Ludlow v. Nw. Univ.,*
   79 F. Supp. 3d 824 (N.D. Ill. 2015) .................................................. 5, 10

*Muzikowski v. Paramount Pictures Corp.,*
   322 F.3d 918 (7th Cir. 2003) ........................................................... 6, 7

*Muzikowski v. Paramount Pictures Corp.,*
   477 F.3d 899 (7th Cir. 2007) .............................................................. 7

*People v. Ashley,*
   2020 IL 123989 ............................................................................. 14

*People v. Relerford,*
   2017 IL 121094 ............................................................................. 14

*Pope v. Chron. Publ'g Co.,*
   95 F.3d 607 (7th Cir. 1996) .............................................................. 10

*Rivera v. Allstate Ins. Co.,*
   2021 IL App (1st) 200735 ................................................................ 7, 8

*Schaffer v. Zekman,*
   196 Ill. App. 3d 727 (1990) ............................................................. 8, 9

*Schiavarelli v. CBS, Inc.,*
   333 Ill. App. 3d 755 (2002) .............................................................. 10

*Tuite v. Corbitt,*
   224 Ill. 2d 490 (2006) ....................................................................... 9

*Vanzant v. Hill's Pet Nutrition, Inc.,*
   934 F.3d 730 (7th Cir. 2019) ............................................................ 15

**Statutes**

720 ILCS 5/12-7.3 ........................................................................... 14

740 ILCS 14/10 ............................................................................... 12

740 ILCS 195/5 ..................................................................... 11, 12, 13

740 ILCS 195/10(a)(1) ............................................................... 12, 13

765 ILCS 1075/5 ..................................................................................................3

765 ILCS 1075/35(b)(1) .......................................................................................3

Defendant Rajala's Motion to Dismiss

## Background

D'Ambrosio claims that he and Ms. Rajala dated briefly in 2023. Dkt. 53 ¶ 45. In November 2023, Rajala posted about her fling with D'Ambrosio in the Chicago-area subgroup of "Are We Dating the Same Guy?" a collection of Facebook Groups where women share information about their dates to avoid dangerous or "toxic men." *Id.* ¶¶ 12-14, 46. Rajala's posts noted an unpleasant experience with D'Ambrosio:

> We met organically in Chicago two and a half months ago. Very clingy and very fast. Flaunted money very awkwardly and kept talking about how I don't want to see his bad side, especially when he was on business calls. He came to see me yesterday and I explained how I didn't really want to stay the night. I just wanted to spend the day together, and this was his response.
>
> ***
>
> After I blocked his number, he texted me on another one. Which is the other text screenshot.

Dkt. 53 at 48 (Ex. C at 4). Rajala also included a photo of D'Ambrosio and a screenshot of a message he sent her after she told him she did not want to stay the night. *Id.* ¶ 2 & pp. 48, 51 (Ex. C at 4, 7). The message stated:

> Speak for yourself you ugly vial fake whore. Your ego matches that fake fucking face where you can't even smile in pictures because your teeth are so fucked. The truth hurts bitch and my message will stay with you forever cunt.

Dkt. 71-2.[1] Aside from these posts, no other statements are attributed to Ms. Rajala. *Id.* ¶¶ 45-46 & pp. 48-51.

Other users commented on Rajala's post. Dkt. 53 at 48-51. One response linked to a CBS News article naming Anthony LaMonica, a different man who had been charged with criminal sexual assault. *Id.* ¶ 50 & p. 48. The post did not explicitly associate the article or LaMonica with D'Ambrosio, and the link's text specifically named LaMonica. *Id.*

---

[1] The screenshot of this message did not reveal D'Ambrosio's telephone number or any additional statements by Ms. Rajala. See Dkt. 71-2.

In response, D'Ambrosio sued Ms. Rajala, her parents (whose home wifi he believed Ms. Rajala used to access Facebook), administrators of the Facebook group where Ms. Rajala posted, and Meta. Dkt. 1; Dkt. 29 (amended complaint); Dkt. 53 (second amended complaint).

## Legal Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. To that end, a complaint must consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## Argument

### I. The IRPA claim fails as a matter of law.

The substance of D'Ambrosio's IRPA claim remains unchanged in the Second Amended Complaint and still fails as a matter of state law. For the reasons outlined in section I(A) of Defendant Meta's Motion to Dismiss (Dkt. 65 at 3-4) and in section II(A) of the Spill the Tea Motion to Dismiss (Dkt. 71 at 10-11), which Defendant Rajala adopts and incorporates by reference, the IRPA claim fails as a matter of law because the complaint does not plausibly allege that Rajala posted D'Ambrosio's photograph on Facebook "for a commercial purpose." Further, for the reasons outlined in section I(A) of the Meta Motion to Dismiss (Dkt. 38 at 7), which Rajala also adopts and incorporates by reference, section 35(b)(1) of IRPA expressly exempts Rajala's alleged use of D'Ambrosio's

photograph because her post was not a commercial advertisement for a product, merchandise, good, or service.

To state a claim for a violation of IRPA, D'Ambrosio must allege that Ms. Rajala misused his identity for "commercial purposes." *See Huston v. Hearst Commc'ns Inc.*, 53 F. 4th 1097, 1099 (7th Cir. 2022) (citing 765 ILCS 1075/30(a)). IRPA defines "commercial purpose" disjunctively as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.* at 1100 (citing 765 ILCS 1075/5).

D'Ambrosio does not allege that anyone used his photograph for a commercial purpose. According to the Second Amended Complaint, Rajala published his image on Facebook "with the intent of causing [him] reputational harm." Dkt. 53 ¶ 46. There is no allegation that Ms. Rajala sought or received any commercial benefit for posting the photo, and the complaint's Exhibits illustrate that Rajala posted the photo to warn other women that D'Ambrosio was a jerk. *See generally*, Dkt. 53 at 45-53 (Ex. C). D'Ambrosio does not allege that Rajala posted the photo in connection with the sale of any product or service, to advertise any product or service, or for fundraising. *See* 765 ILCS 1075/5 (definition of "commercial purpose"). Thus, he fails to plead that Ms. Rajala used his photo for a commercial purpose under IRPA.

Even more, the IRPA specifically exempts Ms. Rajala's alleged use of D'Ambrosio's photograph. Section 35(b)(1) of the statute exempts the "use of an individual's identity" to "portray . . . that individual" in an "article" or "visual . . . work," provided that the work "does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services." 765 ILCS 1075/35(b)(1). That is precisely how Ms. Rajala used D'Ambrosio's photograph

here. According to the complaint, Ms. Rajala posted D'Ambrosio's photo in a visual work on Facebook to warn others of his behavior. *See* Dkt. 53, ¶ 46 & Ex. C. Thus, on the face of the complaint, Ms. Rajala's post was not "in and of itself" a commercial advertisement and cannot form the basis of an IRPA violation. *See Love v. Simmons*, 2024 WL 809107, at *7-9 (N.D. Ill Feb. 27, 2024) (rejecting misappropriation claim involving use of plaintiff's identity in a music video and documentary); *Collier v. Murphy*, 2003 WL 1606637, at *2-3 (N.D. Ill. Mar. 26, 2003) (rejecting misappropriation claim involving use of plaintiff's identity in a documentary).

## II. The defamation claims fail as a matter of law.

The defamation claims in Count 3 (defamation *per se*) and Count 9 (*per quod*) fail because they fail to show that (1) Ms. Rajala made a false statement about D'Ambrosio and (2) that her publication of that statement caused damages. Again, Ms. Rajala adopts and incorporates by reference her co-defendant's arguments regarding the defamation claims in their respective motions to dismiss. *See* Dkt. 65 at 4-6 (Meta); Dkt. 71 at 11-15 (Spill the Tea Defendants).

### A. The complaint does not identify any false statements.

Both defamation claims fail because the complaint does not identify the allegedly false statements on which they rely. To the extent that the complaint identifies *any* of Ms. Rajala's statements specifically, those statements are non-actionable statements of opinion.

Under Illinois law, a defamation claim must "present facts showing that the defendant made a false statement about the plaintiff." *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (citing *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E. 2d 825, 829 (Ill. 2006). Whether a statement is a non-actionable opinion or an actionable assertion of fact is a

question of law that turns on "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is factually verifiable; and (3) whether the literary or social context signals that the statement has factual content." *Id.* at 1129 (cleaned up). "[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Id.* at 1129-30 (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).

Here, the complaint does not explicitly identify any false statements Ms. Rajala allegedly made. Instead, the complaint loosely alleges that Ms. Rajala posted "provably false and defamatory statements" on Facebook, citing Exhibits B and C of the complaint, without specifying which statements in the exhibits are false and defamatory. Dkt. 53 ¶ 46. To the extent the complaint refers to specific statements by Ms. Rajala in the exhibits, it confirms them to be true: Ms. Rajala "met organically . . . in Chicago" and "spent brief periods of time together." *Compare id.* at ¶ 45 *with id.* at 48 (Ex. C at 4). Because the complaint fails to identify the content or the nature of a statement that is alleged to be false, it fails to state a defamation claim. *Cf. Ludlow v. Northwestern Univ.* 79 F. Supp. 3d 824, 842 (N.D. Ill. 2015) (failure to "identify the content or even the nature of the [alleged false statement]" doomed plaintiff's defamation claim) (citing *Green v. Rogers*, 917 N.E.2d 450, 460 (2009) (Allegations that plaintiff "exhibited a long pattern of misconduct with children" and "abused players, coaches, and umpires" are "summary of the types of statements," not a "precise and particular account of the [allegedly defamatory] statements")).

Furthermore, the remainder of Ms. Rajala's statements are nonactionable opinions. For example, the statements that D'Ambrosio had a "bad side" or was "[v]ery clingy and very fast" are subjective impressions of D'Ambrosio's

Defendant Rajala's Motion to Dismiss

demeanor, not precise and readily verifiable statements of fact. *See, e.g.*, *Law Offices of David Freydin*, 24 F.4th at 1130 (comments about a "terrible experience" and "awful customer service" were not actionable because they had no "precise and readily understood specific meanings" and could not "be objectively verified as true or false"); *Lifton v. Bd. Of Educ of City of Chi.*, 416 F.3d 571, 579 (7th Cir. 2005) (descriptions of plaintiff as "lazy," "unstable," or "doesn't want to work" were nonactionable opinion).

Finally, none of the additional statements in Exhibit C are attributable to Ms. Rajala. The additional comments warning that D'Ambrosio was "cruel" or that others should "steer clear" were neither made nor adopted by Ms. Rajala. Nor could she have anticipated that subsequent commenters would request personal information related to D'Ambrosio to "defame [his] character and reputation" or post the CBS News Article detailing the arrest of an unrelated individual who was charged with Criminal Sexual Assault. Even if those statements were capable of being false or defamatory (they are not), they cannot support a claim against Ms. Rajala for defamation. Without more, the defamation claims fail.

### B. The complaint fails to plead damages for the defamation claims.

A plaintiff bringing a defamation *per quod* claim under Illinois law in federal court "must plead and prove special damages, meaning actual damage to his reputation and pecuniary loss resulting from the defamatory statement." *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 933 (N.D. Ill. 2000). Conversely, a claim for defamation *per se* avoids the need to plead specific damages because it involves "statements so harmful to reputation that damages are presumed." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003) ("Muzikowski I"). D'Ambrosio fails to plead damages under either theory.

D'Ambrosio's *per quod* claim fails because he "did not itemize his losses or plead specific damages of actual financial injury," as required under Rule 9(g)'s heightened pleading standard for special damages and pecuniary loss. *Muzikowski I*, 322 F.3d at 927 (citing Fed. R. Civ. P. 9(g)). Instead, D'Ambrosio generally alleges "emotional loss, loss of professional opportunities, and damages to his reputation and relationships." Dkt. 53 ¶ 162. "Such general allegations, which make no effort to explain how any reputational damage translated into actual harm, are not enough." *Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009) (defamation per quod claim properly dismissed where plaintiff alleged "that he encountered people in job interviews and at academic seminars who understood the passage to be a swipe at his professional reputation but [did] not describe what pecuniary losses he suffered as a result"). Thus, D'Ambrosio's *per quod* claim fails.

Nor does D'Ambrosio's *per se* claim manage to side-step the damages element. Illinois law recognizes five categories of statements that are defamatory *per se*, three of which are relevant here: words imputing "(1) commission of a crime, . . . (3) a person's inability to perform or lack of integrity in performing employment duties, . . . and last, (5) that the person lacks ability in his profession or the words otherwise prejudice the person in his profession." *Law Offices of David Freydin*, 24 F.4th at 1129 (cleaned up). However, statements within those categories are not actionable if they can "reasonable be innocently interpreted" or "reasonably be interpreted as referring to someone other than the plaintiff." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904 (7th Cir. 2007) ("Muzikowski II"). "[I]f a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." *Id.* (cleaned up). "A statement which does not mention the plaintiff by name cannot be injurious to him or her on its face." *Rivera v. Allstate Ins. Co.*, 2021 IL App (1st) 200735, ¶33 (collecting

defamation *per se* cases in which the plaintiff was not named). Thus, "in general, 'where a libelous article *does not name the plaintiff*, it should appear on the face of the complaint that persons other than the plaintiff and the defendant must have reasonably understood that the article was about the plaintiff and that the allegedly libelous expression related to her." *Id.* (quoting *Bryson v. New America Publications, Inc.*, 174 Ill. 2d 77, 96-97 (1996)) (emphasis in original).

Here, D'Ambrosio alleges that Ms. Rajala "falsely accus[ed] him of criminal sexual assault." Dkt. 53 ¶ 93. But the only allegation on this point is the claim that "Monika Tska published a link to a CBS News Article detailing the arrest of one Anthony LaMonica," an Illinois resident who was charged with Criminal Sexual Assault." Dkt. 53 ¶ 50. Even if Ms. Rajala's alleged statements could be understood to allege a crime based on *another person's subsequent response*, that subsequent response only linked a news article *naming a different person*. Because the linked article does not mention D'Ambrosio by name, it must appear on the face of the complaint that someone must have reasonably understood that the article was about D'Ambrosio. *Cf. Rivera*, 2021 IL App (1st) 200735, ¶33; *Bryson*, 174 Ill. 2d at 96-97. Although the complaint broadly claims that Tska "used said article and the mugshot of LaMonica to claim that Plaintiff and Anthony LaMonica were the same person," this is a conclusion, not an allegation of fact. *Cf. Schaffer v. Zekman*, 196 Ill. App. 3d 727, 732 (1st Dist. 1990) (plaintiff's "simple allegation that [an] editorial was 'of and concerning' him is a conclusion and, therefore, insufficient to support an action for defamation *per se.*"). More importantly, D'Ambrosio does not and cannot allege that Ms. Rajala's statements—read in context and given their natural and obvious meaning— accused him of a crime or that anyone other than the plaintiff understood her statements to accuse him of a crime. Indeed, the only natural and obvious meaning

of a link to an article naming LaMonica on its face is that it referred to LaMonica, not D'Ambrosio.

The only other statement that approaches a *per se* category is Ms. Rajala's alleged statement that D'Ambrosio "kept talking about how [she didn't] want to see his bad side, especially when he was on business calls." *Id.* at 48 (Ex. C at 4). To satisfy the remaining categories of defamation *per se* outlined above, a statement must accuse the plaintiff of "lacking ability in his trade or doing something bad in the course of carrying out his job." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). At most, Rajala's alleged statement suggests that D'Ambrosio took pride in being somewhat offensive to people he disliked, even at work. But "attacks related to personal integrity and character have not been deemed defamatory *per se*." *Id.* at 858. Put another way, the statement that D'Ambrosio fancied himself a 'bad boy' relates to his personal demeanor, not whether he has the skill necessary to carry out his occupation. *See, e.g.*, *Heying v. Simonaitis*, 126 Ill. App. 3d 157, 164-65 (1st Dist. 1984) (name-calling, epithets, and other "personality conflicts involving plaintiff . . . were interfering with the working of the unit" but were not actionable because they "did not impugn plaintiff's ability as a nurse."); *Jaros v. Vill. of Downers Grove*, 2020 IL App (2d) 180654 (2020), ¶¶ 58-62, 69 (discussing cases in which "allegations of such conduct as racially derogatory language, physical aggression, cyberhacking, and revengeful posting of obscenity were found not to be defamatory *per se* because they did not relate to the plaintiff's ability or integrity in his specific occupation"). Thus, because Rajala's statements can reasonably be given a non-defamatory construction (*i.e.*, D'Ambrosio bragged about being rude, even at work), they are not actionable here. *See Tuite v. Corbitt*, 224 Ill. 2d 490, 503-04 (2006).

**III. The false light invasion of privacy and civil conspiracy claims also fail.**

D'Ambrosio's false light claim fares no better than the defamation claims, for similar reasons. Under Illinois law, D'Ambrosio must allege that he was placed before the public in a false light that would be highly offensive to a reasonable person *and* that Ms. Rajala acted with actual malice. *See Pope v. Chron. Pub. Co.*, 95 F.3d 607, 616 (7th Cir. 1996). Further, "when a false light invasion of privacy claim follows an unsuccessful defamation claim, the false light claim must also fail." *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021). And if the claim is based on statements that are not defamatory *per se*, a plaintiff must plead special damages. *See Bittman v. Fox*, 107 F. Supp. 3d 896, 904 (N.D. Ill. 2015) (citing *Muzikowski I*, 322 F.3d at 927). As discussed above, the complaint does not explicitly identify any false statements, and Ms. Rajala's alleged posts are nonactionable statements of opinion. *See Ludlow*, 79 F. Supp. 3d at 842 (dismissing defamation and false light claims that failed to identify false statements specifically); *Schiavarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 764 (1st Dist. 2002) ("As in defamation actions, statements that are expressions of opinion devoid of any factual content are not actionable as false light claims."). So, too, the civil conspiracy claim fails. *See Law Offices of David Freydin*, 24 F.4th at 1133 (civil conspiracy fails if the underlying cause of action fails).

**IV. The Doxing Act claim fails as a matter of law.**

Count Four of the Complaint fails to allege the necessary elements of a claim under the Doxing Act. In particular, D'Ambrosio fails to allege (1) any publication of "personally identifiable information," (2) facts sufficient to show Ms. Rajala's intent, (3) any facts to show that he suffered "emotional distress," a "substantial life disruption," or fear of "serious bodily injury" as defined in the Act. *See* 740 ILCS 195/5, 10. At most, the complaint is an incomplete recital of the statutory language and falls short of stating a plausible claim. *See Iqbal*, 556 U.S. at 678 (A

complaint must consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]") (quoting *Twombly*, 550 U.S. at 555).

### A. Ms. Rajala did not publish "personally identifiable information."

The Doxing Act defines "personally identifiable information" as (1) information that "can be used to distinguish or trace a person's identity, such as name, prior legal name, alias, mother's maiden name, and date or place of birth" *plus* (2) "other information that is linked or linkable to a person," such as a person's "social security number, home address, phone number, email address, social media accounts, or biometric data," a person's employment or medical records, "other sensitive or private information that is linked or linkable to a specific identifiable person, such as gender identity, sexual orientation, or any sexually intimate visual depiction," or information providing access to a meeting room online. 740 ILCS 195/5. Further, "the person whose information is published must be identifiable from the published personally identifiable information itself." *Id.*, § 10(a)(3).

D'Ambrosio's claim on both prongs of the definition of "personally identifiable information." The complaint alleges that personally identifiable information posted by Ms. Rajala was limited to D'Ambrosio's first name and photograph, which appears in Exhibit C. *See* Dkt. 53 ¶ 104 & pp. 45-51 (Ex. C). However, a person's first name alone cannot "distinguish or trace" that person's identity. *See* 740 ILCS 195/5. Further, it is unclear whether the complaint alleges that Ms. Rajala posted this much, as her alleged statements appear to merely confirm the information (namely, D'Ambrosio's first name) that had already been divulged by

the original post of another. *See* Dkt. 53 ¶ 46 (alleging that Rajala "republished" only a "photograph of his likeness); *Id.* at 45-51 (Ex. C).[2]

Further, the complaint fails to satisfy the second prong of the definition, as the text of the statute shows that a photograph does not qualify as information that is "linked or linkable to a person" in the manner the statute provides. *See* 740 ILCS 195/5. In general, a photograph only comes close to two of the types of information under the second prong: (1) a person's contact information (*e.g.*, home address, phone number, email address,); and (2) sensitive, uniquely identifying personal information (*e.g.*, social security number, biometric data, medical records). *See id.* Of these, only "biometric data" appears to satisfy the statute, but similar Illinois statutes specifically state that a photograph is *not* a biometric identifier. *See* 740 ILCS 14/10 (the Biometric Information Privacy Act, providing that "[b]iometric identifiers do not include . . . photographs"); *See DeLuna v. Burciaga*, 857 N.E. 2d 229, 236 (Ill. 2006) ("[i]t is appropriate statutory construction to consider similar and related enactments").

### B. The complaint fails to plead Ms. Rajala's intent under the statute.

The Doxing Act claim also fails because the complaint fails to allege any facts to show that Ms. Rajala posted her statements with the intent to harm or harass the plaintiff *and* that she knew or should have known that, because of her post, he "would be reasonable likely to suffer death, bodily injury, or stalking." *See* 740 ILCS 195/10(a)(1).

First, it is not enough to satisfy the intent element of the statute with a conclusory allegation that a defendant "published said information with knowledge and/or reckless disregard to the fact that the publishing . . . would

---

[2] Exhibit C's only reference to the plaintiff's first name is the post on page 50 (Ex. C at 6), which appears separate from and later in time to the post attributed to Rajala on pages 46, 48, and 51 (Ex. C at 2, 4, and 7).

cause Plaintiff to be reasonably likely or otherwise have reasonable fear that he is likely to suffer significant injury, including risk of death, bodily injury, or stalking," as D'Ambrosio does here. Dkt. 53 ¶ 105. To plead the requisite intent under the Doxing Act, a plaintiff must not only show knowledge or reckless disregard that the published information would likely cause significant injury. The plaintiff must also show that the information was published with the intent that it be used to "harm or harass" the plaintiff. The complaint does not allege any facts to show Ms. Rajala specifically intended to "harm or harass" D'Ambrosio. Without more, these conclusory allegations fail.

More importantly, the complaint limits the Defendants' intent to "knowledge and/or reckless disregard to the fact that the publishing of defamatory statements accusing someone of horrific crimes such as criminal sexual assault alongside personally identifiable information." Dkt. 53 ¶ 105. But the complaint fails to explain how Ms. Rajala could have this specific intent when the post allegedly accusing D'Ambrosio of a "horrific" crime occurred *after* Ms. Rajala's publication, which contains no such accusations.

In the end, D'Ambrosio cannot plausibly allege that Ms. Rajala's statements showed her "knowledge or reckless disregard that . . . [he] would be reasonably likely to suffer death, bodily injury, or stalking." *See* 740 ILCS 195/10(a)(1). How could the information that D'Ambrosio seemed "very clingy and very fast" or that he texted a profane message to Ms. Rajala make him *reasonably likely* to suffer "death or bodily injury?" As for "stalking," the Doxing Act defines it by reference to the criminal code, which might appear to expand intent beyond the aim of death or bodily injury. *See* 740 ILCS 195/5 (defining "stalk" or "stalking" by reference to 720 ILCS 5/12-7.3).

However, the Illinois Supreme Court's limited construction of the stalking statute is the final nail in the coffin for this element of D'Ambrosio's claim. The

only part of the stalking statute that might expand intent under the Doxing Act statute beyond "death or bodily injury" is subsection (a)(2), defining stalking as a "course of conduct" that one knows "would cause a reasonable person to . . . suffer other emotional distress." 720 ILCS 5/12-7.3(a)(2). The statute further defines "course of conduct" to mean two or more acts in which a defendant "follows, monitors, observes, surveils, threatens or communicates to or about, a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet." 720 ILCS 5/12-7.3(c)(1). But the Illinois Supreme Court has struck the "communicates to or about" language from this definition (*see People v. Relerford*, 2017 IL 121094, ¶65) and has held that "threatens" in subsection (c)(1) "must be interpreted to refer only to true threats of unlawful violence." *People v. Ashley*, 2020 IL 123989, ¶73. In particular, the Illinois Supreme Court has held that "the portion of subsection (a) of the stalking statute that makes it criminal to negligently 'communicate[] to or about' a person, where the speaker knows or should know the communication would cause a reasonable person to suffer emotional distress, is facially unconstitutional." *Relerford*, 2017 IL 121094, ¶63. This dooms D'Ambrosio's theory as to Ms. Rajala's intent. At most, the complaint frames her intent as negligently communicating about D'Ambrosio in a way that caused him to suffer emotional distress when another person later responded with a link to an unrelated news article. Thus, he cannot plausibly allege that Ms. Rajala had the requisite intent under the Doxing Act, and the claim should be dismissed.

### C. D'Ambrosio did not suffer "emotional distress," "substantial life disruption," or fear of "serious bodily injury" from Ms. Rajala's alleged publication.

D'Ambrosio's only allegation in support of the causation element of the Doxing Act, section 10(a)(2), is the familiar claim that he suffered "significant emotional

distress, disruption to his life, and fear of serious bodily injury" as a "direct and proximate cause" of Ms. Rajala's actions. Dkt. 53 ¶ 106.

First, D'Ambrosio bases his Doxing Act claim on the harm suffered by the "publishing of defamatory statements accusing [him] of horrific crimes such as criminal sexual assault alongside personally identifiable information." Dkt. 53 ¶ 105. As discussed above, Ms. Rajala's alleged publication neither alleged "horrific crimes" nor referenced any posts that did so. Thus, her alleged publication could not plausibly cause the "emotional distress," "substantial life disruption," or fear of serious bodily injury" as alleged in the Doxing Act claim.

Second, even if D'Ambrosio showed a causal link between Ms. Rajala's publication and the harm alleged here, his claims do not come close to meeting the high bar set under the Doxing Act for "emotional distress," "substantial life disruption," or fear of "serious bodily injury" for the reasons outlined in section II(D)(3) of the Spill the Tea Defendants' Motion, which Ms. Rajala now adopts and incorporates by reference. *See* Dkt. 71. He alleges no "distress . . . so severe that no reasonable man could be expected to endure it" (*Honaker v. Smith*, 256 F.3d 477, 495 (7th Cir. 2001)), no "material and significant alteration of [his] livelihood" (740 ILCS 195/5), nor any basis for fear of serious bodily injury.

## V. The unjust enrichment claim fails as a matter of law.

"Under Illinois law, unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (citation omitted). Because D'Ambrosio's substantive claims fail, his unjust enrichment claim also fails. *Love*, 2024 WL 809107, at *16.

## Conclusion

For the above reasons, the Court should dismiss the Second Amended Complaint with prejudice.

Respectfully Submitted,

/s/ Andrew D. Finke
Attorney for Abagail Rajala

James G. Vanzant
Andrew D. Finke
Blaine & Vanzant, LLP
922 Davis Street
Evanston, Illinois 60201
Tel.: (312) 788-7584
E-mail: jgv@blainevanzant.com
E-mail: adf@blainevanzant.com

*Note: Law clerk Hank T. Stillwell provided substantial and invaluable assistance to counsel in preparing this motion to dismiss.*

Defendant Rajala's Motion to Dismiss