IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NIKKO D'AMBROSIO,<br><br>    Plaintiff,<br><br>    v.<br><br>ABBIGAIL RAJALA, et al.,<br><br>    Defendants. | Case No. 1:24-cv-00678<br><br>Hon. Sunil R. Harjani |

**SPILL THE TEA DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Spill the Tea, Inc., Blake Milbrand, and Paola Sanchez (the "Spill the Tea Defendants"), by their undersigned attorneys, respectfully submit this reply in support of their motion to dismiss plaintiff Nikko D'Ambrosio's second amended complaint (Dkt. #71) with prejudice, stating as follows:

**ARGUMENT**

**I.    Section 230 of the CDA bars D'Ambrosio's claims in their entirety.**

The Spill the Tea Defendants established in their motion to dismiss that Section 230 of the Communications Decency Act, 47 U.S.C. § 230 (the "CDA"), bars D'Ambrosio's claims in their entirety. As set forth below, D'Ambrosio does not and cannot offer any response to defeat the Spill the Tea Defendants' argument.

    **A.    D'Ambrosio concedes that, absent an exception, Section 230 bars his claims.**

Section 230 of the CDA forbids "any provider or user of an interactive computer service" from being "treated as the publisher or speaker of any information provided by another information content provider." Dkt. #71 at 3 (quoting 47 U.S.C. § 230(c)(1)). The Spill the Tea Defendants

established in their motion to dismiss that: (1) they both "use" and "provide" an "interactive computer service" within the meaning of Section 230; and (2) all of D'Ambrosio's claims treat the Spill the Tea Defendants as the publisher or speaker of third-party statements. *Id.* at 3-5. D'Ambrosio does not respond to these arguments (*see generally* Dkt. #87), and he therefore concedes that, absent some statutory exception, Section 230 bars his claims. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the [plaintiffs] have done here—results in waiver."); *Cnty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.") (internal quotations omitted).

  **B.**  **No exception to Section 230 applies.**

    **1.**  **The Spill the Tea Defendants are not "information content providers."**

Having conceded that his claims fall within the scope of Section 230, D'Ambrosio attempts to plead around the statute by arguing that the Spill the Tea Defendants are liable as "information content providers." Dkt. #87 at 14. As set forth in the motion to dismiss, a plaintiff seeking to hold a defendant liable as an information content provider must plausibly allege that the defendant "directly and materially" contributed to the allegedly harmful content—not just in a general way, but specifically with respect to "what made the content itself unlawful." Dkt. #71 at 5-6 (citing cases). D'Ambrosio concedes this standard, as he must. Dkt. #87 at 4 (admitting a plaintiff must allege that the defendant's conduct "materially contribute[d] to harmful activity").

The second amended complaint does not come close to alleging facts that would meet this high standard. D'Ambrosio argues that the Spill the Tea Defendants are information content providers because they: (1) "manually reviewed and approved posts"; and (2) provided users with "guidelines" and advice for using the AWDTSG forum. *Id.* at 14 (citing Dkt. #53 at ¶¶ 5, 20, 55-56). D'Ambrosio's argument disregards the law.

First, as set forth in the motion to dismiss, Section 230 expressly bars lawsuits seeking to hold defendants liable for exercising traditional editorial functions, such as reviewing and approving content for publication. Dkt. #71 at 9 (quoting *Great Northern Ins. Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852, 859-60 (N.D. Ill. 2021)). Indeed, federal courts have specifically rejected the argument that administrators who hand-select content for publication in online gossip forums are information content providers. *Id.* at 7 (citing *Jones v. Dirty World Ent. Recordings, LLC*, 755 F.3d 398, 403 (6th Cir. 2014)). D'Ambrosio makes no effort to distinguish these authorities, which are directly on point and categorically bar D'Ambrosio's claims.

Second, as a matter of law, providing "guidelines" or advice for website use does not render a forum administrator an information content provider. As set forth above and in the motion to dismiss, information content providers must directly and materially contribute to what made the content itself unlawful. Dkt. #71 at 5-6 (citing cases). Given Section 230's broad protections, courts have held that website administrators are information content providers only when they directly participate in developing the alleged illegality by: (1) drafting the allegedly unlawful content themselves; (2) requiring users to post the allegedly unlawful content as a condition of using the forum or website; or (3) paying users to post the allegedly unlawful content. Dkt. #71 at 6-8 (citing cases). D'Ambrosio does not (and cannot) allege that the Spill the Tea Defendants do any of these things. Nor does he provide any authority for his assertion that a forum administrator loses Section 230's robust protections merely because it provides guidelines for use. Courts have expressly rejected the argument that providing recommendations to facilitate user expression constitutes content development within the meaning of Section 230. *Id.* at 7-8 (citing cases); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019) ("The recommendation and

notification functions helped facilitate this user-to-user communication, but it did not materially contribute, as Plaintiff argues, to the alleged unlawfulness of the content.").

Third, regardless of whether user guidelines could satisfy the material contribution test in a general sense, D'Ambrosio does not plead any particularized facts from which the Court could plausibly infer that *AWDTSG's* user guidelines materially contributed to the forum's allegedly unlawful user posts. D'Ambrosio argues, without citation to any factual allegations, that the AWDTSG guidelines caused users to post "inflammatory content." Dkt. #87 at 14. But D'Ambrosio does not even identify what the guidelines say, let alone explain how the guidelines are responsible for AWDTSG users' allegedly unlawful statements. As set forth in the motion to dismiss, this sort of threadbare and conclusory argument is insufficient to defeat Section 230's broad protections. *See* Dkt. #71 at 8 (citing *Huon*, 841 F.3d at 742, and *Nemet Chevrolet Ltd.*, 591 F.3d at 258) (explaining that plaintiffs must do more than assert "one or two standalone factual allegations" or vaguely allege that a defendant developed content); *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) ("[a] plaintiff must plead particularized factual content, not conclusory allegations," to withstand a motion to dismiss).

### 2. The intellectual property exception does not apply.

In a final effort to skirt Section 230, D'Ambrosio asserts that the "intellectual property" exception set forth at 47 U.S.C. § 230(e)(2) applies to his IRPA claim. Dkt. #87 at 14. As set forth in Meta's motion to dismiss, which the Spill the Tea Defendants adopted and incorporated by reference (Dkt. #71 at 10), D'Ambrosio's attempt to invoke the intellectual property exception fails because: (1) that exception applies only to federal intellectual property laws, not to state intellectual property laws; and (2) in any event, IRPA is not an intellectual property law. *See* Dkt. #38 at 9-13. D'Ambrosio offers no meaningful response to these arguments.

First, D'Ambrosio does not respond to the argument that the intellectual property exception to Section 230 applies only to federal, and not state, intellectual property law claims. D'Ambrosio therefore concedes the point, and that is enough to hold that Section 230 bars his IRPA claim. *Bonte*, 624 F.3d at 466.

Second, even if the exception did apply to state intellectual property laws, D'Ambrosio's IRPA claim still fails because, as set forth in the motions to dismiss, IRPA is not an intellectual property law within the meaning of Section 230. *See* Dkt. #38 at 11-13; Dkt. #71 at 10 (adopting argument). D'Ambrosio offers no response to this argument beyond insisting, with no explanation or citation to any relevant authority, that IRPA "qualifies as intellectual property law." Dkt. #87 at 9. This conclusion is nothing more than *ipse dixit*, and it wrong as a matter of law.

D'Ambrosio first claims that *Lukis v. Whitepages, Inc.*, 549 F. Supp. 3d 798, 805 (N.D. Ill. 2021), supports his argument that IRPA is an intellectual property law. Dkt. #87 at 9. Contrary to D'Ambrosio's representation, however, *Lukis* emphasizes that IRPA is *not* an intellectual property law. Indeed, *Lukis* explains that IRPA codified the common law tort of misappropriating the "right of *privacy*"—not property rights. *Id.* at 805 (quoting *Douglass v. Hustler Mag., Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985)) (emphasis added). As set forth in the motions to dismiss, statutes that codify a right to privacy, as opposed to a right to property, plainly do "not fall within the intellectual property exception to Section 230." Dkt. #38 at 11-12 (quoting *Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 669 (S.D.N.Y. 2023)); Dkt. #71 at 10 (adopting argument).

D'Ambrosio next cites *Huston v. Hearst Communications, Inc.*, 53 F.4th 1097, 1103 (7th Cir. 2022), to claim that "[c]ourts recognize that IRPA claims fall under the intellectual property exception." Dkt. #87 at 14. But *Huston* does not say anything about Section 230 or whether IRPA is an intellectual property law, let alone whether IRPA falls under Section 230's intellectual

5

property exception. Rather, *Huston* affirmed dismissal of the plaintiff's IRPA claim because the plaintiff failed to sufficiently allege the elements of the claim. *Huston*, 53 F.4th at 1099. Accordingly, the intellectual property exception does not apply, and Section 230 bars D'Ambrosio's claims in their entirety.

**II.     D'Ambrosio fails to plead the elements of his claims.**

As the Spill the Tea Defendants explained in their motion to dismiss, D'Ambrosio's claims should be dismissed with prejudice regardless of whether Section 230 bars them because D'Ambrosio cannot adequately plead even the most basic the elements of his claims. D'Ambrosio does not meaningfully respond to any of the Spill the Tea Defendants' arguments.

**A.     The IRPA claim fails as a matter of law.**

In the motion to dismiss, the Spill the Tea Defendants established that D'Ambrosio's IRPA claim fails as a matter of law for at least two reasons. First, to the extent D'Ambrosio's IRPA claim relies on Rajala's posts, D'Ambrosio cannot allege that any of the defendants used D'Ambrosio's photograph for a "commercial purpose" within the meaning of the statute. Dkt. #71 at 10-11. D'Ambrosio does not respond to this argument with respect to the Spill the Tea Defendants, and so he concedes it. *Bonte*, 624 F.3d at 466; *Cnty. of McHenry*, 438 F.3d at 818.

Second, to the extent D'Ambrosio's IRPA claim relies on his allegations that the Spill the Tea Defendants misappropriated his name or likeness in connection with online fundraisers, the exhibits attached to the second amended complaint—*i.e.*, the online fundraising pages that D'Ambrosio claims contain his likeness—irrefutably defeat D'Ambrosio's allegations. Dkt. #71 at 11. As the Spill the Tea Defendants pointed out in their motion to dismiss (Dkt. #71 at 11), the exhibits to the second amended complaint show that neither D'Ambrosio's name nor his photograph appear on the fundraising websites. *See* Dkt. #53 at Ex. A, Ex. D. The exhibits further

6

establish that the fundraisers went online on March 15, 2023, months before anyone posted about D'Ambrosio on the AWDTSG Facebook page. Dkt. #53 at Ex. A. As set forth in the motion to dismiss, for an alleged misappropriation to be actionable, it must either "precede or accompany" the alleged commercial activity—not appear in an entirely separate publication that post-dates the commercial activity by months. *Id.* at 11 (quoting *Huston*, 53 F.4th at 1103).

D'Ambrosio offers no response to this argument, or to the on-point authority in the motion to dismiss, beyond insisting that the Spill the Tea Defendants' fundraisers "prominently" feature his likeness, and that "[t]hese facts satisfy the statutory elements." Dkt. #87 at 16 (citing Dkt. #53 at ¶¶ 31, 81). Again, the exhibits attached to the second amended complaint negate D'Ambrosio's *ipse dixit*, and "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) (internal citations omitted). Accordingly, the IRPA claim should be dismissed with prejudice. *See Thompson v. Ill. Dep't of Prof. Reg.*, 300 F.3d 750, 754 (7th Cir. 2002) ("where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim"); *Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.").

B.  **The defamation claims fail as a matter of law.**

The motion to dismiss establishes that D'Ambrosio's defamation claims fail for at least four reasons: (1) the second amended complaint does not identify any false statements; (2) the AWDTSG posts do not fall within any of the limited categories of defamation *per se*; (3) the

AWDTSG posts are nonactionable opinions; and (4) D'Ambrosio fails to plead special damages to support his defamation *per quod* claim. Dkt. #71 at 11-16.

D'Ambrosio cannot meaningfully respond to any of these arguments. He first argues that the AWDTSG posts associate him with "sexual assault charges against 'Anthony LaMonica,'" whom D'Ambrosio admits (as he must) is "a different individual." Dkt. #87 at 15, 18. As set forth in the motion to dismiss, "a statement is not actionable *per se* if the statement can reasonably be interpreted as referring to someone other than the plaintiff." Dkt. #71 at 13 (quoting *Rivera v. Allstate Ins. Co.*, 189 N.E.3d 982, 994-95 (Ill. App. Ct. 2021)). D'Ambrosio makes no effort to distinguish *Rivera* or any of the other cases the Spill the Tea Defendants cite. Nor does he offer any authority of his own to support his argument that he can rest his defamation claims on statements about someone else, because none exists.

D'Ambrosio next argues, without citing any authority, that "statements implying Plaintiff's cruelty and dishonesty" are actionable under the occupational categories of defamation *per se*. Dkt. #87 at 15. D'Ambrosio's argument is directly contrary to the law, which holds that "attacks related to personal integrity and character have not been deemed defamatory *per se*" under the occupational categories. Dkt. #71 at 13 (citing *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005)). As set forth in the motion to dismiss, to be actionable, the allegedly defamatory statements must directly relate to the skills necessary to carry out the plaintiff's particular occupation. *Id.* at 13-14. D'Ambrosio does not and cannot point to any statement meeting these criteria.

D'Ambrosio also vaguely asserts that the allegedly defamatory statements "imply verifiable facts," and therefore are not protected opinion. *See* Dkt. #87 at 15. But he does not and cannot identify any specific, verifiably false factual assertions. Indeed, beyond pointing to statements about Anthony LaMonica, D'Ambrosio still does not specify what the allegedly

8

defamatory statements are. Nor can he. As set forth in the motion to dismiss, the AWDTSG posts offer only subjective views about D'Ambrosio's character, which are not actionable. *See* Dkt. #71 at 14 (citing cases). D'Ambrosio admits as much in his reply, expressly acknowledging that the statements with which he takes issue (whatever they are) imply "cruelty and dishonesty." Dkt. #87 at 15. These are precisely the sorts of statements that the law protects. *See, e.g.*, *Lifton v. Bd. of Educ. of City of Chi.*, 416 F.3d 571, 579 (7th Cir. 2005) (descriptions of the plaintiff as "lazy" and "unstable" were nonactionable opinion).

Finally, D'Ambrosio argues that he has properly pleaded special damages by alleging "harm to his professional reputation and lost business opportunities." *Id.* As set forth in the motion to dismiss, however, it is not enough for D'Ambrosio to parrot the legal elements of his claim; he must describe his pecuniary losses with specificity. Dkt. #71 at 15 (citing cases); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). He does not and cannot do so, and the defamation claims should be dismissed with prejudice.

### C. The false light and civil conspiracy claims fail as a matter of law.

The Spill the Tea Defendants established in their motion to dismiss that D'Ambrosio's false light claim fails for the same reasons his defamation claims fail. *See* Dkt. #71 at 16. D'Ambrosio admits in his reply brief that his false light claim is based on the same facts as his defamation claims, and he offers no substantive argument for why his false light claim should survive beyond arguing in a conclusory manner that he has alleged the elements of his claim. *See* Dkt. #87 at 16. This *ipse dixit* does not suffice, and the false light claim should be dismissed with prejudice. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 788 f.n. 2 (7th Cir. 2014) (citing *Puffer v. Allstate*

9

*Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012)) (plaintiff waived "underdeveloped" argument that comprised "*ipse dixit* and little else").

D'Ambrosio does not articulate any reason why his civil conspiracy claim against the Spill the Tea Defendants should survive, so that claim should also be dismissed. *Bonte*, 624 F.3d at 466; *Cnty. of McHenry*, 438 F.3d at 818. He argues, in response to defendant Abbigail Rajala's motion to dismiss, that he has properly pleaded a civil conspiracy claim at paragraphs 115-117 of his second amended complaint. Dkt. #87 at 19. Even assuming that argument applied to the Spill the Tea Defendants, it does not suffice; paragraphs 115-117 merely state, in a conclusory fashion, that the defendants "combined" to perform some unlawful act. Dkt. #53 at ¶¶ 115-116. D'Ambrosio does not allege any particularized facts to support this conclusion. Merely parroting the elements of a claim, without offering any factual allegations in support, requires dismissal. *Iqbal*, 556 U.S at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.").

        **D.**       **The Doxing Act claim fails as a matter of law.**

The Spill the Tea Defendants established in their motion to dismiss that D'Ambrosio's claim under the Civil Liability for Doxing Act, 740 ILCS 195/1 *et seq.* (the "Doxing Act"), fails as a matter of law because D'Ambrosio cannot plead at least three statutory elements of his claim: (1) that the Spill the Tea Defendants published his "personally identifiable information"; (2) that he was "likely to suffer death, bodily injury, or stalking" as a result of the AWDTSG posts; and (3) that he suffered "emotional distress," a "substantial life disruption," or fear of "serious bodily injury" as a result of the AWDTSG post. Dkt. #71 at 16-19. D'Ambrosio offers no meaningful response to the Spill the Tea Defendants' arguments, he makes no effort to address the authorities the Spill the Tea Defendants cite, and does not cite any of his own authorities.

10

D'Ambrosio first argues that the defendants published his "photograph, full name, and employment details," and he claims (without citing any authority) that these details "fall squarely within" the statutory definition of "personally identifiable information." Dkt. #87 at 15. As an initial matter, the exhibits attached to the second amended complaint establish that no one published D'Ambrosio's "full name" or "employment details" on the AWDTSG forum, and the exhibits supersede D'Ambrosio's contradictory allegations. *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 454. Additionally, D'Ambrosio's insistence that the AWDTSG posts contain his "personally identifiable information" within the meaning of the Doxing Act is nothing more than *ipse dixit*, and for the reasons set forth in the Spill the Tea Defendants' motion to dismiss, it is also wrong. *See Smoke Shop, LLC v. United States*, 761 F.3d 779 (plaintiff waived issue by responding with "*ipse dixit* and little else"); Dkt. #71 at 17 (explaining why D'Ambrosio failed to plead that any defendant published his "personally identifiable information").

Second, D'Ambrosio argues that he adequately pleaded a "realistic threat of harassment, stalking, or violence" because commenters on the AWDTSG forum "requested details" about his employer. Dkt. #87 at 15-16. Again, however, the exhibits attached to the second amended complaint contradict D'Ambrosio's allegations. No one requested information about D'Ambrosio's employer; to the contrary, the posts generally warned users to "steer clear" of D'Ambrosio. *See* Dkt. #53 at Ex. B, Ex. C. The exhibits supersede D'Ambrosio's contradictory allegations. *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 454. Even if someone did request information about his employer, D'Ambrosio does not connect that sort of request to the type of severe conduct that amounts to a threat of "death, bodily injury, or stalking" under Illinois law, such as threatening to "blow [him] away." *See* Dkt. #71 at 18 (citing cases).

D'Ambrosio argues that he sufficiently pleaded the third element of his Doxing Act claim because his second amended complaint "describes significant emotional and psychological harm" with "specific" factual allegations. Dkt. #87 at 16 (citing Dkt. #53 at ¶¶ 66-67, 105-106). However, the allegations D'Ambrosio cites simply parrot the statutory language, which is insufficient to defeat a motion to dismiss. *See Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do"). Accordingly, the Doxing Act claim should be dismissed.

E. **The unjust enrichment claim fails as a matter of law.**

As set forth in the motion to dismiss, unjust enrichment is not a separate cause of action under Illinois law, and if an unjust enrichment claim rests on the same improper conduct alleged in other claims, the unjust enrichment claim rises and falls with the related claims. Dkt. #71 at 19 (citing *Love v. Simmons*, No. 23-cv-2392, 2024 WL 809107, at *16 (N.D. Ill. Feb. 27, 2024)). D'Ambrosio admits his unjust enrichment claim is based on the same alleged misconduct as his other claims. *See* Dkt. #87 at 16. Because all of his other claims fail, his unjust enrichment claim should also be dismissed.

III. **The second amended complaint should be dismissed with prejudice.**

In a final effort to keep his lawsuit alive, D'Ambrosio asks the Court to grant him leave to amend his complaint for the third time should the Court find that his second amended complaint fails to state a claim. Dkt. #87 at 23. The Court should reject D'Ambrosio's invitation. For the reasons set forth above and in the motion to dismiss, D'Ambrosio's claims are deficient as a matter of law, and he cannot cure them.

D'Ambrosio's own actions confirm that a third attempt to amend would be futile. On August 30, 2024, the Spill the Tea Defendants moved to dismiss D'Ambrosio's first amended complaint, raising arguments that are nearly identical to the arguments they raise now in their

12

motion to dismiss D'Ambrosio's second amended complaint. *Compare* Dkt. #47 *with* Dkt. #71. In other words, D'Ambrosio knew precisely what the deficiencies were in his first amended complaint with respect to the Spill the Tea Defendants, and he had the opportunity to cure those deficiencies when he filed his second amended complaint. He did not do so; the second amended complaint does not contain any new factual allegations against the Spill the Tea Defendants. *Compare* Dkt. #29 *with* Dkt. #53.

Even now, D'Ambrosio does not attempt to demonstrate how any proposed amendment would cure his claims' multiple legal deficiencies. Accordingly, the second amended complaint should be dismissed with prejudice. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint.").

## CONCLUSION

For all the foregoing reasons and the reasons set forth in the Spill the Tea Defendants' motion to dismiss, the second amended complaint should be dismissed with prejudice.

| | |
|---|---|
| Dated: February 14, 2025 | Respectfully submitted, |
| | SPILL THE TEA, INC., |
| Amanda N. Catalano | PAOLA SANCHEZ, and |
| Megan E. Ryan | BLAKE MILLBRAND |
| TABET DIVITO & ROTHSTEIN LLC | |
| 209 S. LaSalle Street, 7th Floor | By: */s/ Amanda N. Catalano* |
| Chicago, IL 60604 | |
| (312) 762-9450 | |
| acatalano@tdrlaw.com | |
| mryan@tdrlaw.com | |