**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NIKKO D'AMBROSIO,

     Plaintiff,

vs.

ABBIGAIL RAJALA, CAROL RAJALA, RODNEY
RAJALA, PAOLA SANCHEZ, BLAKE
MILLBRAND, META PLATFORMS, INC., a
Delaware Corporation, SPILL THE TEA, INC., a
Delaware Corporation, JANE DOES 1-26, Unnamed
Defendants using screen names: Sam Daniels, Alexis
Kyle, Coraline Lotz, Dianne Wesley, Madison Pierce,
Madison Bynum, Vanessa Villatoro, Christy Graessle,
Sharleen Waa, Kaitlyn Mishay Moody, Linda Juarez,
Amber Michelle, Laura Maddox, Alina Drake, Chandi
Constance, Alicia Ann, Salisha P. Dean, Jillian Cara,
Jen Rahbar, Shannon Marie, Luisa Resendez, Daryl
Ceasar, Lisa Miko, Amy Dukstein-Reynolds, Melissa
Pinkerton, Monica Tska,

     Defendants.

Case No. 1:24-cv-678

District Judge Sunil R. Harjani

**<u>DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………….. 1

ARGUMENT………………………………………………………………….. 1

I.   D'Ambrosio's Claims Against Meta Fail Under State Law……………………….. 1

   A.   IRPA……………………………………………………………. 1

   B.   Defamation……………………………………………………….. 3

   C.   False Light Invasion of Privacy and Civil Conspiracy………………………… 5

   D.   Strict Products Liability…………………………………………….. 6

   E.   Negligence and Negligent Entrustment……………………………………… 6

   F.   Unjust Enrichment………………………………………………… 8

II.   Section 230 Bars D'Ambrosio's Claims Against Meta……………………………… 8

III.   The First Amendment Bars D'Ambrosio's Claims Against Meta………………………… 14

IV.   Adjudicating Meta's Motion Does Not Implicate Factual Issues Requiring Discovery…...15

CONCLUSION…………………………………………………………………..15

# TABLE OF AUTHORITIES

## CASES

*Alioto v. Town of Lisbon*,
  651 F.3d 715 (7th Cir. 2011) ............................................................................. 6, 8

*Anderson v. TikTok, Inc.*,
  116 F.4th 180 (3d Cir. 2024) ........................................................................... 11, 13

*Bank of Am., N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ................................................................................. 15

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ......................................................................... 11, 12

*Black v. Wrigley*,
  2017 WL 8186996 (N.D. Ill. Dec. 8, 2017) ........................................................... 5

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010) ................................................................................... 6

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
  519 F.3d 666 (7th Cir. 2008) ................................................................................... 7

*City of Chicago v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004) ................................................................................... 7

*Cody v. Harris*,
  409 F.3d 853 (7th Cir. 2005) ................................................................................... 4

*Collier v. Murphy*,
  2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) ......................................................... 3

*Cross v. Facebook, Inc.*,
  222 Cal. Rptr. 3d 250 (Cal. Ct. App. 2017) ........................................................... 2

*Doe (K.B.) v. Backpage.com, LLC*,
  724 F. Supp. 3d 882 (N.D. Cal. 2024) ............................................................... 9, 10

*Douglass v. Hustler Magazine, Inc.*,
  769 F.2d 1128 (7th Cir. 1985) ............................................................................... 13

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ....................................................................... 7, 9, 10

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ......................................................................... 10, 11

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) ................................................................. 9, 10

*Gracia v. SigmaTron Int'l, Inc.*,
    986 F.3d 1058 (7th Cir. 2021) ................................................................. 5

*Hart v. Amazon.com, Inc.*,
    2015 WL 8489973 (N.D. Ill. Dec. 8, 2015) ........................................ 1, 2

*Huston v. Hearst Commc'ns, Inc.*,
    53 F.4th 1097 (7th Cir. 2022) ............................................................... 13

*In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*,
    702 F. Supp. 3d 809 (N.D. Cal. 2023) ............................................... 9, 11

*Johnson v. Xtra Lease LLC*,
    2010 WL 706037 (N.D. Ill. Feb. 24, 2010) ............................................. 8

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ............................................................... 7

*Law Offices of David Freydin, PC v. Chamara*,
    24 F.4th 1122 (7th Cir. 2022) ................................................................. 4

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021) ............................................................... 10

*Lott v. Levitt*,
    556 F.3d 564 (7th Cir. 2009) ................................................................. 4

*Love v. Simmons*,
    2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ......................................... 3, 8

*Lukis v. Whitepages Inc.*,
    549 F. Supp. 3d 798 (N.D. Ill. 2021) ..................................................... 13

*M.P. by & through Pinckney v. Meta Platforms Inc.*,
    --- F.4th ---, 2025 WL 377750 (4th Cir. Feb. 4, 2025) ..................... 8, 10, 11

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024) (Alito, J., concurring in the judgment) .............. 9, 14

*Muzikowski v. Paramount Pictures Corp.*,
    322 F.3d 918 (7th Cir. 2003) ................................................................. 5

*Muzikowski v. Paramount Pictures Corp.*,
    477 F.3d 899 (7th Cir. 2007) ................................................................. 3

*Osundairo v. Geragos*,
　447 F. Supp. 3d 727 (N.D. Ill. 2020) ............................................................ 5

*Pelfresne v. Vill. of Williams Bay*,
　917 F.2d 1017 (7th Cir. 1990) ...................................................................... 6

*Perfect 10, Inc. v. CCBill LLC*,
　488 F.3d 1102 (9th Cir. 2007) ..................................................................... 13

*Ratermann v. Pierre Fabre USA, Inc.*,
　651 F. Supp. 3d 657 (S.D.N.Y. 2023) ......................................................... 13

*Siegel v. Shell Oil Co.*,
　656 F. Supp. 2d 825 (N.D. Ill. 2009) ............................................................ 6

*Sorrell v. IMS Health Inc.*,
　564 U.S. 552 (2011) ..................................................................................... 14

*TikTok, Inc. v. Anderson*,
　24A681 (U.S. Jan. 6, 2025) .......................................................................... 13

*Tuite v. Corbitt*,
　866 N.E.2d 114 (Ill. 2006) ........................................................................ 3, 4

*Twitter, Inc. v. Taamneh*,
　598 U.S. 471 (2023) ....................................................................................... 7

*Vanzant v. Hill's Pet Nutrition, Inc.*,
　934 F.3d 730 (7th Cir. 2019) ........................................................................ 8

*Vrdolyak v. Avvo, Inc.*,
　206 F. Supp. 3d 1384 (N.D. Ill. 2016) .......................................................... 2

*Walsh v. Arrow Fin. Servs., LLC*,
　2012 WL 255802 (N.D. Ill. Jan. 27, 2012) .................................................. 6

## STATUTES

Communications Decency Act, § 230 ....................................................... passim

Communications Decency Act, § 230(c)(1) ..............................................9, 10

Communicatrions Decency Act, § 230(c) ........................................................11

Illinois Right of Publicity Act, 765 ILCS 1075/1 ...........................................1

Illinois Right of Publicity Act, 765 ILCS 1075/35(b)(1)..................................2

Illinois Right of Publicity Act, 765 ILCS 1075/5 ...........................................1

## OTHER AUTHORITIES

H.R. Journal, 90th Gen. Assemb., Reg. Sess. 224  (Ill. Apr. 24, 1997) ........................................13

## INTRODUCTION

D'Ambrosio's Response—which pivots to new factual theories but ignores most of Meta's arguments and authority—does not resuscitate the Second Amended Complaint. Each of D'Ambrosio's claims suffers from fatal state-law defects, and the Court can resolve Meta's Motion to Dismiss on that basis alone. D'Ambrosio's claims also fail to clear federal-law hurdles: Section 230 of the Communications Decency Act independently bars each claim, and the First Amendment protects Meta's own expression. Despite three opportunities, D'Ambrosio still fails to state a viable claim against Meta, and the Court should now dismiss those claims with prejudice.

## ARGUMENT

## I. D'AMBROSIO'S CLAIMS AGAINST META FAIL UNDER STATE LAW

Meta's Motion to Dismiss explained why D'Ambrosio's claims fail as a matter of state law. Dkt. 65 at 9-16. D'Ambrosio's Response fails to show otherwise. Dkt. 87 at 12-13, 14-22.

### A. IRPA

To state a misappropriation claim under the Illinois Right of Publicity Act (IRPA), 765 ILCS 1075/1 *et seq.*, D'Ambrosio must allege facts showing that Meta misused his identity "for commercial purposes"—defined narrowly to mean the "public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising," 765 ILCS 1075/5. He fails to do so.

D'Ambrosio does not allege that Meta used his image to sell or advertise its service, or in a fundraiser. His theory is far more attenuated, positing that Meta "improperly used [his] identity … to drive user engagement and generate advertising revenue." Dkt. 87 at 12. That is not a viable theory of IRPA misappropriation. The point is illustrated by *Hart v. Amazon.com, Inc.*, 2015 WL 8489973 (N.D. Ill. Dec. 8, 2015), which rejected the plaintiff's argument that Amazon violated

IRPA when it ran ads alongside listings for books he had authored. *Id.* at *7; *cf. Cross v. Facebook, Inc.*, 222 Cal. Rptr. 3d 250, 268 (Cal. Ct. App. 2017) (California law) ("[T]he appearance of advertisements next to a third party's use of [plaintiff's] identity is insufficient to demonstrate a commercial use by Facebook."). That result makes sense—otherwise, non-commercial material in a newspaper, magazine, or website could become an actionable IRPA misappropriation merely because such publications *also* carry advertisements or are sold to customers. In the First Amendment context, ads do not "convert" non-commercial speech within a publication into commercial speech. *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1389 (N.D. Ill. 2016). The same result should obtain here, particularly given that D'Ambrosio alleges nothing more than speculation that Meta may have run ads near user-generated content that referenced him.

Moreover, Meta explained in its Motion why this case falls within IRPA's express exemption for the "use of an individual's identity" to "portray … that individual" in an "article" or "visual … work," so long as the work "does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services." Dkt. 65 at 11 (citing 765 ILCS 1075/35(b)(1)). D'Ambrosio fails to address this dispositive exemption as to Meta, Dkt. 87 at 12, even though it applies squarely to his claim, Dkt. 65 at 11. The Second Amended Complaint makes clear that Defendant Abbigail Rajala posted D'Ambrosio's photo in a visual work to portray what she viewed as her poor romantic experience with him. Dkt. 53 ¶ 46 & pp. 45-51. The post plainly was not "in and of itself" a commercial advertisement.

D'Ambrosio does not plausibly argue otherwise. He instead asserts that Rajala's "actions were inextricably linked to the [Facebook] group's profit motives." Dkt. 87 at 17. But the fundraising pages attached to the Second Amended Complaint nowhere contain his name or likeness. Dkt. 53 at pp. 38-43, 52-53; s*ee also* Dkt. 71 at 18 (Spill The Tea Defendants' motion to

dismiss, addressing this issue). D'Ambrosio accordingly fails to state an IRPA claim. *See Love v. Simmons*, 2024 WL 809107, at *7-9 (N.D. Ill. Feb. 27, 2024); *Collier v. Murphy*, 2003 WL 1606637, at *2-3 (N.D. Ill. Mar. 26, 2003).

**B.    Defamation**

*Defamation per se.*   As Meta explained, Dkt. 65 at 11-12, statements that might otherwise be defamatory *per se* under Illinois law are not actionable if they can "reasonably be innocently interpreted" or "reasonably be interpreted as referring to someone other than the plaintiff." *Muzikowski v. Paramount Pictures Corp.* ("*Muzikowski II*"), 477 F.3d 899, 904 (7th Cir. 2007) (quoting *Tuite v. Corbitt*, 866 N.E.2d 114, 122 (Ill. 2006)). And "if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." *Id.* (internal quotation marks and citation omitted). D'Ambrosio fails to even address those dispositive principles, which doom his claim.

Instead, D'Ambrosio continues to insist that Meta published content "[i]mplying [he] was accused of criminal sexual assault." Dkt. 87 at 18; *see also id.* at 12. Not so—as D'Ambrosio himself concedes when he says that the comment at issue "falsely associate[ed] [him] with … sexual assault charges *against 'Anthony LaMonica.'*" *Id.* at 15 (emphasis added); *see also* Dkt. 53 ¶¶ 50-53. The comment linked to an article about *another man* (Anthony LaMonica), whose name and photo are visible in the comment itself. Dkt. 53 ¶ 50 & p. 48. Because it is entirely "reasonable" to "interpret[]" that comment "as referring to someone other than the plaintiff," and objectively *un*reasonable to interpret an article about Anthony LaMonica as referring to D'Ambrosio, the comment cannot support a claim of defamation *per se*. *Muzikowski II*, 477 F.3d at 904 (quoting *Tuite*, 866 N.E.2d at 122).

D'Ambrosio next asserts that "statements implying [his] cruelty and dishonesty" "harm [his] professional reputation." Dkt. 87 at 15; *see also id.* at 18 (claiming that statements

"characterize[ed] [him] as dishonest and immoral"). But he identifies no statement about his professional fitness rising to the level of defamation *per se*. According to the Second Amended Complaint, Rajala said that D'Ambrosio "kept talking about how [Rajala didn't] want to see his bad side, especially when he was on business calls." Dkt. 53 at p. 48; *see also id.* ¶¶ 91 92, 94. That statement does not accuse D'Ambrosio of "lacking ability in his trade or doing something bad in the course of carrying out his job"—a prerequisite for profession-based defamation *per se*. *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). At a minimum, Rajala's comment can reasonably be given a non-defamatory construction, *see Tuite*, 866 N.E.2d at 122, for it suggests that D'Ambrosio was sometimes unpleasant professionally, and "attacks related to personal integrity and character" are not defamatory *per se*, *see Cody*, 409 F.3d at 858 (discussing cases).[1]

   *Defamation per quod.* D'Ambrosio's defamation *per quod* claim fails because he does not allege special damages—a requirement when a federal court sitting in diversity hears a defamation *per quod* claim under Illinois law. *See Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009). D'Ambrosio's Response reiterates his allegations of "reputational harm, emotional distress, and loss of professional opportunities," Dkt. 87 at 18, but says nothing of special damages. "Such general allegations, which make no effort to explain how any reputational damage translated into actual harm, are not enough" to allege special damages. *Lott*, 556 F.3d at 570 (not enough to allege that "people in job interviews and at academic seminars … understood" allegedly defamatory passage in book to "be a swipe at [plaintiff's] professional reputation" without "describ[ing] what pecuniary losses he suffered as a result" or "say[ing] what came of the job interviews where the

----

[1] To the extent any statement is embedded in Rajala's assertion—*e.g.*, that D'Ambrosio had a "bad side"—it is an inactionable statement of opinion. *See Law Offices of David Freydin, PC v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022); Dkt. 65 at 12 n.1. D'Ambrosio does not and could not explain what "verifiable facts" are implied by the statement "you don't want to see [my] bad side." Dkt. 87 at 15; Dkt. 53 at p. 48.

book was mentioned"); *see also Black v. Wrigley*, 2017 WL 8186996, at *9 (N.D. Ill. Dec. 8, 2017) (not enough to "allege[] generally that [plaintiff] suffered harm to her career and professional advancement, lost opportunities for professional growth and promotions, lost prestigious assignments and influence within her department, and that her 'ability to earn extra income from taking up summer jobs or consulting projects [was] harmed'" (third alteration in original) (citation omitted)).  Rather, D'Ambrosio needed to "itemize his losses or plead specific damages of actual financial injury." *Muzikowski v. Paramount Pictures Corp.* ("*Muzikowski I*"), 322 F.3d 918, 927 (7th Cir. 2003).  His failure to do so ends his defamation *per quod* claim.

### C.    False Light Invasion of Privacy and Civil Conspiracy

D'Ambrosio's false light claim fails along with his defamation claims.  If a false light claim rests on statements that are not defamatory *per se*, the plaintiff must plead special damages.  *See Muzikowski I*, 322 F.3d at 927.  Because D'Ambrosio does not plead special damages, his false light claim can rest only on any statements that are defamatory *per se*.  But "when a false light invasion of privacy claim follows an unsuccessful defamation claim, the false light claim must also fail." *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021).

In his Response, D'Ambrosio cites *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 738 (N.D. Ill. 2020), for the proposition that his "false light claim is independent of the defamation claim." Dkt. 87 at 16.  But *Osundairo*, while recognizing that false light and defamation are different claims, in fact confirms that where, as here, "an unsuccessful defamation *per se* claim is the basis of [a] false-light claim, [the] false-light invasion of privacy claim fails as well."  447 F. Supp. 3d at 738 (internal quotation marks and citation omitted).

As for D'Ambrosio's civil conspiracy claim, his Response focuses only on Rajala's "overt acts," meaning D'Ambrosio has forfeited any civil conspiracy claim as to Meta. Dkt. 87 at 19. But, even if he had not forfeited it, *see infra* Section I.D (addressing forfeiture principles), the

claim falls along with his false light claim. Dkt. 53 ¶¶ 107-117 (alleging civil conspiracy only in conjunction with false light claim); *see Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 836 (N.D. Ill. 2009) (civil conspiracy requires an underlying cause of action).

### D. Strict Products Liability

D'Ambrosio makes no effort to defend his claim for strict products liability. His "failure to reference, let alone defend" that claim "operates as an abandonment of [the] claim and a forfeiture of any argument opposing dismissal." *Walsh v. Arrow Fin. Servs., LLC*, 2012 WL 255802, at *3 (N.D. Ill. Jan. 27, 2012); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (waiver occurs "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 462, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument" in a motion to dismiss "results in waiver").

Even if the Court were to overlook D'Ambrosio's forfeiture, his claim fails because (1) Facebook is an online service, not a product; and (2) D'Ambrosio alleges no physical harm. *See* Dkt. 65 at 14 (discussing necessary elements of strict products liability under Illinois law).

### E. Negligence and Negligent Entrustment

D'Ambrosio's negligence-based claims fail because he does not plausibly allege that Meta owed him any duty, or that any breach of such a duty proximately caused his alleged injuries.

Without citing a single case, D'Ambrosio asserts that "[c]ourts have increasingly recognized that platforms may be held liable for negligence when they engage in conduct beyond mere passive hosting." Dkt. 87 at 12-13.[2] But as Meta explained, online services do not owe a duty of care to their users or the public regarding potentially harmful third-party content. Dkt. 65

---

[2] D'Ambrosio's failure to cite any authority is reason enough to reject his assertion of duty: "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990).

at 15 (citing, *e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359-60 (D.C. Cir. 2014)).  This makes sense, for "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."  *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019); *see also City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1125 (Ill. 2004) (under Illinois law, whether a duty of care exists depends in part on "the magnitude of the burden of guarding against the injury" and "the consequences of placing that burden on the defendant").

D'Ambrosio cannot overcome these authorities and invent a duty of care with his vague allegations that Meta's algorithms prioritize high-engagement content. Dkt. 87 at 12-13.  He does not, for example, plausibly allege that Meta singles out defamatory content in particular for special promotion—or explain how Meta could do so, which would require a fact-specific analysis of whether particular content qualified as defamatory.  *Cf. Twitter, Inc. v. Taamneh*, 598 U.S. 471, 499 (2023) (rejecting claim that "'recommendation' algorithms go beyond passive aid and constitute active, substantial assistance," given that the algorithms were "merely part of [social media platforms'] infrastructure" and "appear[ed] agnostic as to the nature of the content, matching any content … with any user who is more likely to view that content").  In any event, making third-party content available or helping disseminate it is not enough to allege proximate cause of injuries arising from that third-party content.  Dkt. 65 at 15 (citing, *e.g.*, *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008)).

In addition, any claim that Meta negligently entrusted its algorithm "to users," Dkt. 53 ¶ 156, fails.  First, D'Ambrosio does not plead facts showing *how* Meta could entrust an algorithm to Facebook users in the first instance, nor does he offer any explanation in his Response.  He simply ignores the fact that, fundamentally, this claim makes no sense.  Second, even if Meta could

entrust an algorithm to users, D'Ambrosio fails to allege that Meta knew that users would use the algorithm in a manner that creates an unreasonable risk of harm. Dkt. 65 at 15-16; *see Johnson v. Xtra Lease LLC*, 2010 WL 706037, at *4 (N.D. Ill. Feb. 24, 2010). D'Ambrosio offers no response, Dkt. 87 at 12-13, forfeiting the point, *see Alioto*, 651 F.3d at 721.

### F. Unjust Enrichment

As D'Ambrosio acknowledges, Dkt. 87 at 22, unjust enrichment is not a separate cause of action under Illinois law. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019). Because each of D'Ambrosio's substantive claims fails, his unjust enrichment claim fails, too. *See Love*, 2024 WL 809107, at *16.

## II. SECTION 230 BARS D'AMBROSIO'S CLAIMS AGAINST META

Even if D'Ambrosio's claims were viable under Illinois law, Section 230 of the Communications Decency Act, 47 U.S.C. § 230, would bar them.

D'Ambrosio recognizes that Section 230 shields Meta from liability for hosting allegedly defamatory third-party content. Dkt. 87 at 4; *see also* Dkt. 65 at 17-19. He attempts to plead around Section 230 by arguing that (1) Meta's recommendation algorithms reflect "editorial judgment" that "align[s]" with Meta's "financial incentives" and thus receives no Section 230 protection; (2) Meta uses "generative AI tools and algorithmic features" to "transform[] user-submitted content into derivative works"; and (3) his IRPA claim falls within Section 230's carveout for intellectual property claims. Dkt. 87 at 4-9. Each argument fails.

*First*, the weight of authority holds that using recommendation algorithms does not deprive interactive computer services—including Meta—of Section 230 protection.[3] *See, e.g.*, *M.P. by &*

---

[3] D'Ambrosio attaches to his Response two outdated descriptions of how Meta placed ads and showed timely content at points in the past. Dkt. 87 at 29-32 (Exhibit B, describing "relevance score[s]" for ads while noting that the scores were "replaced" with newer diagnostics by August 8,

*through Pinckney v. Meta Platforms Inc.*, --- F.4th ---, 2025 WL 377750, at \*2, \*4-6 (4th Cir. Feb. 4, 2025) (holding that Section 230 barred claims resting on allegations that Facebook's algorithm promotes high-engagement content); *Dyroff*, 934 F.3d at 1098 (holding that website "was acting as a publisher" when using "features and functions" that included recommendation algorithms); *Force v. Facebook, Inc.*, 934 F.3d 53, 66 (2d Cir. 2019) ("We disagree with plaintiffs' contention that Facebook's use of algorithms [including recommendation algorithms] renders it a non-publisher."); *Doe (K.B.) v. Backpage.com, LLC*, 724 F. Supp. 3d 882, 885 (N.D. Cal. 2024) ("Doe cannot plead around Section 230 immunity by framing her claim as one involving Meta's connection algorithms rather than the user-generated content that those algorithms facilitate." (internal quotation marks and citation omitted)); *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 833-34 (N.D. Cal. 2023) ("[T]o the extent plaintiffs challenge defendants' use of algorithms to determine whether, when, and to whom to publish third-party content, Section 230 immunizes defendants. Whether done by an algorithm or an editor, these are traditional editorial functions that are essential to publishing.").

These authorities are correct, for "[a]ccepting [the contrary] argument would eviscerate Section 230(c)(1)." *Force*, 934 F.3d at 66. "[P]latforms rely heavily on algorithms to organize and censor content." *Moody v. NetChoice, LLC*, 603 U.S. 707, 770 (2024) (Alito, J., concurring in the judgment). But in D'Ambrosio's view, "a defendant interactive computer service would be ineligible for Section 230(c)(1) immunity by virtue of simply organizing and displaying content exclusively provided by third parties." *Force*, 934 F.3d at 66. Such a rule would not only strip

---

2019); *id.* at 33-38 (Exhibit C, describing "[b]umping" practices from 2014). Even if he had pleaded these practices were in place at the time pertinent to his claims, D'Ambrosio offers no basis to conclude that they fall outside the category of recommendation algorithms discussed in Meta's Motion and the authorities cited therein, so they do not change the analysis.

protection from a huge swath of interactive computer service providers—it would also "turn Section 230(c)(1) upside down" by "hold[ing] that Congress intended that when publishers of third-party content become especially adept at performing the functions of publishers, they are no longer immunized from civil liability." *Id* at 67. Publishers sought to curate and promote high-engagement third-party content long before the digital age. "[T]he fact that Facebook uses an algorithm to achieve the same result of engagement does not change the underlying nature of the act that it is performing." *M.P.*, 2025 WL 377750, at *6. "Decisions about whether and how to display" third-party content "are traditional editorial functions of publishers," and Section 230's protections do not turn on "the various methods [publishers] use in performing that task." *Id.*

D'Ambrosio's authority does not counsel a different result. He invokes *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), but that case is inapposite. *Lemmon* held only that Section 230 did not bar plaintiffs' design-based claim that certain app features *unrelated to third-party content*—namely, a speed filter and opaque in-app incentive system—enticed the app's users to drive at dangerously high speeds. *Id.* at 1091-92. By contrast, D'Ambrosio's claims are more like those addressed in the Ninth Circuit's earlier *Dyroff* decision, where the court held that Section 230 applied to a website's use of recommendation algorithms, which are "tools meant to facilitate the communication and content of others." 934 F.3d at 1098; *see also Doe (K.B.)*, 724 F. Supp. 3d at 885 (N.D. Cal. decision applying *Dyroff*, not *Lemmon*, to a claim that Meta facilitated sex trafficking by "[c]reating, suggesting, and encouraging connections between sex traffickers and vulnerable persons" (citation omitted)).

Nor does *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008), help D'Ambrosio. There, the Ninth Circuit held that Section 230 did not shield a website's conduct when it "both elicit[ed] … allegedly illegal content" by requiring

10

users to answer particular questions "and ma[de] aggressive use of it in conducting its business." *Id.* at 1172; *see id.* at 1165-66. In so holding, the court cautioned that a computer service provider would *not* face liability for "providing neutral tools to carry out" conduct that "may be unlawful or illicit." *Id.* at 1169. Here, D'Ambrosio at most alleges that Meta "provide[s] a framework that could be utilized for proper *or* improper purposes"—which is not enough to lose Section 230's protections. *Id.* at 1172 (emphasis added). Try as he might to wrap his claims in the mantle of defective design, D'Ambrosio fundamentally takes issue with Meta's publishing decisions, so Section 230 applies.

D'Ambrosio is also wrong to claim that "[c]ourts have consistently recognized that platforms lose Section 230 immunity when their financial incentives align with harmful content amplification." Dkt. 87 at 6-8. He cites *Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024), but that outlier decision never mentioned financial incentives. Nor did *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), touch on that issue in holding that a plaintiff cannot "escape section 230(c) by labeling as a 'negligent undertaking' an action that is quintessentially that of a publisher." *Id.* at 1102-03.

In enacting Section 230, Congress expressed a "policy of the United States" "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services." 47 U.S.C. § 230. Congress was surely aware that, within that "vibrant and competitive free market," interactive computer services would make publishing decisions aligned with their financial interests. Section 230's protections do not and could not hinge on whether an interactive computer service had a financial incentive to make a particular publishing decision. *See M.P.*, 2025 WL 377750, at *5 (holding that Section 230 barred claims premised on Facebook's purported use of algorithms "to maximize [its] profits"); *In re Soc. Media Adolescent*

11

*Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d at 834 (rejecting argument that would "essentially … hold that any website that generates revenue by maintaining the interest of users and publishes content with the intent of meeting this goal, would no longer be entitled to Section 230 immunity").

*Second*, D'Ambrosio does not plausibly allege that he was injured by a "derivative work" created by Meta. In opposing Meta's Motion, D'Ambrosio places new reliance on features like "automated animations" and "3D enhancements" that ostensibly create "derivative content" attributable to Meta. Dkt. 87 at 8-9. Aside from engaging in an unsanctioned third attempt to amend his complaint, D'Ambrosio does not plausibly allege that Meta (1) unilaterally imposes these features, rather than making them available for *third parties* to apply to their own posts, or (2) applied such features to the posts underlying D'Ambrosio's complaint. Those omissions are fatal. In any event, D'Ambrosio does no more than allege that Meta "provide[s] neutral tools to carry out what may be unlawful or illicit"—which does not transform Meta itself into a content provider. *Barnes*, 570 F.3d at 1101 n.6 (citation omitted).

To the extent D'Ambrosio suggests that Meta's mere use of recommendation algorithms results in first-party speech, he fares no better. D'Ambrosio does not plausibly allege that he was defamed by Meta's own expression, unmediated by user inputs. To the contrary, he alleges that the posts to which he objects were made in "an 'invite-only' group" whose content is not visible to non-users. Dkt. 53 ¶ 59; *see also id.* ¶ 17 (alleging that affected men may "remain entirely unaware of the attacks on their character and misappropriation of their likenesses as a result of the social media group's private status and heavily moderated members list").[4] In any event, even if

---

[4] That distinguishes D'Ambrosio's argument from even the outlier Third Circuit decision *Anderson v. TikTok*, which reversed the dismissal of claims asserting that TikTok's algorithm

D'Ambrosio plausibly alleged that his purported injuries flowed from Meta's first-party speech, the First Amendment would independently bar his claims. *See infra*, Section III.

*Third*, D'Ambrosio is wrong (twice over) to insist that his IRPA claim falls within Section 230's carveout for intellectual property claims. As Meta explained, Dkt. 65 at 20-21, Section 230's intellectual property exception is best read to reach only *federal*, not state, intellectual property law. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007). D'Ambrosio offers no response to that proposition. Instead, he simply assumes that the intellectual property exception includes state-law claims, and cites *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 805 (N.D. Ill. 2021), for the proposition that IRPA is an intellectual property law. Dkt. 87 at 9. That argument mischaracterizes *Lukis*, which recognized that IRPA "codifies the common law right of publicity." 549 F. Supp. 3d at 805 (quoting H.R. Journal, 90th Gen. Assemb., Reg. Sess. 224, 225 (Ill. Apr. 24, 1997)). And contrary to D'Ambrosio's claim, *Huston v. Hearst Communications, Inc.*, 53 F.4th 1097 (7th Cir. 2022), does not "recognize that IRPA claims fall under [Section 230's] intellectual property exception," Dkt. 87 at 14—in fact, it does not address Section 230 at all. In any event, as the Seventh Circuit explained, Illinois' right of publicity is a "branch of the right of *privacy*," *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985) (emphasis added)—not intellectual property. *See Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 668-69 (S.D.N.Y. 2023) (concluding that New York's analog to IRPA

---

produces expression attributable to the platform itself. 116 F.4th 180; *see also id.* at 184 n.13 (recognizing tension between its holding and the decisions of eight other circuits); Application to Extend the Time to File a Petition for a Writ of Certiorari, at 3-5, *TikTok, Inc. v. Anderson*, 24A681 (U.S. Jan. 6, 2025) (arguing that *Anderson* misapplied Supreme Court precedent, "cannot be reconciled with [an] unbroken line of decisions in the courts of appeals," and was wrongly decided). Even if *Anderson* was correctly decided, it explicitly did *not* address whether Section 230 applies to "promotion … contingent upon any specific user input," 116 F.4th at 184 n.12, and it therefore has no application here, where D'Ambrosio acknowledges that individuals would not see allegedly defamatory posts without taking affirmative steps to do so.

"sounds in privacy, not intellectual property," and does not fall within Section 230's intellectual property exception). For both of those reasons, Section 230's intellectual property exception does not save D'Ambrosio's IRPA claim from the Section 230 bar.

### III.   THE FIRST AMENDMENT BARS D'AMBROSIO'S CLAIMS AGAINST META

Beyond Section 230, the First Amendment bars D'Ambrosio's claims against Meta. D'Ambrosio seeks to impose liability on Meta for disseminating information, but that conduct qualifies for First Amendment protection. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("[T]he creation *and dissemination* of information are speech within the meaning of the First Amendment." (emphasis added)); Dkt. 65 at 21-22. Specifically, the First Amendment's protections extend to websites engaged in "compiling and curating others' speech." *Moody*, 603 U.S. at 731. That is unsurprising, because "organizing and presenting" third-party speech "is [an] expressive activity of its own." *Id.*[5]

D'Ambrosio responds by observing that the First Amendment does not protect defamatory speech. Dkt. 87 at 13. But, as explained above, D'Ambrosio does not plausibly allege that Meta published content that was defamatory or otherwise unlawful. *See supra* Section I.A-C. Further, to the extent D'Ambrosio alleges Meta amplified "dangerous" content, *see* Dkt. 53 ¶ 155; Dkt. 87 at 23, he fails to adequately allege Meta's knowledge of such "dangerous" content and fails to address Meta's argument on this point. *See* Dkt. 65 at 22; Dkt. 87 at 2-3, 13.

---

[5]   And, of course, the First Amendment would apply even if the Court accepted D'Ambrosio's argument that he was injured by Meta's own, first-party speech. *See Sorrell*, 564 U.S. at 570. In other words, if the Court concluded that Section 230 does not shield Meta from liability in this case, the First Amendment would bar D'Ambrosio's claims.

## IV.     ADJUDICATING META'S MOTION DOES NOT IMPLICATE FACTUAL ISSUES REQUIRING DISCOVERY

D'Ambrosio's last-ditch effort to avoid dismissal is to argue that his claims implicate factual issues necessitating discovery.  For example, he "seeks discovery to uncover critical evidence demonstrating Meta's active role in amplifying harmful content and its financial incentives to do so."  Dkt. 87 at 9-10.  But obtaining such facts would not salvage D'Ambrosio's claims, which, as explained, fail as a matter of law *even if* Meta's algorithms somehow amplified the content at issue and/or Meta had a financial incentive to do so—which he has not adequately pleaded in any event.

## CONCLUSION

After three attempts, D'Ambrosio still fails to state a claim against Meta.  The Court should dismiss the Second Amended Complaint with prejudice.  *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818-19 (7th Cir. 2013).

Dated:  February 14, 2025

Respectfully submitted,

/s/ *Gary Feinerman*
Gary Feinerman, One of the Attorneys for
Defendant Meta Platforms, Inc.

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com

Melanie M. Blunschi (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415-391-0600
melanie.blunschi@lw.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on February 14, 2025, a true and accurate copy of the

foregoing was electronically filed with the CM/ECF system of the United States District Court for

the Northern District of Illinois, which sends notice to counsel of record via e-mail.

Dated:  February 14, 2025

/s/ *Gary Feinerman*
Gary Feinerman, One of the Attorneys for
Defendant Meta Platforms, Inc.

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com