**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NIKKO D'AMBROSIO, | |
| Plaintiff, | Case No. 24 cv 00678 |
| v. | Honorable Sunil R. Harjani |
| ABBIGAIL RAJALA, CAROL RAJALA, RODNEY RAJALA, PAOLA SANCHEZ, BLAKE MILLBRAND, META PLATFORMS, INC., a Delaware Corporation, SPILL THE TEA, INC., a Delaware Corporation, JANE DOES 1-26, Unnamed Defendants using screen names: Sam Daniels, Alexis Kyle, Coraline Lotz, Dianne Wesley, Madison Pierce, Madison Bynum, Vanessa Villatoro, Christy Graessle, Sharleen Waa, Kaitlyn Mishay Moody, Linda Juarez, Amber Michelle, Laura Maddox, Alina Drake, Chandi Constance, Alicia Ann, Salisha P. Dean, Jillian Cara, Jen Rahbar, Shannon Marie, Luisa Resendez, Daryl Ceasar, Lisa Miko, Amy Dukstein-Reynolds, Melissa Pinkerton, Monica Tska, | |
| Defendants. | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

The realities of modern dating are complicated. Seemingly gone are the days of being introduced to a friend-of-a-friend or dating someone in your personal or professional network. Instead, with the advent of online dating and dating apps, it has become increasingly common to go on a date with a stranger after only messaging them online. As a result of this alteration in the dating landscape, those involved have changed how they gather information and intelligence about potential suitors. In the absence of knowing a potential date personally, or having a friend or acquaintance vouch for them, some women have turned to online women-only groups like "Are

We Dating the Same Guy?" where they ask other women for information about men they are considering dating. While many posts in these groups are benign, occasionally women respond with decidedly negative "red flags" about the man in question. But rarely do such statements and unsuccessful dating forays end up in federal court.

In his Second Amended Complaint, Plaintiff Nikko D'Ambrosio brings claims of privacy violations, defamation *per se* and *per quod*, invasion of privacy by false light, doxing, strict products liability, negligence, negligent entrustment, and unjust enrichment because of statements made about him in a private Facebook group. Doc. [53]. In effect, Plaintiff has sued anyone remotely associated with those posts for all possible, imaginable claims, including the woman who dated him and her parents, women commenting on posts, the operators of the Facebook group, and Facebook itself. Defendants Abbigal Rajala, Carol Rajala, Rodney Rajala, Paola Sanchez, Blake Millbrand, Spill The Tea, Inc., and Meta Platforms, Inc. move to dismiss the Second Amended Complaint with prejudice for failing to state a plausible claim for relief on all counts. Docs. [65] [71] [75] [76]. For the reasons stated below, the Court finds that Plaintiff has failed to allege plausible claims for relief and Defendants' motions are granted in their entirety.

## Background

This dispute stems from statements made about D'Ambrosio in the "Are We Dating the Same Guy?" group on Facebook. Defendants are all alleged to be associated with the operations or management of the group, or to have made (*i.e.* posted) statements about D'Ambrosio. The Court takes the facts, as it must on a motion to dismiss, from the allegations of the Second Amended Complaint and assumes the truth of those allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Before discussing the specific posts at issue in this litigation, it is helpful to recount the operation of the Facebook group where the statements were made.

2

As will be no surprise to any reader of this opinion, Meta Platforms, Inc. owns and operates the social media network known as Facebook where the group "Are We Dating the Same Guy?" operates. Doc. [53] ¶ 7. The "Are We Dating the Same Guy?" group is owned and operated by Spill The Tea, Inc., which is in turn owned by Defendants Blake Millbrand and Paola Sanchez (collectively the "Spill The Tea Defendants"). *Id.* ¶¶ 5, 6, 8. "Are We Dating the Same Guy?" is a collection of social groups maintained on various social media platforms that include Facebook. *Id.* ¶ 12. The stated purpose of this group is to be a "Red Flag Awareness group[] all across the country where women can empower each other and keep each other safe from toxic men." *Id.* ¶ 13. The group is divided up by geographic location, with subgroups for major metropolitan areas across the globe. *Id.* ¶ 14. D'Ambrosio alleges that "Defendants Sanchez, Millbrand, Abbigal Rajala, Spill The Tea, Inc., and Jane Does have engaged in the creation, maintenance, publishing, and marketing, either as a user or administrative officer of" the Chicago subgroup on Facebook, which contains approximately 100,000 members.[1] *Id.* ¶ 15. The Chicago subgroup is maintained as an "invite-only" Facebook group. *Id.* ¶ 59.

According to D'Ambrosio, his dispute with this group began in November 2023. *Id.* ¶ 46. D'Ambrosio alleges that he went on a few dates with Abbigail Rajala "which were unremarkable." *Id.* ¶ 45. This case derives from Defendant Abbigail Rajala's post in "Are We Dating the Same Guy?" about D'Ambrosio that included her description of his actions while they were dating, a text message he sent her, and his photo. Doc. [53] ¶ 46; Doc. [53] Exs. B & C. Abbigail Rajala wrote the following about D'Ambrosio:

---

[1] D'Ambrosio names 26 Jane Does in his complaint by their screen names. Doc. [53] ¶ 9. However, with the exception of one screen name "Monica Tska," none of the other screen names are specifically alleged to have done or posted anything about D'Ambrosio. Instead, D'Ambrosio summarily lumps them as a group of Jane Does into allegations about the "Are We Dating the Same Guy? | Chicago" Facebook group with the other Defendants. Doc. [53] ¶¶ 15, 16, 25, 29, 55.

> We met organically in Chicago two and a half months ago. Very clingy and very fast. Flaunted money very awkwardly and kept talking about how I don't want to see his bad side, especially when he was on business calls. He came to see me yesterday and I explained how I didn't really want to stay the night. I just wanted to spend the day together, and this was his response.[2]
>
> After I blocked his number, he texted me on another one. Which is the other text screenshot.[3]

Abbigail Rajala then posted a screenshot of the text message D'Ambrosio sent her, which stated:

> Speak for yourself you ugly vial fake whore. Your ego matches that fake fucking face where you can't even smile in pictures because your teeth are so fucked. The truth hurts bitch and my message will stay with you forever cunt.[4]

D'Ambrosio alleges that he contacted Defendants—he does not specify which Defendant or Defendants he contacted—demanding they remove the posts about him. *Id.* ¶ 57. Abbigail Rajala removed her post and republished it under an "anonymous" handle in the group. *Id.* ¶ 58.

D'Ambrosio next alleges that a Jane Doe by the screen name "Monica Tska," who he has never met, "published a link to a CBS News Article detailing the arrest of one Anthony LaMonica, an Illinois Resident who was charged with Criminal Sexual Assault." *Id.* ¶ 50 & Ex. C. According to D'Ambrosio, Tska used the article to claim that he was LaMonica and that he had been accused of sexual assault. *Id.* ¶ 51. D'Ambrosio asserts that he is not LaMonica and that he has never been charged with or convicted of sexual assault. *Id.* ¶ 52.

### Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule

---

[2] The exhibits attached to the Second Amended Complaint only include an image of Abbigail Rajala's post of a single text message from D'Ambrosio. *See* Doc. [53] Ex. C. While the above posts imply a second text message from D'Ambrosio, D'Ambrosio does not provide any further information one way or another.

[3] Doc. [53] Ex. C; Doc. [75] at 6.

[4] Doc. [53] Ex. C; Doc. [75] at 6. D'Ambrosio does not dispute that he sent this message to Abbigail Rajala.

12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "Making the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at. 679). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Heredia v. Capital Management Services, L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). However, a complaint must consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### Discussion

In this case, D'Ambrosio brings claims for misappropriation under IRPA (Count One), unjust enrichment (Count Two), defamation *per se* (Count Three), doxing (Count Four), invasion of privacy by false light and conspiracy (Count Five), strict products liability (Count Six), negligence (Count Seven), negligent entrustment (Count Eight), and defamation *per quod* (Count Nine). Defendants argue that, despite his multiple attempts at drafting a complaint, D'Ambrosio failed to state a claim for each count and that he cannot allege the required elements of each count, so his Second Amended Complaint should be dismissed. Meta and the Spill The Tea Defendants

also alleged that the claims against them are barred by Section 230 of the Communications Decency Act of 1996.

## I. IRPA Misappropriation – Count One

D'Ambrosio alleges that all Defendants violated IRPA by misappropriating his identity and likeness for commercial purposes. Doc. [53] ¶¶ 78–81. More to the point, D'Ambrosio alleges that by displaying his image, Meta was generating user engagement and advertising revenue and the other Defendants were using it for crowdsourcing funds and collecting money from supporters of the "Are We Dating the Same Guy?" community. *Id.* ¶¶ 80–81. Defendants respond that D'Ambrosio's identity was not used for commercial purposes because neither Meta's advertising nor the Spill The Tea Defendants' fundraiser are connected to the use of D'Ambrosio's identity.

The IRPA codified the common law tort of the right to publicity, providing that "[t]he right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity." 765 ILCS 1075/10. "To state a claim for a violation of IRPA, the plaintiff must allege: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purpose." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022). The statute defines commercial purpose as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. However, the IRPA does not apply to the "use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book, article,

or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services[.]" 765 ILCS 1075/35.

First, Defendants argue that D'Ambrosio does not allege that his identity was used by Defendants for a commercial purpose because the photo posted in the Facebook group, was not used on or in connection with the sale of a product, for the purpose of advertising or promoting a product, or for the purpose of fundraising. *See* 765 ILCS 1075/5. In the Second Amended Complaint, D'Ambrosio does not allege that his identity was used on or in connection with the sale of a product or service, and instead he relies on the Defendants' alleged advertising and fundraising purposes. Specifically, D'Ambrosio alleges that Meta displayed his likeness for the purpose of generating user engagement and advertising revenue. Doc. [53] ¶ 80. However, the fact that his name and photo appear in a Facebook group is not enough to allege an IRPA claim. His "identity must help sell something—whether it is that product or a separate product or service." *Huston*, 53 F.4th at 1102. For example, courts have found that when a website is trying to sell background reports on individuals and it uses free previews with some information about the individual to entice customers to purchase the full background report, that was a commercial use under the IRPA. *See Id.* at 1100; *Dobrowolski v. Intelius*, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018); *Lukis v. Whitepages Inc.*, 542 F. Supp. 3d 831, 837−38 (N.D. Ill. 2020). But simply selling someone's information as part of the product being sold, but not using it to advertise the product, is not a commercial use of their identity. *Huston*, 53 F.4th at 1100. It is also insufficient that there are advertisements for other products on the page containing a plaintiff's identity. *See Hart v. Amazon.com, Inc.*, 2015 WL 8489973, at *7 (N.D. Ill. Dec. 8, 2015) (dismissing an IRPA claim against Amazon for running ads next to the sale of plaintiff's book with him listed as the author).

Here, D'Ambrosio does not allege that Meta was using his identity to sell or advertise a product. Instead, D'Ambrosio's theory is that a third-party post about him necessarily drove user engagement and therefore Meta's advertising revenue. Doc. [53] ¶ 80. But that does not equate to Meta using D'Ambrosio's identity as an advertisement. Accepting that argument would expand the bounds of the IRPA to include any time a website includes an individual's identity and happens to contain separate advertisements. This is not what the IRPA protects against. *Huston*, 53 F.4th at 1101 ("On its face, the statute prohibits the use or holding out of a person's identifying information *to offer to sell or sell* a product, piece of merchandise, good, or service.") (emphasis in original). As alleged, D'Ambrosio's name and photo were not used to entice Facebook users to purchase a product. Therefore, D'Ambrosio fails to plead that Meta had a commercial purpose for using his identity.

D'Ambrosio likewise fails to allege that other Defendants had a commercial purpose in using his identity. Beyond Meta's alleged advertising revenue, the other commercial purpose asserted by D'Ambrosio is that Defendants published his identity as part of their crowdsourcing and fundraising from supporters of the group. Doc. [53] ¶¶ 16, 81. D'Ambrosio alleges that in or about April 2023, the Spill The Tea Defendants published a fundraiser on GoFundMe seeking to raise funds in the amount of $50,000 to develop a smartphone app to further the "Are We Dating the Same Guy?" community. *Id.* ¶ 31. Despite his assertions in his response brief, D'Ambrosio does not allege that his name or likeness was ever published or used on the GoFundMe fundraiser page. Doc. [87] at 16 (citing Doc. [53] ¶¶ 31, 81). Nor does his name or likeness appear in the exhibits attached to the Second Amended Complaint which show the GoFundMe page and

Sanchez's Patreon.[5]  Doc. [53] Exs. A & D.  The only place D'Ambrosio alleges his name or likeness appeared was in the Chicago subgroup of "Are We Dating the Same Guy?" in November 2023. *Id.* ¶¶ 2, 46–47, 50–53.  But the use of his identity must be in connection or precede the commercial use.  The Seventh Circuit has made clear that the "statute contemplates a use or holding out of an individual's identity with the aim of effectuating a sale. Necessarily, then, any use or holding out must either accompany an offer to sell or precede the sale[.]" *Huston*, 53 F.4th at 1101.  So, the fact that on a separate website, seven months prior to the posting of his likeness on Facebook, three Defendants established a fundraiser that never referenced him, does not establish that those three Defendants used his identity for a commercial purpose.

This is even more evident for Abbigail Rajala and the other Jane Doe Defendants,[6] where there is no allegation that they were trying to sell, advertise, or promote anything through their use of the Facebook group.  Instead, D'Ambrosio argues that Abbigail Rajala posted about him in a forum where the administrators were soliciting donations, and the platform was trying to drive user engagement. Doc. [87] at 17.  However, since the Spill The Tea Defendants and Meta did not have a commercial purpose with this particular group, D'Ambrosio's attempt to link Abbigail Rajala and the other Jane Doe Defendants to that purpose likewise fails.[7]  And as the only allegation against Carol and Rodeny Rajala is, on information and belief, that they maintained the home internet network accessed and utilized by their daughter Abbigail Rajala, which makes them

---

[5] Patreon is a platform that provides tools for content creators to run a subscription service and sell digital products.  It allows fans and consumers to buy a monthly or annual subscription to support a content creator in exchange for various rewards or access to content.

[6] To the extent D'Ambrosio lumps the Jane Does in with the Spill The Tea Defendants for having fundraising motives, such an argument would fail for the reasons provided above.

[7] As D'Ambrosio failed to allege a commercial purpose, the Court need not address his arguments related to IRPA exemptions and Abbigail Rajala's intent.

"complicit" in her unauthorized redistribution of D'Ambrosio's likeness, as none of the other Defendants had a commercial purpose, and they clearly had no independent commercial purpose in any of the conduct identified by D'Ambrosio. Doc. [53] ¶ 48. Thus, D'Ambrosio fails to allege that any Defendants had a commercial purpose and his IRPA claim is dismissed.

## II.     Defamation *Per Se* and *Per Quod* – Counts Three and Nine

D'Ambrosio brings claims for both *per se* and *per quod* defamation against Meta, Abbigail Rajala, Paola Sanchez, Blake Millbrand, Spill The Tea, and the Jane Does for the statements about him in the "Are We Dating the Same Guy?" Chicago Facebook group.  "An Illinois defamation action may state a claim either for defamation *per se* (statements so harmful to reputation that damages are presumed) or defamation *per quod* (statements requiring extrinsic facts to show their defamatory meaning)." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003) ("*Muzikowski I*").  The elements for *per se* and *per quod* defamation claims are the same under Illinois law; the differences are in the requirements for pleading and proving damages. *See Love v. Simmons*, 2024 WL 809107, at *4 (N.D. Ill. Feb. 27, 2024).

Defendants Meta, Abbigail Rajala, Paola Sanchez, Blake Millbrand, and Spill The Tea moved to dismiss because the statements have a non-defamatory interpretation, attacks on personal integrity and character are not actionable, the statements are nonactionable opinions, and D'Ambrosio failed to identify any false statements.  Defendants also argue that the statements do not fall within the five categories of *per se* defamation and that D'Ambrosio failed to allege special damages as required for *per quod* defamation.

Turning first to the question of whether any of the statements could be actionable *per se* defamation, under Illinois law, the limited categories of actionable statements to recover for *per se* defamation are those that impute "to a person: (1) commission of a crime, (2) a 'loathsome

communicable disease,' (3) a person's inability to perform or lack of integrity in performing employment duties, (4) adultery or fornication, and last, (5) that the person lacks ability in his profession or the words otherwise prejudice the person in his profession." *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (citing *Solaia Technology, LLC v. Specialty Publishing Co.*, 852 N.E.2d 825, 839 (Ill. 2006)).  However, simply because a statement falls into one of these categories does not automatically make it *per se* defamation.  "Even if a statement falls into a recognized category, it will not be actionable *per se* if the statement 'may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff.'" *Muzikowski I*, 322 F.3d at 924 (7th Cir. 2003) (quoting *Chapski v. Copley Press*, 442 N.E.2d 195, 199 (Ill. 1982)).  In Illinois courts, whether the statement may be reasonably innocently interpreted or interpreted as referring to someone other than the plaintiff, is a determination "made by the judge and it is regarded as a question of law." *Id.*  "[I]f a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." *Id.*

D'Ambrosio argues that his statements fall into two of the *per se* defamation categories: commission of a crime and harm to his professional reputation. Doc. [87] at 15, 18.  As the statement related to the commission of a crime is more clearly articulated in the Second Amended Complaint and defended in D'Ambrosio's response, the Court starts there.  In the Second Amended Complaint, D'Ambrosio alleges that a Jane Doe using the screen name "Monica Tska published a link to a CBS News Article detailing the arrest of one Anthony LaMonica, an Illinois resident who was charged with Criminal Sexual Assault." Doc. [53] ¶ 50 & Ex. C.  According to D'Ambrosio, "Defendant Tska used said article and the mugshot of LaMonica to claim that Plaintiff and Anthony LaMonica were the same person, and that Plaintiff had been accused of criminal sexual assault."

11

*Id.* ¶ 51. D'Ambrosio asserts that this statement is false because he is not Anthony LaMonica and he has never been charged with or convicted of criminal sexual assault. *Id.* ¶ 52.

While D'Ambrosio is correct that imputing the commission of a crime on him, which he did not commit, is a form of *per se* defamation, he fails to address that this news article clearly is not talking about him. D'Ambrosio alleges that he is not Anthony LaMonica. *Id.* ¶ 52. According to the images of the Facebook posts attached to the Second Amended Complaint, Monica Tska posted a link to a CBS news article, which showed the title of the article and the mugshot of Anthony LaMonica. *Id.* Ex. C at 48. Although D'Ambrosio asserts that Tska claimed he and LaMonica were the same person, the exhibit belies that conclusion as it shows her merely posting a link to the news article without commentary. *Id.* As alleged, there is no statement from Tska that D'Ambrosio is Anthony LaMonica or that D'Ambrosio was ever accused, charged, or convicted of sexual assault. The posting of a CBS news article that is clearly discussing a different person, both because the names are different, but also because there are photos of the two men and they do not look alike. Thus, the CBS news article is not actionable because it can reasonably be interpreted as discussing another individual, which D'Ambrosio himself alleges and recognizes to be true in the Second Amended Complaint.

The facts here are unlike the more traditional case of mistaken identity where a plaintiff alleges that a supposedly fictional individual in a piece of media is based on them, and the negative portrayal of that character is defamation *per se*. For example, in *Muzikowski*, the plaintiff plead similarities between himself and the 'fictional' movie character, including experiencing "almost exactly the same things" that the plaintiff had, except the fictional character "never breaks his drinking habit" and "commits such crimes as battery, theft, criminal destruction of property, disorderly conduct, and drinking on the public way." *Muzikowski I*, 322 F.3d at 922. The Seventh

Circuit held that there was a reasonable interpretation that the character was depicting the plaintiff, even if there were some aspects that differed from the plaintiff. *Id.* at 926. Therefore, the fictional character lying about being a licensed securities broker fit within the *per se* defamation category because it implied that the plaintiff was not a member of his profession, and the plaintiff had sufficiently pled that Paramount imputed to him the commission of crimes that he did not commit. *Id.*

Here, D'Ambrosio pleads himself out of court because, unlike the fictional character who had detailed similarities to the plaintiff in *Muzikowski*, D'Ambrosio is clearly not Anthony LaMonica. The only alleged statement about a criminal offense, which was not posted by any of the named defendants but a Jane Doe, was a link to a news article about Anthony LaMonica being charged with sexual assault. This link includes both the name of the person, who is not D'Ambrosio, and a photo of someone, who is not D'Ambrosio. No reasonable person could think this article was about D'Ambrosio or that it was accusing him of sexual assault. *See Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2008) (holding that no reasonable person could interpret the fantasy sequence purported to represent the author's frustrations as actual events). "Illinois has chosen a difficult standard to meet, as 'if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail.'" *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904 (7th Cir. 2007) ("*Muzikowski II*"). Here the innocent, and most plausible, reading of the news article is that LaMonica, and not D'Ambrosio, was charged with sexual assault. While D'Ambrosio may have interpreted the post as implying that he was LaMonica, the Court need not "take the plaintiff's *interpretation* of the allegedly defamatory words at face value." *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 838 (N.D. Ill. 2015) (quoting *Lott v. Levitt*, 556 F.3d 564, 569 (7th Cir. 2009)). There is a reasonable construction that the news article

discusses the criminal actions of someone other than D'Ambrosio. Thus, this is not *per se* defamation.

Next, D'Ambrosio argues that the statements harmed his professional reputation. D'Ambrosio does not identify any specific statements made by any Defendant about his ability to perform his profession, instead he argues that the statements imply his cruelty and dishonesty and characterize him as dishonest and immoral. To support this argument, D'Ambrosio vaguely states that Abbigail Rajala republished provably false and defamatory statements but does not allege what those statements were. Doc. [87] at 18 (citing Doc. [53] ¶ 46). He also relies on his conclusory allegation that "statements authored, published, and caused to be published by Defendants about Plaintiff are reasonably understood to state or imply that Plaintiff is dishonest, immoral and/or untrustworthy[,]" but that also fails to identify any statement by any Defendant. *Id.* (citing Doc. [53] ¶ 92). The other paragraphs identified by D'Ambrosio to support his argument that Defendants made statements harmful to his profession do not discuss statements made by Defendants about D'Ambrosio and therefore cannot be the basis of a defamation claim. *Id.* at 15 (citing Doc. [53] ¶¶ 13, 19). D'Ambrosio also argues that by falsely accusing him of sexual assault, Defendants harmed his professional reputation. *Id.* at 15, 18 (citing Doc. [53] ¶¶ 91–93).

The fundamental flaw in D'Ambrosio's argument is that he does not allege any statements by Defendants that impute an inability to perform his profession.[8] For a statement to be *per se* defamation under either the "imputing an inability to perform or want of integrity in the discharge of duties of office or employment" or "imputing a lack of ability, or that prejudice a party in his trade, profession, or business" categories, the statement must have been related to job performance

---

[8] D'Ambrosio also does not identify his job or profession. The Court is aware that D'Ambrosio is serving a year and a day in prison for a conviction on two counts of filing a false tax return. *United States. v. D'Ambrosio*, 1:23-cr-00323-1, Doc. [84] (N.D. Ill. May 29, 2024).

and "the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (emphasis in original). Here, D'Ambrosio does not identify any statement made that relates to his job or profession. Instead, all the statements relate to his actions while dating women in Chicago.

These comments are unlike the defendants' statements on a law firm's Facebook, Yelp, and Google pages disparaging the plaintiff-lawyer's professionalism and ability to practice law and leaving one-star reviews in *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1127 (7th Cir. 2022). In *Freydin*, after the plaintiff posted an "odd and offensive comment" about Ukrainians, people angered by his comments left reviews expressing that the plaintiff was an "embarrassment and a disgrace to the US judicial system," a "hypocrite," "chauvinist," and "racist" who "has no right to practice law[,]" and that plaintiff "is not professional" and a "biased and unprofessional attorney." *Id.* Others left one-star reviews and complained of a "terrible experience," "awful customer service," "disrespect[ ]," and "unprofessional[ism]." *Id.* None of these defendants had used the plaintiff's legal services. The Seventh Circuit found that these statements fall into the fifth category—prejudice to a person in his profession—and were defamatory *per se*, but ultimately held that they were statements of opinion and not actionable. *Id.* at 1129. Unlike these comments, the women in the "Are We Dating the Same Guy?" Facebook group were commenting on D'Ambrosio's dating etiquette, not his professional ability, so these statements are not defamatory *per se*.

Although not identified by D'Ambrosio, Defendants cited one statement potentially related to D'Ambrosio's ability to perform his profession when Abbigail Rajala wrote that D'Ambrosio "kept talking about how [Rajala didn't] want to see his bad side, especially when he was on business calls." Doc. [53] Ex. C. However, this does not impugn D'Ambrosio's ability to perform

in his profession, but appears to be an off-hand and innocuous comment.  Unlike the defendants in *Freydin*, Abbigail Rajala did not accuse D'Ambrosio of job-related poor performance or an inability to function at his job, just his commentary on how he might *appear to her*.  Therefore, D'Ambrosio has not alleged any statements from Defendants that fall into the categories that form the basis of *per se* defamation.

Instead of addressing how the statements related to his inability to perform his profession, D'Ambrosio argues that the statements imply his cruelty and dishonesty and characterize him as dishonest and immoral.  However, mere "attacks related to personal integrity and character have not been deemed defamatory *per se*." *See Cody v. Harris*, 409 F.3d 853, 858 (7th Cir. 2005) (*Heying v. Simonaitis*, 466 N.E.2d 1137, 1143 (Ill. 1984)).  As D'Ambrosio does not allege Defendants' statements relate to his inability to perform his job or profession, and were instead about his actions while dating, they are not *per se* defamation.  Statements with implications to personal, rather than professional, traits such as implying a plaintiff "has a bad temper, is unable to control his anger, and lacks the integrity and judgment to resist getting revenge in an immature and vicious manner" do not establish *per se* defamation. *Id.*

Even if these statements were to fall under a defamation *per se* category, they are not actionable because they are statements of opinion.  "[T]he First Amendment affords protection from liability to a speaker expressing an opinion that does not misstate actual facts." *Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008).  "Whether a statement is an opinion or assertion of fact is a question of law." *Freydin*, 24 F.4th at 1129.  "To aid in this legal determination, courts ask: (1) whether the statement 'has a precise and readily understood meaning;' (2) whether the statement is factually verifiable; and (3) whether the 'literary or social context signals that [the statement] has factual content.'" *Id.* (quoting *Solaia Technology*, 852 N.E.2d at 840).  While a statement that

can be reasonably interpreted as stating actual facts is not constitutionally protected, "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Id.* at 1129–30 (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).

D'Ambrosio argues that the statements—none of which are actually identified in the complaint or his response brief—characterize him as cruel, dishonest, immoral and lacking integrity, because they "imply verifiable false facts[.]" Doc. [87] at 18. But that is not the standard of whether something is an opinion. If the Facebook posts do "not contain statements that can be objectively verified as true or false" and instead merely imply "undisclosed and unassumed facts that support" the poster's opinion, that is insufficient to turn an opinion into an actionable defamatory statement. *Trahanas v. Nw. Univ.*, 64 F.4th 842, 859 (7th Cir. 2023). In *Trahanas*, the Seventh Circuit found that the plaintiff's supervisor's letter withdrawing his support for a medical school candidate was too vague, and while it implied undisclosed facts, it did not provide facts that the medical schools could verify and thus was not defamation. *Id.* Specifically, the letter stated: "I am writing to formally withdraw my prior letter of reference for [plaintiff]. I can no longer support her candidacy for admission to medical school." *Id.* at 858. The court noted that the general rule is that the "vaguer and more generalized the 'opinion[,] the more likely the opinion is non-actionable as a matter of law.'" *Id.* at 859 (quoting *Hopewell v. Vitullo*, 701 N.E.2d 99, 105 (1998)).

Abbigail Rajala's statement about D'Ambrosio's "bad side" or that he "flaunted money very awkwardly" and was "very clingy very fast" are her subjective opinions about him, not verifiable facts. Much like the statements in *Freydin*, discussed above, that the plaintiff was a

"hypocrite," "chauvinist," and "racist" were the defendants' opinions of the plaintiff, and similarly here Abbigail Rajala gave her opinion of what D'Ambrosio was like to date.[9] *Freydin*, 24 F.4th at 1131. Likewise, while the Facebook posts might imply "undisclosed and unassumed facts that support" Abbigail Rajala's opinion about D'Ambrosio, as they did in *Trahanas*, that does not convert her opinions into actionable defamatory statements. 64 F.4th at 859. Such opinions are subjective and not verifiable facts.

Another flaw in D'Ambrosio's Second Amended Complaint is that he does not allege that any of the statements, except that he was implied to have committed sexual assault, are false. Doc. [53] ¶¶ 53, 93. Excluding that one allegation, D'Ambrosio only summarily and conclusively alleges that Defendants made or transmitted false and defamatory statements without identifying what about the statements was false. *Id.* ¶¶ 46, 56, 91, 94. And despite Defendants raising this in their motions to dismiss, D'Ambrosio failed to address this issue or identify any specific statements that he alleges are false in his response. Doc. [71] at 19; Doc. [75] at 9–10. Besides Abbigail Rajala's opinions about D'Ambrosio's actions while they were dating, the only potentially verifiable fact that she stated was that they "met organically in Chicago two and a half months ago" which D'Ambrosio alleges was true in his Second Amended Complaint. Doc. [53] ¶ 45 & Ex. C.

The importance of identifying specific statements that are allegedly false is underscored by the fact that truth is an absolute defense to defamation. *Love*, 2024 WL 809107, at *5 (quoting *Hnilica v. Rizza Chevrolet, Inc.*, 893 N.E.2d 928, 931 (Ill. App. Ct. 2008)). Under Illinois law, "a

---

[9] Although the images from "Are We Dating the Same Guy?" attached as Exhibit C to the Second Amended Complaint include other statements about D'Ambrosio from other women, those women are not named as defendants in this lawsuit and D'Ambrosio does not reference their statements as potentially defamatory in either his Second Amended Complaint or response brief. Therefore, the Court does not need to address them. However, as articulated by Defendants in their motions, these statements are also subjective opinions and would not be actionable.

statement need not be accurate in every detail as long as the 'gist' or 'sting' of the statement is true." *Black v. Wrigley*, 2019 WL 2433740, at *4 (N.D. Ill. 2019). "The burden of proving falsity rests on the plaintiff." *Love*, 2024 WL 809107, at *5 (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993)). Requiring a plaintiff to allege the "defamatory statements with particularity is not holding him to a higher, fact pleading standard, but rather to require he plead the substantive elements of these torts under Illinois law." *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 836–37 (N.D. Ill. 2015). The Court is not required to "'invent legal arguments for litigants,' even at the motion to dismiss stage, and [is] 'not obliged to accept as true legal conclusions or unsupported conclusions of fact.'" *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 825 (7th Cir. 2018) (quoting *County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006)). Thus, the Court will not accept D'Ambrosio's blanket argument of defamatory statements when he has not identified what statements are false.

Lastly, in addition to the reasons stated above, D'Ambrosio's defamation *per quod* claim (Count Nine) also fails because he does not allege his itemized losses or plead specific damages of actual financial injury. "In Illinois courts and federal courts sitting in diversity, special damages must be specifically stated in a *pro quod* claim." *Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009) (citing FED.R.CIV.P. 9(g)). In *Lott*, the Seventh Circuit affirmed the district court's dismissal of a complaint, and refusal to allow an amended complaint, when the plaintiff only alleged "substantial reputational and monetary damages," (without a specific accounting of those damages or an explanation of harm) and that he would interact with individuals in professional settings who would understand "the passage to be a swipe at his professional reputation[.]" *Id.* The Seventh Circuit held that "[s]uch general allegations, which make no effort to explain how any reputational damage translated into actual harm, are not enough." *Id.* Similarly, here, D'Ambrosio failed to

19

allege a specific accounting of his alleged damages. His general allegation of lost professional opportunities and reputational harm are insufficient. Thus, this is an alternative basis on which Count Nine is dismissed.

### III.   Invasion of Privacy by False Light and Civil Conspiracy – Count Five

Closely associated with the defamation claims is D'Ambrosio's claim for invasion of privacy by false light. To prevail on a false light claim, a plaintiff must "show that the publicity at issue is 'of and concerning' him, that it placed him before the public in a false light, and that there was actual malice." *Muzikowski I*, 322 F.3d at 927 (internal citation omitted). Also, for claims based on statements that are "not defamatory *per se*, special damages too must be pleaded." *Id.*

Since D'Ambrosio failed to allege *per se* defamation, he likewise fails to allege false light invasion of privacy because "the 'of and concerning' requirement of the tort of false light invasion of privacy is 'basically the same as the innocent construction rule[.]'" *Muzikowski II*, 477 F.3d at 907 (quoting *Muzikowski I*, 322 F.3d at 927). Further, because D'Ambrosio failed to plead special damages, any remaining false light claims based on defamation *per quod* also fail. Moreover, "when a false light invasion of privacy claim follows an unsuccessful defamation claim, the false light claim must also fail[.]" *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021) (citing *Madison v. Frazier*, 539 F.3d 646, 659 (7th Cir. 2008)).

As the false light invasion of privacy claim fails, so too must the associated conspiracy claim. Under Illinois law, "[c]ivil conspiracy 'is not an independent tort.'" *Freydin*, 24 F.4th at 1133 (quoting *Indeck North American Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662 (2000)). Thus, when "a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails." *Id.* Since D'Ambrosio failed to allege

a claim for invasion of privacy by false light, the civil conspiracy claim also failed.  Therefore, the Court dismisses Count Five.

## IV.    Doxing – Count Four

Next, D'Ambrosio brings a claim for doxing against Abbigail Rajala, Paola Sanchez, Blake Millbrand, Spill The Tea, and the Jane Does.  Defendants argue that he has failed to state a claim for several reasons including that he does not allege the use of personally identifiable information, he is not likely to suffer death, bodily injury, or stalking, and he does nothing more than summarily allege harm as a direct and proximate result of the conduct.

To state a claim for doxing under Illinois law, a plaintiff must allege that the defendant intentionally published the plaintiff's "personally identifiable information without the consent of the person whose information is published[.]" *See* 740 ILCS 195/10(a).  Personally identifiable information does not mean all information used to identify an individual, instead it is limited to certain types of information.  The Act defines personally identifiable information as:

> any information that can be used to distinguish or trace a person's identity, such as name, prior legal name, alias, mother's maiden name, and date or place of birth in combination with any other information that is linked or linkable to a person such as:
> (1) social security number, home address, phone number, email address, social media accounts, or biometric data;
> (2) medical, financial, education, consumer, or employment information, data, or records;
> (3) any other sensitive or private information that is linked or linkable to a specific identifiable person, such as gender identity, sexual orientation, or any sexually intimate visual depiction; or
> (4) any information that provides access to a person's teleconferencing, video-teleconferencing, or other digital meeting room.[10]

Defendants contend that D'Ambrosio failed to allege that any of the information posted about him in the Facebook group amounts to personally identifiable information.  D'Ambrosio

---

[10] 740 ILCS 195/5.

alleges that Abbigail Rajala published a photo of him. Doc. [53] ¶ 46. D'Ambrosio then alleges that Defendants (without specifying who) posted his name and likeness. *Id.* ¶ 104. Lastly, he alleges that unnamed commenters on Rajala's post requested information related to his employer. *Id.* ¶ 47. But D'Ambrosio does not allege that any such information was ever provided. On its face, this information is insufficient to allege that his personally identifiable information was disclosed.

First, D'Ambrosio never alleges that Defendants published his full name in the Facebook group. In the Second Amended Complaint, D'Ambrosio alleges that his "name" was published in the group, but does not specify if this was his first name or full legal name. Doc. [53] ¶ 104. Based on the exhibits attached to the Second Amended Complaint, the extent of D'Ambrosio's name in "Are We Dating the Same Guy?" was that an anonymous member of the group posted "Nikko, 32" on December 27, 2023 and "Nikko 32" on November 2, 2023. Doc. [53] Exs. C & E.[11] "It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998); *Thompson v. Illinois Dep't of Pro. Regul.*, 300 F.3d 750, 754 (7th Cir. 2002) ("The fact remains that where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."). Since D'Ambrosio never alleged that his full name was posted in the group and instead attached copies of the posts that do not include his full name, the Court concludes that only his first name was posted in the group. As such, the Second Amended Complaint only alleges that D'Ambrosio's first name and age (but not date of birth) were posted.

---

[11] Exhibit E appears to be the result of searching D'Ambrosio's name in the group which hit on other posts that include the names "Nick," "Nicolas," and "Nicholas" but those are not names D'Ambrosio alleges that he uses, and as such are not discussed in this Opinion. Doc. [53] Ex. E. Further, even if those were references to D'Ambrosio, they also do not include a last name and would not change the analysis.

As the first prong of determining whether something is personally identifiable information is whether it "can be used to distinguish or trace a person's identity, such as name, prior legal name, alias, mother's maiden name, and date or place of birth[.]" 740 ILCS 195/5. Defendants contend that publishing only D'Ambrosio's first name and age is insufficient to establish this prong. However, by using the phrase "such as" prior to the list, the statute does not require that each of these items be present, rather that some of these items "in combination with any other information that is linked or linkable to a person" be used to trace a person's identity. *Id.*

The statute goes on to list what types of information could be linked to a person, including social security number, home address, phone number, email address, or employment information. *Id.* But D'Ambrosio does not allege that any such information was ever posted in the group. D'Ambrosio argues in his response brief that his "employment details" were published in the group, but this argument is unavailable because it conflicts with the actual allegations of the Second Amended Complaint. Doc. [87] at 15. D'Ambrosio only alleged that commenters on Rajala's post requested information related to his employer, but does not allege that his employment information was ever posted in the "Are We Dating the Same Guy?" group. Doc. [53] ¶ 47. Nor does D'Ambrosio's employer or employment information appear in any of the Facebook posts or comments that he attached as exhibits to the Second Amended Complaint. *Id.* Ex. C.

D'Ambrosio centers his claim on the publishing of his photograph, but does not explain how this qualifies as linkable information under the statute. D'Ambrosio attached to the Second Amended Complaint the four photographs of him that were posted in the group, all of which were taken in public places with him smiling for the camera. Doc. [53] Exs. C & E. Defendants argue that because the statute does not specifically list photographs as a type of information, a photo of an individual should be excluded. D'Ambrosio responds that the photos fall under the statute. The

parties provided no case law precedent that dictates how Illinois courts interpret this statute and when a photograph could be considered linkable information, and the Court also found no such precedent. However, the Court need not delve into whether the statute excludes all photographs because it is evident from a cursory look at D'Ambrosio's photographs that they would not be covered by the statute. The statute explicitly covers items such as an individual's social security number, home address, medical or financial data, or items linkable to a person's gender identity or sexual orientation indicating that the concern was with private information not readily accessible to anyone looking at an individual. For example, the statute provides that "any sexually intimate visual depiction" qualifies as linkable personal information. *Id.* Public and innocuous photos, like the ones of D'Ambrosio, are clearly distinguishable. Under the plain text of the statute, D'Ambrosio's photos of himself clearly taken in a public place in which he was posing for the camera does not qualify. Doc. [87] at 15, 19; Doc. [53] Ex. C. Thus, D'Ambrosio has not alleged that his personally identifiable information was posted in the "Are We Dating the Same Guy?" group.

However, even if D'Ambrosio had alleged that his personally identifiable information was published, his claim would still fail. To allege a claim for doxing under Illinois law D'Ambrosio also needs to sufficiently plead:

> (1) the information is published with the intent that it be used to harm or harass the person whose information is published and with knowledge or reckless disregard that the person whose information is published would be reasonably likely to suffer death, bodily injury, or stalking; and
> (2) the publishing of the information:
>     (i) causes the person whose information is published to suffer significant economic injury or emotional distress or to fear serious bodily injury or death of the person or a family or household member of the person; or
>     (ii) causes the person whose information is published to suffer a substantial life disruption; and

(3) the person whose information is published is identifiable from the published personally identifiable information itself.[12]

D'Ambrosio does nothing more than restate these elements in his Second Amended Complaint. Doc. [53] ¶ 105. D'Ambrosio does not allege facts establishing any of the Defendants' knowledge or reckless disregard that the person whose information is published would be reasonably likely to suffer death, bodily injury, or stalking. As alleged by D'Ambrosio, the purpose of "Are We Dating the Same Guy?" was so "women can empower each other and keep each other safe from toxic men." *Id.* ¶ 13. D'Ambrosio does not allege that he was contacted by anyone in the group, let alone stalked or threatened with death or bodily injury, as a result of the posts. Nor do the posts themselves allow such an inference. Without any factual allegations, D'Ambrosio is left with conclusory allegations that Defendants acted with this intent.

Similarly, D'Ambrosio does not allege facts to show that he suffered "significant economic injury or emotional distress or to fear serious bodily injury or death" or that this caused him to suffer a substantial life disruption. D'Ambrosio, again, only restates the elements of the claim. A plaintiff may not "merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that they must do more." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). As this is all D'Ambrosio has done, he fails to state a plausible claim and it must be dismissed.

## V.    Strict Products Liability – Count Six

In Count Six, D'Ambrosio alleges that Meta is liable for strict products liability for its app and algorithm. Meta moved to dismiss this claim for failure to state a claim because it provides a service not a product and D'Ambrosio did not allege physical harm. D'Ambrosio failed to respond

---

[12] 740 ILCS 195/10(a).

or oppose this argument. *See* Doc. [87]. D'Ambrosio's failure to respond to this argument or defend his claim, results in a waiver of such an argument. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the [plaintiffs] have done here—results in waiver.").

Regardless of D'Ambrosio's waiver, he has failed to state a claim for products liability. A defendant is liable under a theory of strict products liability for selling "any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property[.]" Restatement (Second) of Torts § 402A (1965). "The general rule is that strict product liability does not extend to services." *Milford v. Com. Carriers, Inc.*, 210 F. Supp. 2d 987, 990 (N.D. Ill. 2002). "A product is tangible personal property distributed commercially for use or consumption." Restatement (Third) of Torts: Prod. Liab. § 19 (1998). Courts have held that the content of a website is not a product for the purpose of strict liability. *See James v. Meow Media, Inc.*, 300 F.3d 683, 701 (6th Cir. 2002) (distinguishing between the content of communications from their "tangible containers" for the purpose of strict products liability); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) (finding Airbnb is a platform that connects users, making it a service not a product); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 399 (S.D.N.Y. 2018) (finding Amazon was a provider of services through its market place and not a distributor of products, therefore not subject to New York's strict product liability claims). D'Ambrosio alleges problems with Meta's app and algorithm, but his allegations do not establish that these are products and not service platforms. Therefore, D'Ambrosio has failed to state a claim for strict products liability.

Further, physical harm is an essential element of any action for products liability, whether for negligence or strict liability. *Sondag v. Pneumo Abex Corp.*, 2016 IL App (4th) 140918, ¶ 23. D'Ambrosio does not allege that he suffered any *physical* harm from Meta's app and algorithm. Doc. [53] ¶ 126. Therefore, his claim also fails on this ground.

## VI. Negligence – Count Seven

Next, D'Ambrosio brings a claim of negligence against Meta. D'Ambrosio alleges Meta was negligent in numerous ways when designing, developing, and monitoring its app, algorithm, and social media platform. Doc. [53] ¶ 144. Meta argues that this count should be dismissed because D'Ambrosio failed to allege that Meta owed a duty or that simply making content available establishes proximate cause. Doc. [65] at 15. Meta contends that courts have held that online service providers do not owe a duty of care to their users or the public for harmful third-party content. Among other cases, Meta relies on *Klayman v. Zuckerberg*, where the D.C. Circuit found that Facebook's Statement of Rights and Responsibilities does not establish a special relationship between Facebook and its users. 753 F.3d 1354, 1359–60 (D.C. Cir. 2014). D'Ambrosio does not address Meta's duty argument in his response, instead arguing that Meta failed to exercise reasonable care and, claims (without any citation) that: "Courts have increasingly recognized that platforms may be held liable for negligence when they engage in conduct beyond mere passive hosting." Doc. [87] at 12. The failure to respond and develop this argument renders any opposition waived and Count Seven is dismissed. *See Bonte*, 624 F.3d at 466.

Had D'Ambrosio not waived the argument, the Second Amended Complaint still fails to state a claim. "To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, ¶ 14

(internal citations omitted). The existence of a duty is a matter for the court to decide. *Vesely v. Armslist LLC*, 762 F.3d 661, 665 (7th Cir. 2014). When determining if there was a duty, courts ask, "whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* (quoting *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057 (Ill. 2006)). The common law in Illinois has long held that absent a special relationship, "a private person has no duty to act affirmatively to protect another from criminal attack by a third person[.]" *Id.* (quoting *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007)).

D'Ambrosio's theory is that Meta owed a duty to its users. Doc. [53] ¶¶ 135, 139–141. Whether such a duty exists is an open question.[13] But even if that were true, D'Ambrosio pleads himself out of court by alleging that he "has never created or maintained an account on Facebook or any other platform maintained by Meta" and thus is not a "user" of Meta's services. Doc. [53] ¶ 54. Therefore, under his own allegations, Meta does not owe D'Ambrosio a duty and cannot be liable to him for negligence. Thus, Count Seven is also dismissed on this basis.

## VII.    Negligent Entrustment – Count Eight

D'Ambrosio also alleges that Meta is liable for negligent entrustment because it entrusted "its algorithm to users by allowing it to operate in a manner that prioritized engagement without sufficient safeguards to prevent the amplification of dangerous content[.]" Doc. [53] ¶ 156. Meta

---

[13] Whether such a relationship exists and creates a duty for Meta is not evident based on the case law. *See, e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019) ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359–60 (D.C. Cir. 2014) (finding no special relationship existed between Facebook and its users as a result of Facebook's Statement of Rights and Responsibilities); *but see Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024) (reversing and remanding a grant of immunity under Section 230 when TikTok used an algorithm to promote certain content but not ruling on how this impacted the negligence claim). However, as this question is not dispositive to the case, the Court will proceed as if there was a duty.

argues that D'Ambrosio's claim is unclear and that there is no allegation that it entrusted its algorithm with the knowledge that users would use it in a way that created an unreasonable risk of harm. Doc. [65] at 15–16.

Like many of the other claims, D'Ambrosio does not respond to any of Meta's arguments or defend his negligent entrustment claim in his response brief. The burden of responding to the motion to dismiss falls on the plaintiff, and not on this Court. "If a Rule 12 motion to dismiss is filed, plaintiffs must 'specifically characterize or identify the legal basis' of their claims or face dismissal[.]" *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 825 (7th Cir. 2018) (citing *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.")). Therefore, the motion to dismiss is granted because of D'Ambrosio's failure to respond.

Further, even if the Court were to consider this claim on its merits, it most surely fails. "The common law rarely requires people to protect strangers, or for that matter acquaintances or employees." *Doe v. GTE Corp.*, 347 F.3d 655, 661 (7th Cir. 2003). Typically, a negligent entrustment claim, is brought against the owner of a car or airplane when it was operated by a third party in a manner that results in the injury or death of the plaintiff. *See, e.g.*, *Garland v. Sybaris Club Int'l, Inc.*, 2014 IL App (1st) 112615 (airplane crash) ("*Garland I*"); *Am. Access Cas. Co. v. Novit*, 2018 IL App (1st) 171048 (car accident); *Evans v. Shannon*, 776 N.E.2d 1184, 1185 (Ill. 2002) (car accident). The basic idea behind a negligent entrustment claim "is that if A entrusts his car to B, knowing that B is not competent to drive, then A (if present) must exercise reasonable care to protect pedestrians and other drivers." *GTE Corp.*, 347 F.3d at 661. "To prove negligent

entrustment, a plaintiff must establish that 'the defendant gave another express or implied permission to use or possess a dangerous article or instrumentality that the defendant knew, or should have known, would likely be used in a manner involving an unreasonable risk of harm.'" *Garland v. Sybaris Clubs Int'l, Inc.*, 2019 IL App (1st) 180682, ¶ 31 (quoting *Garland I*, 2014 IL App (1st) 112615, ¶ 53).

The Seventh Circuit previously rejected the theory that the use of a defendant's "servers, routers, and optical-fiber lines" are chattels that can be negligently entrusted to a plaintiff. *GTE Corp.*, 347 F.3d at 661. Instead, it found that defendants provided internet access and web hosting services, which meant it "did not entrust its computers, network, or any other hardware to [plaintiff]; it furnished a service, not a chattel." *Id.* Similarly, as alleged here, Meta did not entrust chattels to its users, it provided a service, in this case a social media network. Therefore, D'Ambrosio failed to state a claim for negligent entrustment.

## VIII. Unjust Enrichment – Count Two

Lastly, D'Ambrosio brings a claim for unjust enrichment against all Defendants. However, this claim cannot stand on its own. "Under Illinois law, unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011)). Accordingly, as all D'Ambrosio's underlying claims failed, necessarily his unjust enrichment claim suffers the same fate and is dismissed.

## IX. Section 230 Immunity

As a final note, both Meta and the Spill The Tea Defendants assert that in addition to D'Ambrosio failing to state a claim for each count, they are also immunized by Section 230 of the Communications Decency Act of 1996. Docs. [65] & [71]. However, as D'Ambrosio failed to

state a plausible claim for relief for any of his counts, the Court need not address the application of Section 230 in this case. *Gonzalez v. Google LLC*, 598 U.S. 617, 622 (2023) (Declining "to address the application of § 230 to a complaint that appears to state little, if any, plausible claim for relief."); *Webber v. Armslist LLC*, 70 F.4th 945, 957 (7th Cir. 2023) (Courts "need to decide whether § 230(c)(1) precludes the plaintiffs' claims only if they have stated a cause of action against [defendant].").

### X.      Dismissal With Prejudice

Defendants asked that the Second Amended Complaint be dismissed with prejudice. "Rule 15(a) says that a party may amend its complaint once as a matter of course. After that, leave to amend depends on persuading the judge that an amendment would solve outstanding problems without causing undue prejudice to the adversaries." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013). Although leave to amend should be freely given when justice so requires, district courts, "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)).

D'Ambrosio has already been given two opportunities to amend his complaint. *See* Docs. [28], [29], [40], [48], [52] & [53]. When comparing D'Ambrosio's First and Second Amended Complaints, the only substantive changes are additional allegations about Meta's algorithm and adding counts Six through Nine. Docs. [29] & [53]. This includes attaching the same exhibits to both versions of the complaint.

Both Meta and the Spill The Tea Defendants identified the same issues that doom D'Ambrosio's Second Amended Complaint in their motions to dismiss the First Amended

Complaint, including that D'Ambrosio failed to allege that his photo was used for a commercial purpose as required for his IRPA claim and that the fundraiser was not connected to his photo and took place eight months before the post. Doc. [38] at 8–12; Doc. [47] at 17–18.  The Spill The Tea Defendants also argued that the First Amended Complaint failed to allege any false statements, that none of the statements would fit in a *per se* defamation category, and that the article about LaMonica was insufficient. Doc. [47] at 18–22.  Further, the Spill The Tea Defendants provided a detailed explanation on why even if these statements were defamatory, they are not actionable as opinions. *Id.* at 22–23.  Also, even though there was no *per quod* defamation claim in the First Amended Complaint, the Spill The Tea Defendants argued why the statements in the exhibits would not be actionable under that standard. *Id.* at 23.  Lastly, the Spill The Tea Defendants made the same arguments about false light and doxing, which they made again in their second motion to dismiss. *Id.* at 23–27.  Despite being made aware of these problems with his First Amended Complaint, and having the opportunity to amend, D'Ambrosio failed to address any of these issues, or revise his complaint in any substantive way.

Further, D'Ambrosio's response in opposition to the motion to dismiss does not make any showing that Plaintiff could or would improve his complaint if granted leave to amend. D'Ambrosio fails to identify any false statement made by any Defendant, beyond stating that he is not LaMonica, and instead broadly asserting that Defendants had defamed him by their statements.  It is also worth considering that in addition to failing to identify any specific false statements in his Second Amended Complaint, D'Ambrosio also failed to identify those statements in his opposition brief, despite Defendants identifying this issue and proposing what they thought D'Ambrosio might argue the false statements were.  This shows that even if D'Ambrosio were granted leave to amend, he has not shown that he is able to address the deficiencies. *See Knight*,

725 F.3d at 819 (affirming a dismissal with prejudice when plaintiff already had three chances and the briefing failed to address the issues and continued to be "maddeningly vague"); *Gonzalez-Koeneke*, 791 F.3d at 808 ("A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint.").

Although D'Ambrosio requested leave to amend "if this Court finds any deficiencies in the pleadings" he provides no indication that he intends to, or could, amend his complaint to address these deficiencies. Doc. [87] at 23.  Moreover, D'Ambrosio failed to respond to many of the Defendants' arguments in his opposition brief, including making no argument in support of his strict liability or negligent entrustment claims—resulting in waiver of his arguments. *See* Doc. [87].  Indeed, the current version of the amendment is D'Ambrosio's third attempt at drafting a complaint and "in court, as in baseball, three strikes and you're out." *Knight*, 725 F.3d at 819 (dismissal with prejudice was appropriate when the plaintiff was on his third complaint and had made no improvements to pleading a claim).  While D'Ambrosio requests some discovery into how Meta's algorithm operates and Meta's internal operations, that information would not resolve any of the issues fatal to his complaint. Doc. [87] at 9–11, 13.

Further, any amendment to the complaint would be futile.  D'Ambrosio's complaint centers around statements made about his actions while dating in Chicago.  These statements, although not clearly outlined in his Second Amended Complaint, were attached as exhibits, so the parties and the Court have had an opportunity to review them—and the Court has found they failed to provide a basis for D'Ambrosio's claims.  As discussed above, the statements are subjective opinions or clearly refer to another person (and not D'Ambrosio), thus they are not actionable.  As

such, any amendment would be futile as the statements at issue are not actionable. *See Braun v. Day*, 2025 WL 662081, at *6–7 (N.D. Ill. Feb. 28, 2025) (dismissing a defamation claim with prejudice when it was based on nonactionable opinions and theories); *Creation Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 698 (N.D. Ill. 2022), *aff'd sub nom. Creation Supply, Inc. v. Cherrie*, 61 F.4th 511 (7th Cir. 2023) (dismissing the amended complaint with prejudice when amendment would be futile when plaintiff had an opportunity to cure the deficiencies identified in the original complaint); *Maag v. Illinois Coal. for Jobs, Growth & Prosperity*, 368 Ill. App. 3d 844, 852–53 (2006) (affirming dismissal with prejudice when the statements were not actionable *per se* defamation because they were substantially true and the plaintiff failed to plead special damages for defamation *per quod*).

Furthermore, D'Ambrosio attached as exhibits screenshots of the statements about him in the Are We Dating the Same Guy?" Chicago group, so there are no additional statements for him to identify. Doc. [53] Ex. C. If D'Ambrosio were given an opportunity to amend, he could only add to how he interpreted the statements. The Court is "required to accept as true the facts alleged in the complaint, including the words used in the allegedly defamatory statement, and make all reasonable inferences in favor of the plaintiff." *Lott*, 556 F.3d at 569. "But that does not mean that the court must take the plaintiff's *interpretation* of the allegedly defamatory words at face value." *Id.* (emphasis in original). Instead, deciphering the "meaning of a statement and whether it is reasonably susceptible to an innocent construction is a question of law for the courts to resolve." *Id.* Thus, the Court is not bound by D'Ambrosio's interpretations of the statements and may "decide the natural and obvious meaning of an allegedly defamatory passage at the pleading stage." *Id.* As the Court determined that the statements about D'Ambrosio were not defamatory, there is nothing left to decide. Further, despite having ample opportunity, D'Ambrosio has yet to identify

34

any false statements, the central element of a defamation claim. While evident from his complaint that D'Ambrosio objects to the idea that women in Chicago, and nationally, have a private invite-only forum in which they are able to discuss and potentially warn other women against men's dating habits and that he personally detested being discussed in that group, the statements made about him do not amount to defamation, false light invasion of privacy, or doxing. The comments about D'Ambrosio in "Are We Dating the Same Guy?" were subjective opinions, which even if D'Ambrosio dislikes, cannot amount to defamation. As a result of these deficient claims and D'Ambrosio's failure to articulate how Meta could be liable under the other counts, any amendment would be futile. Therefore, the Court dismisses D'Ambrosio's Second Amended Complaint with prejudice.

## Conclusion

For the reasons stated above, Defendants' motions to dismiss [65] [71] [75] [76] are granted. As D'Ambrosio has already had multiple opportunities to amend his claims and any further amendments would be futile, the Court dismisses D'Ambrosio's Second Amended Complaint with prejudice.

**SO ORDERED.**

Dated: May 13, 2025

_____
Sunil R. Harjani
United States District Judge